**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | :      Chapter 11 |
| | : |
| FRESH & EASY NEIGHBORHOOD | :      Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : |
| | : |
|      Debtors. | :      (Joint Administration Requested) |
| | : |

**MOTION OF THE DEBTORS FOR AN ORDER**
**(I) APPROVING THE CONTINUED USE OF THE DEBTORS'**
**CASH MANAGEMENT SYSTEM AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors (collectively, the "Debtors") move the Court for the entry of an order pursuant to sections 363 and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code"):  (i) approving the Debtors' continued use of (a) their current cash management system and (b) the Debtors' existing bank accounts (the "Bank Accounts") and business forms, including, authorizing the Debtors to open and close bank accounts; and (ii) authorizing, but not directing, all banks participating in the cash management system to honor certain transfers and charge bank fees and certain other amounts.  In support of this Motion, the Debtors incorporate the statements contained in the Declaration of James Dibbo in Support of First Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

---

[1]    The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

**Background**

1.     On the date hereof (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[2]  By a motion filed on the Petition Date, the Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2.     Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices.  The Debtors currently operate 167 stores located in California, Arizona and Nevada.  In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "Campus") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products.  In close proximity to the Campus is one of the Debtors' two distribution centers, with the other inactive distribution center located in Stockton, California.  For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

3.     As described in more detail in the First Day Declaration, the Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process.  The Debtors intend to liquidate all other assets not included in the proposed sale.  The Debtors believe the proposed sale and the

---

[2]     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

NYI-4546442v1
RLF1 9415819v.1

liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

***The Debtors' Cash Management Systems***

4.      As set forth in the First Day Declaration, Fresh & Easy Neighborhood Market Inc. ("OpCo") and Fresh & Easy Property Company LLC ("PropCo") are each operating businesses.  OpCo operates the Debtors' grocery business, and PropCo owns substantially all of the Debtors' real property and serves as OpCo and other tenants' landlord under various real property leases.  PropCo and OpCo operate their respective cash management systems on an independent basis.  As such, there are no intercompany transactions or other transfers between OpCo and PropCo as a result of the operation of their respective cash management systems.[3]

5.      OpCo's cash management system (the "OpCo Cash Management System") revolves around a single concentration account (the "Main OpCo Account") and 12 other bank accounts (collectively, with the Main OpCo Account, the "OpCo Bank Accounts") in OpCo's cash management system.  OpCo ultimately deposits all funds it collects in the Main OpCo Account.  The remaining OpCo Bank Accounts consist of various deposit accounts and disbursement accounts, which OpCo utilizes for the daily operation of its business.

6.      PropCo also maintains a cash management system (the "PropCo Cash Management System" and together with the OpCo Cash Management System, the "Cash Management Systems") centered around a single concentration account (the "Main PropCo Account").  PropCo ultimately deposits into the Main PropCo Account (i) all rental income it receives from OpCo and other tenants and (ii) other nominal receipts related to interest received

---

[3]      While the Debtors do not conduct intercompany transfers in connection with their respective Cash Management Systems, OpCo does make certain lease payments to PropCo.  In addition, because PropCo has no employees, OpCo provides certain nominal financial and accounting services to PropCo.  PropCo compensates OpCo for such services in the approximate annual amount of $325,000.

NYI-4546442v1
RLF1 9415819v.1

from escrow accounts and easements on PropCo owned property.  In addition to the Main

PropCo Account, PropCo maintains three other bank accounts (collectively, with the Main

PropCo Account, the "PropCo Bank Accounts").  PropCo utilizes these deposit accounts and

disbursement accounts in the daily operation of its business.

7.     In addition to the above referenced bank accounts, PropCo holds one bank

account and OpCo holds two bank accounts to which Jones Lang LaSalle ("JLL") acts as agent

on behalf of the Debtors (collectively, the "JLL Accounts" and together with the OpCo Bank

Accounts and the PropCo Bank Accounts, the "Bank Accounts").  JLL assists PropCo and OpCo

with the management of their owned and leased real property interests.  Thus, JLL utilizes the

JLL Accounts to make certain payments from the JLL Accounts for necessary repairs,

maintenance and utilities at PropCo and OpCo's various owned and leased real property

locations.

8.     The following is a more detailed description of the Bank Accounts and the

Cash Management Systems:[4]

(a)     **Main OpCo Account**.  The Main OpCo Account is OpCo's concentration
account, which serves as OpCo's general treasury of funds collected from
and allocated to the OpCo Bank Accounts.  The Main OpCo Account is
the control center of the OpCo Cash Management System; it receives
receipts from and transfers funds to other OpCo Bank Accounts to
facilitate cash management at OpCo.

(b)     **OpCo Receipt and Disbursement Accounts**  The OpCo Bank Accounts
consist of various (i) deposit accounts related to, among other things,
accounts receivable, credit card collections and other cash collections and
(ii) disbursement accounts related to, among other things, accounts
payable, payroll and other vendor payments.  OpCo utilizes the OpCo
Bank Accounts to collect funds from or disburse payments to third parties
in the ordinary course of the Debtors' business.

---

[4]     A chart summarizing the Cash Management Systems and a schedule of the Bank Accounts are attached
hereto as Exhibits A and B, respectively.

(c)     **Main PropCo Account**.  The Main PropCo Account is PropCo's concentration account, which serves as PropCo's general treasury of funds collected from and allocated to the PropCo Bank accounts.  The Main PropCo Account is the control center of the PropCo Cash Management System; it receives receipts from and transfers funds to other PropCo Bank Accounts to facilitate cash management at PropCo.

(d)     **PropCo Receipt and Disbursement Accounts**.  The PropCo Bank Accounts consist of (i) one deposit account that receives rental income and other nominal real property-related receipts and (ii) two disbursement accounts used predominantly for tax-related and other nominal disbursements for land repair and maintenance on PropCo's owned real property interests.

(e)     **JLL Accounts**.  The JLL Accounts consist of three accounts that receive rental income and disburse funds for the repair, maintenance and utilities of the Debtors' leased and owned real property interests.  JLL serves as the Debtors' agent for the JLL Accounts.  Two JLL Accounts are held at OpCo; OpCo utilizes one account for the collection of receipts and the other for the disbursement of funds.  The final JLL Account is held at PropCo; PropCo uses this account for the collection of receipts.  Excess funds from the JLL Accounts with OpCo are ultimately transferred to the Main OpCo Account.  Similarly, excess funds from the JLL Account with PropCo are ultimately transferred to the Main PropCo Account.

(f)     **Other Accounts**.  OpCo maintains a single account that was a legacy account from a related former subsidiary, Wild Rocket Foods, LLC.

### Legal Basis for Relief Requested

9.     OpCo and PropCo's ability to continue their Cash Management Systems in the ordinary course of their business is essential to their operations.  Absent the ability to maintain their Cash Management Systems, these operating Debtors would have to significantly alter their business operations to comply with United States Trustee established guidelines (the "UST Guidelines").[5]  The Cash Management Systems provides benefits to OpCo and PropCo, such as enabling them to:  (i) control and monitor corporate funds; (ii) ensure cash availability;

---

[5]     Among other requirements, the UST Guidelines with respect to a debtor's cash management system include:  (i) closing all existing bank accounts and opening new debtor in possession accounts; and (ii) maintaining separate debtor in possession accounts for various items.

and (iii) reduce administrative expenses by facilitating the movement of funds.  These benefits are especially important here given the significant volume of cash transactions managed through the Cash Management Systems.

10.    In light of the substantial size and complexity of the Debtors' operations, any disruption in the Debtors' cash management procedures will hamper the Debtors' efforts to preserve and enhance the value of their estates.  Altering the Cash Management Systems could disrupt payments to key vendors and employees.  Therefore, it is essential that the Debtors be permitted to continue to use their Cash Management Systems in accordance with their existing cash management procedures.

11.    The Debtors further seek authority to implement ordinary course changes to their Cash Management Systems as the Debtors may determine that such changes in the Cash Management Systems are beneficial to their business.  As part of these ordinary course changes, the Debtors request authority to open and close bank accounts.  The Debtors request that the banks be authorized, but not directed,  to honor the Debtors' requests to open or close any bank accounts, provided, however; that any new domestic account is established at a bank insured with the FDIC or the Federal Savings and Loan Insurance Corporation (the "FSLIC") and that is organized under the laws of the United States or any State therein, or in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, on the list of authorized bank depositories for the District of Delaware.

12.    Bankruptcy courts routinely permit chapter 11 debtors to maintain their existing cash management systems, generally treating requests for such relief as a relatively "simple matter."  In re Baldwin-United Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Columbia Gas Sys., 997 F.2d 1039, 1061 (3d Cir. 1993) (recognizing that a

requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient"); Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (holding that allowing the debtors to use their prepetition "routine cash management system" was entirely consistent with applicable provisions of the Bankruptcy Code).

13.     Further, the continued postpetition use of cash management systems also has been approved as a routine matter in other bankruptcy cases in this District.  See, e.g., In re OnCure Holdings, Inc., et al., Case No. 13-11540 (KG) (Bankr. D. Del. Jun. 18, 2013) (order allowing debtors to continue their existing cash management system on a postpetition basis) ("OnCure Order"); In re AFA Investment Inc., et al., Case No. 12-11127 (MFW) (Bankr. D. Del. Apr. 3, 2012) (same) ("AFA Investment Order"); In re Harry & David Holdings, Inc., et al., Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011) (same) ("Harry & David Order").

14.     The Debtors respectfully submit that under the circumstances, the maintenance of the Cash Management Systems in substantially the same form as it existed prior to the Petition Date, or as the Debtors may modify the system in the ordinary course of business, is in the best interests of the Debtors' estates and creditors.  Preserving a "business as usual" atmosphere and avoiding the unnecessary distractions that inevitably would be associated with any substantial changes to the Cash Management Systems will facilitate the Debtors' stabilization of their postpetition business operations.

***The Debtors' Continued Use of Existing Bank Accounts is Necessary***

15.     As set forth above, the Debtors' Cash Management Systems utilize approximately eighteen bank accounts on a regular basis.  The Debtors maintain each of their respective Bank Accounts at financial institutions insured by the Federal Deposit Insurance Corporation (the "FDIC").  To avoid substantial disruption to the normal operation of their

business and to preserve a "business as usual" atmosphere the Debtors hereby request that they be permitted to continue to use their Bank Accounts with the same account numbers.  The Debtors further request that their banks and financial institutions (collectively, the "<u>Banks</u>") be authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the applicable Debtor as debtor-in-possession without interruption.  Absent this relief, the UST Guidelines would require the Debtors to close all of their prepetition bank accounts and open new accounts.  Allowing the Debtors to continue to use their prepetition bank accounts will assist the Debtors in accomplishing a smooth transition to operating as debtors in possession.

16.     To protect against the possible inadvertent payment of prepetition claims, all of the Debtors will immediately advise their banks not to honor checks issued prior to the Petition Date, except as otherwise expressly permitted by an order of the Court and directed by the Debtors.  Importantly, the Debtors possess the capacity to draw the necessary distinctions between prepetition and postpetition obligations and payments without closing the Bank Accounts and opening new ones.

17.     Authority to continue the use of bank accounts has been granted in other chapter 11 cases.  <u>See</u>, <u>e.g.</u>, <u>OnCure Order</u>; <u>AFA Investment Order</u>; <u>Harry & David Order</u>.

***The Debtors Continued Use of Their Existing Business Forms is Necessary***

18.     In the ordinary course of their businesses, the Debtors use a multitude of checks and other business forms.  By virtue of the nature and scope of the Debtors' business operations and the large number of suppliers of goods and services with whom the Debtors deal on a regular basis, it is important that the Debtors be permitted to continue to use their existing checks and other business forms without alteration or change.  Pursuant to Rule 2015-2(a) of the Local Rules for the Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"), and to avoid disruption of the Cash Management Systems and unnecessary expense, the Debtors request

NYI-4546442v1
RLF1 9415819v.1

that they not be required to include the legend "D.I.P." and the corresponding bankruptcy case number on any existing business forms or checks.

19.    As parties that presently conduct business with the Debtors likely will be aware of the Debtors' status as debtors in possession, the alteration of the Debtors' checks and business forms would be unnecessary and unduly burdensome.  Further, this Court has allowed the Debtors to use their prepetition business and check forms without the "D.I.P." label in other large cases.  See, e.g., OnCure Order; AFA Investment Order; Harry & David Order.

***The Court Should Authorize Banks Participating
in the Cash Management Systems to Honor Certain
Transfers and Charge Bank Fees and Certain Other Amounts***

20.    Contemporaneously with the filing of this Motion, the Debtors have filed various motions for authorization to pay certain prepetition debt.  With respect to some of this debt, prior to the Petition Date, the Debtors issued checks that have yet to clear the banking system.  With respect to other debt, the Debtors intend to issue checks postpetition on account of such prepetition debt once the Court enters an order permitting the Debtors to take such action. The Debtors intend to inform their banks which prepetition checks the Debtors' banks should honor pursuant to orders of the Court authorizing such payment.

21.    As a result of the foregoing, the Debtors request the Banks be authorized, but not directed, to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH transfers are dated prior to, on or subsequent to the Petition Date.  Pursuant to the relief requested in this Motion, the Banks will not be liable to any party on account of (i) following the Debtors' instructions or representations as to any order of this Court, (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or

-9-

(iii) an innocent mistake made despite implementation of reasonable item-handling procedures. Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

22.    Finally, the Debtors request authority for the Banks to charge and the Debtors to pay or honor both prepetition and postpetition service and other fees, costs, charges and expenses to which the Banks may be entitled under the terms of and in accordance with their contractual arrangements with the Debtors (collectively, the "Bank Fees").  The Debtors also request the Banks be authorized, but not directed, to charge back returned items to the Bank Accounts in the normal course of business.

23.    The Debtors require this relief to minimize the disruption of the Cash Management Systems and their Bank Accounts and to assist them in accomplishing a smooth transition to operating in chapter 11.  Authority for debtors to pay bank fees and banks to charge back returned items has been routinely granted in other chapter 11 cases.  See, e.g., OnCure Order; AFA Investment Order; Harry & David Order.

***The Debtors Should Be Authorized to Continue***
***Prefunding Amounts Necessary to Complete Automated***
***Clearing House Transfers and Other Financial Services***

24.    The Debtors regularly make use of automated clearing house transfers (the "ACH Transfers"), which is a mechanism for electronically transferring funds between bank accounts.  ACH Transfers are a "batch" transfer mechanism, meaning that a significant number of requested transfers may be aggregated into a single batch file and then processed simultaneously.  ACH Transfers are used for, among other things, direct deposits of payroll.

25.    Currently, the Debtors prefund all outgoing ACH Transfers. Accordingly, before submitting an outgoing ACH Transfer request to a Bank, the Debtors ensure

-10-

that the originating Bank Account for the ACH Transfer has sufficient funds to fully cover the transfer.  Upon receiving an outgoing ACH Transfer file, the applicable Bank verifies that the originating Bank Account has sufficient funds to cover the proposed ACH Transfer.  If sufficient funds are present, the Bank debits the appropriate Bank Account in an amount equal to the requested ACH Transfer.  The Bank then processes the ACH Transfer file and holds the funds until the ACH Transfer's settlement date (which is generally the following business day).  On the settlement date, the Bank credits the funds back into the originating Bank Account in time for the ACH Transfer to be completed.  In this manner, the Debtors and the Banks ensure that the Debtors do not inadvertently incur new (albeit short-lived) debt to the Banks.   Similarly, the Debtors make use of prefunded (a) commercial credit card services, (b) prepaid card services and (c) trade and letter of credit services (collectively with the ACH Transfers, the "Prefunded Services")[6]

26.      In order to ensure that they are able to continue relying on the Prefunded Services, the Debtors have prefunded certain accounts and request authority to continue prefunding the Prefunded Services as may be necessary from time to time.  The Debtors further request that the Banks be authorized, but not directed, to debit and credit the Bank Accounts as appropriate in connection with the Prefunded Services.

## Requests for Immediate Relief and Waiver of Stay

27.      Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek immediate entry of an order granting the Debtors (i) the authority to continue to pay Bank Fees and (ii) a waiver of any stay of the

---

[6]      In the past, the Debtors maintained unsecured lines of credit for these purposes.  The unsecured lines are no longer being used.

NYI-4546442v1
RLF1 9415819v.1

effectiveness of such an order.

28.     Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."  Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

29.     The continued use of the Bank Accounts, Cash Management Systems and business forms, the payment of Bank Fees and continued prefunding of the Prefunded Services are necessary to prevent the immediate and irreparable damage to the Debtors' operations. Accordingly, the Debtors submit that ample cause exists to justify:  (i) the immediate entry of an order granting the relief sought herein pursuant to Bankruptcy Rule 6003(b); and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Consent to Jurisdiction

30.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

31.     Notice of this Motion shall be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions;

-12-

(iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

## **No Prior Request**

32.    No previous request for relief sought herein has been made to this Court or any other court.

[The remainder of this page is intentionally blank.]

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit C</u>:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  September 30, 2013
   Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins
Mark D. Collins (DE 2981)
John H. Knight (DE 3848)
Lee E. Kaufman (DE 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Paul D. Leake
Lisa Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

PROPOSED ATTORNEYS FOR DEBTORS

NYI-4546442v1
RLF1 9415819v.1

## **EXHIBIT A**

**Flow Chart Summarizing Cash Management Systems**

# Fresh & Easy Cash Management Systems



**Depository Accounts**

**OpCo Account**
Depository
Citibank (4)

**OpCo Account**
Depository
WIC Program
Union Bank (1)

**JLL Account**
Depository
JLL & OpCo
Harris Bank (1)

**Main OpCo Account**
Citibank (1)

**Disbursement Accounts**

**OpCo Account**
Disbursement
Citibank (6)

**JLL Account**
Disbursement
JLL & OpCo
Harris Bank (1)

**PropCo Account**
Depository
Citibank (1)

**JLL Account**
Depository
JLL & PropCo
Harris Bank (1)

**Main PropCo Account**
Citibank (1)

**PropCo Account**
Disbursement
Citibank (2)

**OpCo Account**
Other
Union Bank (1)

# EXHIBIT B

**Schedule of Bank Accounts**

| Bank | Account Holder | Account Type | Account Number[1] | Account Description |
|---|---|---|---|---|
| Citibank | Fresh & Easy Neighborhood Market Inc. | **Main OpCo Operating Account** | 8348 | **Operating Account** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 6528 | **Card Collections** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 9839 | **Accounts Receivable Deposit** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 8356 | **Cash Collections** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 0687 | **California Receivables Account** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 8529 | **Wire Disbursement** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement  Account** | 2261 | **Utility Deposit** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 0047 | **Vendor Disbursements for Beer, Wine and Spirits** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 1378 | **Foreign Purchases Account** |
| Union Bank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 2832 | **Facilitates Customers Using Government Assistance Programs** |

---

[1]      In order to alleviate privacy concerns, this column only contains the last four digits of the account numbers for each of the Debtors' bank accounts.

| Bank | Account Holder | Account Type | Account Number[1] | Account Description |
|------|----------------|--------------|-------------------|---------------------|
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 4529 | **Payroll** |
| Citibank | Fresh & Easy Neighborhood Market Inc. | **OpCo Receipt and Disbursement Account** | 4502 | **Accounts Payable** |
| Harris | Fresh & Easy Neighborhood Market Inc. | **JLL Account** | 3817 | **JLL Payments** |
| Harris | Fresh & Easy Neighborhood Market Inc. | **JLL Account** | 2731 | **JLL Receipts** |
| Harris | Fresh & Easy Property Company LLC | **JLL Account** | 3023 | **JLL Receipts** |
| Citibank | Fresh & Easy Property Company LLC | **Main PropCo Account** | 9263 | **Main Property Account** |
| Citibank | Fresh & Easy Property Company LLC | **PropCo Receipt and Disbursement Account** | 2843 | **Property Receipts Account** |
| Citibank | Fresh & Easy Property Company LLC | **PropCo Receipt and Disbursement Account** | 9255 | **Property Disbursements Account** |
| Citibank | Fresh & Easy Property Company LLC | **PropCo Receipt and Disbursement Account** | 4259 | **Property Accounts Payable** |
| Union Bank | Fresh & Easy Neighborhood Market Inc. | **Other Account** | 7190 | **Legacy Account** |

## EXHIBIT C

## Proposed Order

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

## ORDER (I) APPROVING THE CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM AND (II) GRANTING RELATED RELIEF

This matter coming before the Court on the Motion of the Debtors for an Order

(I) Approving the Continued Use of the Debtors' Cash Management System and (II) Granting

Other Related Relief (the "Motion"),[2] filed by the above-captioned debtors (collectively,

the "Debtors"); the Court having reviewed the Motion and the First Day Declaration and having

considered the statements of counsel and the evidence adduced with respect to the Motion at a

hearing before the Court (the "Hearing"); and the Court having found that (i) the Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this

district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to

28 U.S.C. § 157(b) and (iv) notice of the Motion and the Hearing was sufficient under the

circumstances; and after due deliberation the Court having determined that the relief requested in

the Motion is in the best interests of the Debtors, their estates and their creditors; and good and

sufficient cause having been shown;

---

[1]    The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized to:  (i) maintain their Cash Management Systems in substantially the same form as described in the Motion; (ii) implement ordinary course changes to their Cash Management Systems; and (iii) open and close bank accounts; provided, however, that the Debtors give notice to the Office of the United States Trustee, Tesco PLC and any official committees appointed in these chapter 11 cases prior to opening or closing a bank account.  Any new domestic bank account opened by the Debtors shall be established at an institution insured by the FDIC or the FSLIC and that is organized under the laws of the United States or any State therein, or in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, on the list of authorized bank depositories for the District of Delaware.

3.      The Debtors are authorized to continue to use the Bank Accounts under existing account numbers without interruption.

4.      The Banks are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the applicable Debtor as debtor in possession without interruption, and to receive, process, honor and pay any and all checks and drafts drawn on, or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided, however, that no checks issued against the Bank Accounts prior to the commencement of these chapter 11 cases shall be honored, except as otherwise authorized by an order of this Court and directed by the Debtors.

5.      The Debtors shall not be required to include the legend "D.I.P." and the corresponding bankruptcy case number on existing checks or business forms.

6.      The Banks are authorized, but not directed, to accept and honor all representations from the Debtors as to which checks, drafts, wires or ACH Transfers should be honored or dishonored consistent with any order of this Court and governing law, whether such checks, drafts, wires or ACH Transfers are dated prior to, on, or subsequent to the Petition Date. The Banks shall not be liable to any party on account of:  (i) following the Debtors' instructions or representations as to any order of this Court; (ii) the honoring of any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) an innocent mistake made despite implementation of reasonable item-handling procedures.

7.      The Banks are authorized, but not directed, to charge, and the Debtors are authorized to pay or honor, the Bank Fees related to the Bank Accounts.  The Banks also are authorized, but not directed, to charge back returned items to the Bank Accounts in the normal course of business.

8.      The Debtors are authorized to continue prefunding the Prefunded Services. The Banks are authorized, but not directed, to debit and credit the Bank Accounts as appropriate in connection with the Prefunded Services.

9.      For the Banks at which the Debtors hold Bank Accounts that are party to a uniform depository agreement with the Office of the United States Trustee for the District of Delaware, within fifteen (15) days of the date of entry of this Order, the Debtors shall: (i) contact each Bank; (ii) provide such Bank with each of the Debtors' employer identification numbers; and (iii) identify each of their Bank Accounts being held at such Banks as being held by a debtor in possession in a bankruptcy case.

10.     Notwithstanding anything to the contrary contained herein, any payment made, or authorization contained herein shall be subject to the requirements imposed on the Debtors under any order approving the use of cash collateral.

11.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

12.     This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.


Dated: _____, 2013
       Wilmington, Delaware           _____
                                          UNITED STATES BANKRUPTCY JUDGE