### UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

### DEBTORS' MOTION FOR AN ORDER
### AUTHORIZING THEM TO PAY PREPETITION EMPLOYEE
### WAGES, BENEFITS, BUSINESS EXPENSES AND RELATED ITEMS

The above-captioned debtors (collectively, the "Debtors") move the Court for the

entry of an order pursuant to sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7) and 541(d) of

title 11 of the United States Code (the "Bankruptcy Code"):  (i) authorizing the Debtors to pay

(a) prepetition wages, salaries, overtime pay, bonuses (including the continuation of bonus

programs for non-insider employees), contractual compensation, commissions, sick pay,

vacation pay and other accrued compensation, as well as related Withholdings and Deductions

(as such terms are defined below) (collectively, the "Prepetition Compensation");

(b) unreimbursed prepetition business expenses (collectively, the "Prepetition Business

Expenses"), (c) prepetition contributions to, and benefits under, employee benefit plans

(collectively, the "Prepetition Benefits") and (d) all costs and expenses incident to the foregoing

payments and contributions (including payroll-related taxes and processing costs); and

(ii) granting certain related relief.  In support of this Motion, the Debtors incorporate the

statements contained in the Declaration of James Dibbo in Support of First-Day Pleadings

---

[1]     The Debtors are the following two entities (the last four digits of their respective taxpayer identification
numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy
Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200,
El Segundo, California 90245.

(the "First Day Declaration") filed contemporaneously herewith and further respectfully state as

follows:

**Background**

1.      On the date hereof (the "Petition Date"), each of the Debtors commenced a

case under chapter 11 of the Bankruptcy Code.[2]  By a motion filed on the Petition Date, the

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only

and administered jointly.

2.      Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"),

the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome,

fresh prepared and ready-to-eat products at affordable prices.  The Debtors currently operate

167 stores located in California, Arizona and Nevada.  In addition to their stores portfolio, the

Debtors operate a state of the art production facility in Riverside, California (the "Campus")

including meat and produce facilities and a kitchen, each housed in its own building, providing

Fresh & Easy-branded fresh food products.  In close proximity to the Campus is one of the

Debtors' two distribution centers, with the other inactive distribution center located in Stockton,

California.  For the twelve months ending February 24, 2013, the Debtors generated

approximately $1.1 billion in revenue.

3.      As described in more detail in the First Day Declaration, the Debtors have

commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a

going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a

company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers

---

[2]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core
proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to
28 U.S.C. §§ 1408 and 1409.

received in connection with a proposed sale process.  The Debtors intend to liquidate all other

assets not included in the proposed sale.  The Debtors believe the proposed sale and the

liquidation of the remaining portion of the Debtors' assets represents the best strategy to

maximize value for the Debtors' various stakeholders.

***Prepetition Compensation***

4.      As of the Petition Date, the Debtors have approximately 4,187 employees.

Many of the employees are owed or have accrued various sums for Prepetition Compensation.[3]

These amounts remained unpaid on the Petition Date because, among other things:  (i) the

Debtors commenced their chapter 11 cases in the midst of their customary payroll period;

(ii) checks previously issued on account of such obligations may not have been presented for

payment or may not have cleared the banking system; (iii) amounts related to prepetition services,

while accrued in whole or in part, had not yet become due and payable by the Debtors; and

(iv) amounts deducted from employee paychecks were not then due to be paid over to the

intended recipient or account, including (a) deductions taken from employees' paychecks to

make payments on behalf of the employees for or with respect to, e.g., the Debtors' employee

benefit programs or amounts due third parties (collectively, the "Deductions")[4] and

(b) withholdings from employees' paychecks on account of various federal, state or local income,

FICA, Medicare, state disability, workers' compensation and other taxes for remittance to the

appropriate federal, state or local taxing authority (collectively, the "Withholdings").  The

Debtors estimate that the total amount of unpaid gross wages, salaries, commissions and other

---

[3]      The Debtors employ various temporary workers (the "Temporary Workers") through various employment agencies.  The Debtors anticipate that the amounts owed as of the Petition Date are no more than $1,575,000.  The Debtors seek authorization to pay all amounts owed with respect to the Temporary Workers as Prepetition Compensation.

[4]      Specifically, the Debtors take voluntary and/or involuntary Deductions from their employees' paychecks in connection with the Debtors' employee benefit programs, loan repayments and garnishments.

NYI-4546446v1
RLF1 9415856v.1

accrued but unpaid compensation[5] was no more than $9,227,000 and the total amount of unpaid

Deductions and Withholdings was no more than $4,120,000 as of the Petition Date.  The Debtors

seek authorization to honor and pay Prepetition Compensation.

***Employee Bonus Programs***

        5.      As described below, the Debtors also maintain ordinary course bonus

programs (the "Bonus Programs") for their employees and intend to continue these programs for

all non-insider employees on a postpetition basis:

- **Store Bonus Plans.**  The Debtors maintain store bonus plans (the "Store Bonus Plans") for approximately 3,527 retail-focused, store-based and non-insider employees (the "Store Employees"),[6] enabling them to earn incentive payments on a quarterly basis and based on certain key performance indicators.  Based upon payment history, the Debtors estimate that their obligations under the Store Bonus Plans, as of the Petition Date, are approximately $594,000.

- **Corporate Bonus Plans.**  Approximately 175 employees may be eligible for monthly bonuses paid in accordance with the Debtors' bonus plans for the Debtors' employees at the Debtors' Campus, distribution center and home office (the "Corporate Bonus Plans").[7]  Similar to the Store Bonus Plans, amounts paid under the Corporate Bonus Plans are based upon certain key performance indicators.  Based upon payment history, the Debtors estimate that their obligations under the Corporate Bonus Plans, as of the Petition Date, are approximately $71,000.

---

[5]     In addition, the Debtors provide their employees with certain leave policies (including military duty leave, jury duty leave, maternity leave, state disability leave, bereavement, workers' compensation leave, medical leave, family medical leave and other personal reasons), some of which are mandated or encouraged by law and some of which may have pay or benefits components.  The Debtors also provide their employees with paid time off ("PTO"); PTO can be used by Employees for vacations, holidays, sick time and personal days.

[6]     The vast majority of the Store Employees that earn incentive payments under the Store Bonus Plans are based in the Debtors' retail stores, however, some of such employees are based in the Debtors' Campus, kitchen or distribution center locations.

[7]     There are certain employees that may qualify as an insider under section 101(31) of the Bankruptcy Code and are eligible for the Corporate Bonus Plan.  The Debtors do not seek authority to make payments to any of these potential "insider" employees on account of any postpetition obligations that may accrue under the Corporate Bonus Plan.  The Debtors respectfully request authority to continue Bonus Programs for all non-insider employees out of an abundance of caution, as the Bonus Programs are an ordinary course activity under section 363(c)(1) of the Bankruptcy Code and authorization to continue the Bonus Programs for non-insider employees is therefore unnecessary.

### Prepetition Business Expenses

6.      The Debtors customarily reimburse their employees for a variety of business expenses incurred in the ordinary course of their businesses.  Generally, the Debtors reimburse no more than approximately $349,000 in such business expenses on a monthly basis. It is difficult for the Debtors to determine the exact amount of Prepetition Business Expenses that are outstanding, because employees may not submit reimbursement forms promptly. Nonetheless, the Debtors estimate that their obligations for Prepetition Business Expenses as of the Petition Date to employees will not exceed $668,000.  The Debtors seek authorization to reimburse all Prepetition Business Expenses.[8]

### Prepetition Benefits

7.      The Prepetition Benefits relate to the Debtors' employee benefit programs, including:  (i) plans maintained by the Debtors that provide medical, dental, vision, prescription drug, life, accident and disability insurance; (ii) flexible spending accounts; (iii) commuter benefits; (iv) employment assistance programs; and (v) a 401(k) retirement plan for certain of their employees (collectively, the "Benefit Programs").[9]

8.      Certain Prepetition Benefits were owed but remained unpaid as of the Petition Date because various obligations under the Benefit Programs accrued either in whole or in part prior to the Petition Date, but will not become payable in the ordinary course of the

---

[8]      Certain of the Debtors' Prepetition Business Expenses include the Debtors' company credit cards (the "Company Cards").  The Debtors have issued approximately 50 Company Cards to certain employees in senior management positions to cover business related expenses and therefore avoid the undue burden for those eligible employees to have to incur such expenses to their personal credit cards.  As of the Petition Date, the outstanding balance on the Company Cards was approximately $319,000.

[9]      The descriptions of the Debtors' Benefit Programs contained herein are provided for convenience only and are qualified in all respects by the actual terms of such programs.  Nothing contained herein shall have the effect of modifying the terms of the Benefit Programs or altering any party's rights and obligations thereunder.

NYI-4546446v1
RLF1 9415856v.1

Debtors' business until a later date.  The Debtors estimate that the value of the unpaid Prepetition

Benefits was no more than $714,000 as of the Petition Date.  The Debtors seek authorization to

pay all Prepetition Benefits that, as of the Petition Date, had accrued but remained unpaid.

***Costs and Expenses Incident to the Foregoing***

9.      The Debtors incur costs incident to Prepetition Compensation and

Deductions, such as processing costs and the employer portion of payroll-related taxes, as well as

accrued but unpaid prepetition charges for administration of the Prepetition Benefits, such as

payments owed to ADP, which administers the Debtors' payroll, Wells Fargo, which administers

the Debtors' 401K program, Conexis, which administers the Debtors' COBRA and flexible

spending accounts and Secova, which administers the Debtors' benefits billing (collectively, the

"Prepetition Processing Costs").  The Debtors estimate that the aggregate amount of Prepetition

Processing Costs that have accrued but remain unpaid, as of the Petition Date, was no greater

than $1,024,000.  Payment of the Prepetition Processing Costs is justified because the failure to

pay any such amounts might disrupt services provided by third-party providers with respect to

Prepetition Compensation, Deductions and Prepetition Benefits.  By paying the Prepetition

Processing Costs, the Debtors may avoid even temporary disruptions of such services and

thereby ensure that their employees obtain all compensation and benefits without interruption.

The Debtors seek authorization to pay all Prepetition Processing Costs.

***Tesco Employee Payments***

10.      The Debtors have certain retention, severance and other bonus obligations

to some of their employees, a small number of whom may qualify as insiders under section

101(31) of the Bankruptcy Code, which will come due after the Petition Date (the "Future

Employment Obligations").  Tesco (or an affiliate thereof) has agreed to satisfy the Future

Employment Obligations as and when they become due and by direct payments to such eligible

employees (the "Tesco Employee Payments").  The Tesco Employee Payments will neither create any obligations owed by the Debtors to Tesco on behalf of such payments nor reduce any obligations Tesco may have to the Debtors.  Accordingly, Tesco's agreement to pay the Tesco Employee Payments will not result in any detriment to the Debtors' estates.

## Legal Basis for Relief Requested

11.    The payment of the Prepetition Compensation, Prepetition Business Expenses, Prepetition Benefits and Prepetition Processing Costs is warranted under sections 105(a), 363, 507(a)(4), 507(a)(5), 541(b)(7) and 541(d) of the Bankruptcy Code and case law in this District and elsewhere.[10]

### *Employee Wages and Related Costs Enjoy Priority Status under the Bankruptcy Code*

12.    Under section 507(a)(4) of the Bankruptcy Code, employees receive a priority claim for:

> allowed unsecured claims, but only to the extent of $12,475 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for —
>
> (A)    wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B)    sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an

---

[10]    Nothing contained herein is intended or shall be construed as:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim against the Debtors would constitute a claim for Prepetition Compensation, Prepetition Business Expenses, Prepetition Benefits or Prepetition Processing Costs; or (v) the assumption of any contract.

NYI-4546446v1
RLF1 9415856v.1

independent contractor in the sale of goods or services was earned from the debtor . . . .

11 U.S.C. § 507(a)(4).  Likewise, under section 507(a)(5) of the Bankruptcy Code, employees

are granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan —
>
> (A)     arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)     for each such plan, to the extent of —
>
> (i)     the number of employees covered by each such plan multiplied by $12,475; less
>
> (ii)     the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

13.     In addition, the costs of administering employee benefits programs are

also entitled to priority treatment under section 507(a)(5) of the Bankruptcy Code.  See

Allegheny Int'l, Inc. v. Metro. Life Ins. Co., 145 B.R. 820 (W.D. Pa. 1992).  In Allegheny, the

court ruled that the prepetition claims of a medical benefits plan administrator for, among other

things, fees charged for performing administrative, actuarial and claims services in connection

with the medical benefits plans of a chapter 11 debtor were entitled to priority under section

507(a)(5) of the Bankruptcy Code.  The court stated that "[i]t would be useless to prioritize

expenses for contributions to an employee benefit plan and not prioritize the expenses necessary

to administer those plans."  Id. at 822-23.

14.     In the instant case, the Debtors believe that the amount of Prepetition

Compensation and Prepetition Benefits owing to or on account of the overwhelming majority of

their employees will not exceed the sum of $12,475 allowable as a priority claim under

sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  Therefore, authorizing the Debtors to

satisfy these amounts would not deplete funds that would otherwise be available to other

unsecured creditors under a chapter 11 plan.  Likewise, because the Prepetition Processing Costs

also are entitled to priority under section 507(a)(5) of the Bankruptcy Code, amounts paid on

account of such Prepetition Processing Costs will not deplete funds that would otherwise be

available for distribution to unsecured creditors.

***Funds Held in Trust Are Not
Available for General Distribution to Creditors***

15.     Section 541(d) of the Bankruptcy Code provides that "property in which

the debtor holds, as of the commencement of the case, only legal title and not an equitable

interest" becomes property of a debtor's estate only to the extent of the debtor's legal title therein.

11 U.S.C. § 541(d).  It is well established in this District that "property a debtor holds in trust for

another is not property of the estate" within the meaning of section 541 of the Bankruptcy Code.

See Golden v. The Guardian (In re Lenox Healthcare, Inc.), 343 B.R. 96, 100 (Bankr. D.

Del. 2006); see also In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1059 (3d Cir. 1993)

(concluding that property which a debtor holds in trust — either express or constructive — for

another does not become property of the estate when the debtor files for bankruptcy; stating that

"Congress clearly intended the exclusion created by section 541(d) to include not only funds held

in express trust, but also funds held in constructive trust."); EBS Pension L.L.C. v. Edison Bros.

Stores, Inc. (In re Edison Bros., Inc.), 243 B.R. 231, (Bankr. D. Del. 2000) (same).

16.     More specifically, it is well established under section 541(d) of the

Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate.

See Begier v. IRS, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes

and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); see also In re Calabrese, 689 F.3d 312, 321 (3d Cir. 2012) (finding that third-party sales taxes collected by a retailer "resemble trust fund taxes" and "never become property of the estate" but "are merely held by the debtor on behalf of the party that owes the tax"); Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property).  Accordingly, such funds are not available for general distribution to a debtor's creditors.

17.    The Withholdings are held in trust for the benefit of the appropriate federal, state or local taxing authorities.  Likewise, certain of the Deductions also are held in trust for, among others, the Debtors' employees themselves.  Thus, the Withholdings and Deductions likely are not property of the Debtors' estates within the meaning of section 541 of the Bankruptcy Code.  As a result, the remittance of the Withholdings and Deductions is warranted because it will not adversely affect the Debtors' estates or their creditors.

18.    Further, many federal, state and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted.  Accordingly, if these amounts remain unpaid, there is a risk that the Debtors' officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of these chapter 11 cases.  Such lawsuits obviously would constitute a significant distraction for officers and directors at a time when they

-10-

should be focused on the Debtors' efforts to (i) stabilize their postpetition business operations and (ii) develop and implement a successful bankruptcy strategy.  To avoid the serious disruption of the Debtors' bankruptcy-related efforts that could result from the nonpayment of any withholding taxes, the Debtors seek authority to remit all Withholdings collected on behalf of the employees, including prepetition Withholdings, to the applicable taxing authorities to the extent that that they have not already been remitted.

***Certain Employee Withholdings and
Contributions for ERISA Plans Are Not Property of the Estate***

19.     In addition to the general exclusion of certain property from a debtor's estate under section 541(d) of the Bankruptcy Code, section 541(b)(7) of the Bankruptcy Code specifically provides that property of the estate does not include amounts withheld by an employer from wages of an employee, or amounts received by an employer from employees, for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 ("ERISA").  Amounts withheld or collected from employees on account of certain Prepetition Benefits, such as 401(k) accounts, medical, life, disability and other insurance, or other benefits that are subject to title I of ERISA and thus satisfy the standards of section 541(b)(7) of the Bankruptcy Code, are not property of the Debtors' estates and not available for distribution to the Debtors' creditors.  As such, the remittance of amounts constituting Prepetition Benefits that do not constitute property of the Debtors' estates will not adversely affect the Debtors' estates or their creditors and is therefore warranted.

NYI-4546446v1
RLF1 9415856v.1

***The Doctrine of Necessity Provides***
***a Further Basis for Granting the Requested Relief***

20.     Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code under equitable common law principles.

21.     Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor . . . to pay prepetition claims where such payment is essential to the continued operations of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted).  The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882).  "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."  In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999).

22.    Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code.  See In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing In re Lehigh & New England Rwy. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'")).

23.    The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  See In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

24.    This Motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to the continued operation of the Debtors.  The immediate impairment of the Debtors' relationships with their employees and the irreparable harm to workforce morale sure to attend any delay or disruption in the payments and benefits provided to employees — at the very time when the dedication, confidence and cooperation of those employees is most critical —will have an immediate harmful impact on the Debtors' operations and the going concern value of the estates.

NYI-4546446v1
RLF1 9415856v.1

25.     Indeed, maintaining the goodwill of the Debtors' employees and ensuring the uninterrupted availability of their services will (i) assist the Debtors in maintaining the necessary "business as usual" atmosphere and, in turn, protect the going concern value of the estates and maximize the value ultimately available to creditors and (ii) preserve the Debtors' relationships with customers and vendors that will continue to provide value in connection with any going concern sale of the Debtors' assets.

26.     Furthermore, any harm resulting from the Debtors' failure to obtain the relief requested herein would not be limited to the Debtors' estates.  Because the amounts represented by Prepetition Compensation, Prepetition Business Expenses and Prepetition Benefits are needed to enable the Debtors' employees to meet their own personal obligations, they would suffer undue hardship and, in many instances, serious financial difficulties if the relief requested herein is not granted.  Many would likely seek other employment (possibly with the Debtors' competitors) to the detriment of the Debtors.

27.     In light of the foregoing, the Debtors respectfully submit that the payment of the employee-related obligations as requested herein is (i) in the best interests of the Debtors, their estates and their creditors and (ii) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their employees.

28.     This Court has routinely approved the payment of prepetition claims of employee wages, salaries, expenses and benefits in various chapter 11 cases.  See, e.g., In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. Jun. 18, 2013); In re Geokinetics Inc., Case No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013); In re Ormet Corp., Case No. 13-10334 (MFW) (Bankr. D. Del. Feb. 27, 2013); In re AFA Investment Inc., Case No. 12-11127 (MFW) (Bankr. D. Del. Apr. 3, 2012); In re LCI Holding Company, Inc., Case No. 12-

-14-

13319 (KG) (Bankr. D. Del. Mar. 15, 2012); <u>In re Harry & David Holdings, Inc.</u>, Case No. 11-

10884 (MFW) (Bankr. D. Del. Mar. 29, 2011).

**Request for Authority for Banks to**
**<u>Honor and Pay Checks in Connection Herewith</u>**

29.    In addition, by this Motion, the Debtors request that all applicable banks

and other financial institutions (collectively, the "<u>Banks</u>") be authorized, when requested by the

Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to

honor all fund transfer requests made by the Debtors related to Prepetition Compensation,

Prepetition Business Expenses, Prepetition Benefits and Prepetition Processing Costs, regardless

of whether such checks were presented or fund transfer requests were submitted prior to or after

the Petition Date, provided that sufficient funds are available in the applicable accounts to make

the payments.  The Debtors represent that these checks are drawn on identifiable payroll and

disbursement accounts and can be readily identified as relating directly to the authorized

payment of Prepetition Compensation, Prepetition Business Expenses, Prepetition Benefits

and/or Prepetition Processing Costs.  Accordingly, the Debtors believe that checks other than

those relating to authorized payments will not be honored inadvertently.

**<u>Requests for Immediate Relief & Waiver of Stay</u>**

30.    Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy

Procedure (the "<u>Bankruptcy Rules</u>"), the Debtors seek (i) immediate entry of an order granting

the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order.

Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is

necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the

filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose

before the filing of the petition."  Accordingly, where the failure to grant any such requested

-15-

relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

31.    As set forth above and in the First Day Declaration, the payment of the Prepetition Compensation, Prepetition Business Expenses, Prepetition Benefits and Prepetition Processing Costs is necessary to prevent the immediate and irreparable damage to the Debtors' (i) operations (and customer confidence therein) and (ii) going-concern value that would result from a collapse of employee morale.  Accordingly, the Debtors submit that ample cause exists to justify (i) the immediate entry of an order granting the relief sought herein and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Consent to Jurisdiction

32.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

33.    Notice of this Motion shall be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

NYI-4546446v1
RLF1 9415856v.1

## **No Prior Request**

34.    No previous request for relief sought herein has been made to this Court or any other court.

[The remainder of this page is intentionally blank.]

NYI-4546446v1
RLF1 9415856v.1

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  September 30, 2013
        Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins
Mark D. Collins (DE 2981)
John H. Knight (DE 3848)
Lee E. Kaufman (DE 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Paul D. Leake
Lisa Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

PROPOSED ATTORNEYS FOR DEBTORS

NYI-4546446v1
RLF1 9415856v.1

**<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (____) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**INTERIM ORDER AUTHORIZING DEBTORS TO PAY PREPETITION**
**EMPLOYEE WAGES, BENEFITS, BUSINESS EXPENSES AND RELATED ITEMS**

This matter coming before the Court on the Debtors' Motion for an Order

Authorizing Them to Pay Prepetition Employee Wages, Benefits, Business Expenses and

Related Items (the "Motion"),[2] filed by the above-captioned debtors (collectively, the "Debtors");

the Court having reviewed the Motion and the First Day Declaration and having considered the

statements of counsel and the evidence adduced with respect to the Motion at a hearing before

the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this

matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b),

(iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is

good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it

is applicable; and after due deliberation the Court having determined that the relief requested in

the Motion (i) in the best interests of the Debtors, their estates and their creditors and

---

[1]    The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636). The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

(ii) necessary to prevent immediate and irreparable harm to the Debtors, their estates and their employees; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized, in the Debtors' sole discretion, to pay the Prepetition Compensation, Prepetition Business Expenses, Prepetition Benefits and Prepetition Processing Costs that accrued but remained unpaid as of the Petition Date, in an aggregate amount not to exceed $17,328,000.

3.      Subject to entry of a final order, the Debtors are authorized, in the Debtors' sole discretion, to continue the Bonus Programs for all employees that fall outside of the definition of "insider" under section 101(31) of the Bankruptcy Code.

4.      Notwithstanding any other provision of this Order, no payments to any individual employee shall exceed the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

5.      Notwithstanding any other provision of this Order, no payments which violate section 503(c) of the Bankruptcy Code shall be made, except upon further order of this Court.

6.      The Banks are authorized and directed, when requested by the Debtors, to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, Prepetition Compensation, Prepetition Business Expenses, Prepetition Benefits and Prepetition Processing Costs, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers.  The

Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

7.      Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim is a claim for Prepetition Compensation, Prepetition Business Expenses, Prepetition Benefits or Prepetition Processing Costs; or (v) the assumption of any contract.

8.      The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

9.      This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.


Dated: _____, 2013
      Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE