**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING THEM
TO (I) MAINTAIN CERTAIN CUSTOMER PROGRAMS AND (II) HONOR
OR PAY RELATED PREPETITION OBLIGATIONS TO THEIR CUSTOMERS**

The above-captioned debtors (collectively, the "Debtors") move the Court for the entry of an order pursuant to sections 105(a), 363 and 507(a)(7) of title 11 of the United States Code (the "Bankruptcy Code"):  (i) authorizing the Debtors to (a) maintain certain Customer Programs (as defined below) and (b) honor or pay certain prepetition obligations related to the Customer Programs (collectively, the "Customer Obligations"); and (ii) granting certain related relief.  In support of this Motion, the Debtors incorporate the statements contained in the Declaration of James Dibbo in Support of First-Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

**Background**

1. On the date hereof (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[2]  By a motion filed on the Petition Date, the

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2] This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2. Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices. The Debtors currently operate 167 stores located in California, Arizona and Nevada. In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "Campus") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products. In close proximity to the Campus is one of the Debtors' two distribution centers, with the other inactive distribution center located in Stockton, California. For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

3. As described in more detail in the First Day Declaration, the Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process. The Debtors intend to liquidate all other assets not included in the proposed sale. The Debtors believe the proposed sale and the liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

*The Debtors' Customer Programs Generally*

4. The Debtors, in the ordinary course of their businesses, engage in certain marketing and sales practices that are, among other things, (i) targeted to develop and sustain a positive reputation for their goods in the marketplace and (ii) designed to attract new customers

and to enhance loyalty and sales among the Debtors' existing customer base. These customer-targeted practices (collectively, the "Customer Programs") include, but are not limited to, those practices described in the following paragraphs.

5. The Return and Exchange Policies. Consistent with industry practice, the Debtors have traditionally maintained return, refund, exchange and price-guarantee policies with respect to both cash and credit purchases to accommodate their customers' needs (collectively, the "Return and Exchange Policies"). These policies assure the Debtors' customers they will be "made whole" if merchandise is inadequate, damaged or defective, incorrectly processed, or unavailable. By this Motion, the Debtors seek authorization to maintain the Return and Exchange Policies with respect to merchandise purchased prior to the Petition Date, and to continue the Return and Exchange Policies with respect to merchandise purchased subsequent to the Petition Date in the ordinary course of business.

6. Sales Promotions. From time to time, the Debtors conduct sales promotions at selected stores (the "Sales Promotions"). The Sale Promotions include "buy one get one free" programs, weekly promotional pricing on certain merchandise and quantity buy discounts if a customer purchasers a certain quantity of a promotional item (e.g., "three for $2"). To preserve the goodwill of their customer base, the Debtors seek authorization to honor these Sales Promotions.

7. The Coupon Program. The Debtors maintain a coupon redemption program pursuant to which they honor their own coupons (collectively, the "Coupons"). The Debtors' distribute their Coupons through advertising circulars, in-store placement and through email or other methods of digital marketing. To preserve the goodwill of their customer base, the Debtors seek authorization to honor the Coupons issued prior to the Petition Date in a manner

consistent with their ordinary business practices, and to continue to issue Coupons subsequent to the Petition Date in the ordinary course of business.

8. <u>The Gift Card Program</u>. The Debtors maintain a program by which their customers can purchase gift cards that can be redeemed for merchandise at a later date (the "<u>Gift Card Program</u>"). As of September 28, 2013, approximately $329,037 in issued gift cards were outstanding. The Debtors believe that any customer claims arising under the Gift Card Program are entitled to priority over other general unsecured claims pursuant to section 507(a)(7) of the Bankruptcy Code. By this Motion, the Debtors seek authorization to maintain the Gift Card Program postpetition and to honor all gift cards purchased by customers prior to the Petition Date.

9. <u>The Friends Rewards Program</u>. The Debtors also offer their customers an opportunity to enroll in a customer reward program, whereby customers accumulate rewards points based on the amount that they spend at the Debtors' stores and other rewards points promotions (the "<u>Friends Rewards Program</u>"). For example, customers may receive "bonus" rewards points for purchasing specially-marked items or may have their rewards points multiplied on a per-item or per-purchase basis during certain promotional periods. The Debtors also target customers to receive additional rewards points promotions based on their individual shopping habits or to encourage customers to return to the Debtors' stores.

10. Customers enrolled in the Friends Reward Program can manage their rewards accounts online and are able to convert rewards points into store credit, which is then placed onto a rewards card. These rewards cards can then be used to pay for merchandise at checkout. As of the Petition Date, over 2.6 million customers have enrolled in the Friends Rewards Program, and the Debtors estimate that approximately $6.1 million in prepetition

obligations remain outstanding on account of the Friends Rewards Program. By this Motion, the Debtors seek authorization to honor these obligations.

## Legal Basis For Relief Requested

11. The Debtors submit that an order authorizing them to continue the Customer Programs as they determine to be appropriate, to honor and pay, in their discretion, the Customer Obligations arising prior to the Petition Date and to renew, modify, terminate or replace such Customer Programs in their discretion is necessary to avoid a significant disruption in the Debtors' operations and corresponding potential loss in the Debtors' going concern value.[3]

12. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, grants the bankruptcy court broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under equitable common law principles.

13. Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor . . . to pay prepetition claims where such payment is essential to the continued

---

[3] Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim against the Debtors would constitute a claim for a Customer Obligation; or (v) the assumption of any contract.

operations of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted). The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882). "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999).

14. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. See In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing In re Lehigh & New England Rwy. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'").

15. The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty. See In re CoServ,

L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

16. This Motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to the preservation of the value of the Debtors' business, property and assets. The Debtors operate in a very competitive sector. As such, the Debtors cannot afford any material disruptions of their business operations or present anything less than a "business as usual" appearance to the public during the early stages of these cases.

17. Thus, the continuation of the Customer Programs and the honoring of the Customer Obligations is warranted. Much of the success and viability of the Debtors' businesses are dependent upon their brand loyalty, reputation and confidence of their customers. The continued support of this constituency is absolutely essential to the success of the Debtors' businesses and the preservation of the value of their estates. Were the Debtors to fail to honor the Customer Obligations in the ordinary course and without interruption, they would almost certainly suffer an irreparable loss of customer support and confidence.

18. Further, as set forth in greater detail in the First Day Declaration, the Debtors negotiated an asset purchase agreement (the "Stalking Horse APA") to sell a substantial portion of the Debtors' assets (the "Sale Transaction"). Pursuant to Section 4.01 of the Stalking Horse APA, the Debtors are required to continue to operate their businesses "in the ordinary course consistent with past practice" and to "preserve the business operations, organization and goodwill associated with the Business at the Acquired Properties and present business relationships (contractual or otherwise) with customers, suppliers, resellers, employees, licensors, distributors and others having material business relationships with Sellers." In order to fulfill their obligations under the Stalking Horse APA to preserve and protect their businesses

and business relationships, the Debtors must have the ability to continue the Customer Programs in a timely manner. The failure to continue the Customer Programs in a timely manner may threaten the Debtors' ability to consummate the Sale Transaction, a result that likely would decrease the value of the Debtors' estates and potentially harm the Debtors' creditors and other parties in interest.

19. Thus, given the instant circumstances, the expenditure of estate funds required to fulfill the Debtors' Customer Obligations is minimal when compared to the benefits accruing to the Debtors from the preservation of their customer relationships. In addition, to provide necessary assurances to the Debtors' customers on a prospective basis, the Debtors request authority to continue honoring or paying all obligations to customers that arise from and after the Petition Date as appropriate under the circumstances.[4]

20. Courts in this District regularly have authorized debtors to honor and pay obligations to customers arising prior to and after the filing of their chapter 11 cases in the ordinary course of business. See, e.g., In re AFA Investment Inc., *et al.*, Case No. 12-11127 (MFW) (Bankr. D. Del. Apr. 3, 2012); In re Blitz U.S.A., Inc. *et al.*, Case No. 11-13603 (PJW) (Bankr. D. Del. Nov. 10, 2011); In re Chef Solutions Holdings, LLC, Case No. 11-13139 (KG) (Bankr. D. Del. Oct. 5, 2011); In re Harry & David Holdings, Inc., *et al.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011).

---

[4] The Debtors believe that, pursuant to section 363(c) of the Bankruptcy Code and other governing statutory and case law, they possess the authority to continue such Customer Programs without an express grant of authority from the Court, but seek such approval out of an abundance of caution to provide further assurances to their customers that these programs will continue to be available if offered by the Debtors.

**Request for Authority for Banks to
Honor and Pay Checks in Connection Herewith**

21. In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, Customer Obligations, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.  The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Customer Obligations.  Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

**Requests for Immediate Relief & Waiver of Stay**

22. Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an order granting the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order

authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

23. As set forth above and the First Day Declaration, the honoring and payment of the Customer Obligations is necessary to prevent the immediate and irreparable damage to the Debtors' retail operations and going-concern value that would result from a collapse of customer confidence in the Debtors. Accordingly, the Debtors submit that ample cause exists to justify: (i) the immediate entry of an order granting the relief sought herein; and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Consent to Jurisdiction

24. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

25. Notice of this Motion shall be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m). Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

## No Prior Request

26. No previous request for relief sought herein has been made to this Court or any other court.

NYI-4546447v1
RLF1 9415859v.1

-10-

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>: (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

| | |
|---|---|
| Dated: September 30, 2013<br>Wilmington, Delaware | Respectfully submitted,<br><br>/s/ Mark D. Collins<br>Mark D. Collins (DE 2981)<br>John H. Knight (DE 3848)<br>Lee E. Kaufman (DE 4877)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone: (302) 651-7700<br>Facsimile: (302) 651-7701<br><br>-and-<br><br>Paul D. Leake<br>Lisa Laukitis<br>JONES DAY<br>222 East 41st Street<br>New York, New York 10017<br>Telephone: (212) 326-3939<br>Facsimile: (212) 755-7306<br><br>PROPOSED ATTORNEYS FOR DEBTORS |

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| FRESH & EASY NEIGHBORHOOD MARKET INC., *et al.,*[1] | : | Case No. 13-_____ (___) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**ORDER AUTHORIZING THE DEBTORS TO (I) MAINTAIN
CERTAIN CUSTOMER PROGRAMS AND (II) HONOR OR
PAY RELATED PREPETITION OBLIGATIONS TO THEIR CUSTOMERS**

This matter coming before the Court on the Debtors' Motion for an Order Authorizing Them to (I) Maintain Certain Customer Programs and (II) Honor or Pay Related Prepetition Obligations to Their Customers (the "Motion"),[2] filed by the above-captioned debtors (collectively, the "Debtors"); the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; after due deliberation the Court having determined that the relief requested in the Motion is (i) in the best interests of the Debtors, their

---

[1]  The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]  Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

estates and their creditors and (ii) necessary to prevent immediate and irreparable harm to the Debtors and their estates; and good and sufficient cause having been shown;

    IT IS HEREBY ORDERED THAT:

    1.  The Motion is GRANTED.

    2.  The Debtors are authorized, in their sole discretion, to continue, renew, modify, terminate or replace the Customer Programs.

    3.  The Debtors are authorized, in their sole discretion, to satisfy all Customer Obligations relating to the Gift Card Program and Friends Rewards Program in an aggregate amount not to exceed $8 million. The Debtors are authorized, in their sole discretion, to honor and fulfill all other Customer Obligations in the ordinary course of business.

    4.  The Banks are authorized, when requested by the Debtors, to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, Customer Obligations, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

    5.  Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute a Customer Obligation; or (v) the assumption of any contract.

    6.  The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

-3-

       7.       This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

Dated: _____, 2013　　　　　　　_____
       Wilmington, Delaware　　　　　　　　　　　UNITED STATES BANKRUPTCY JUDGE