**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

**DEBTORS' MOTION FOR AN ORDER**
**(I) AUTHORIZING THE DEBTORS TO PAY CLAIMS ENTITLED**
**TO PRIORITY AS ADMINISTRATIVE EXPENSES UNDER SECTION 503(b)(9)**
**OF THE BANKRUPTCY CODE AND (II) GRANTING CERTAIN RELATED RELIEF**

The above-captioned debtors (collectively, the "Debtors") hereby move the Court for the entry of an order pursuant to sections 105(a), 363, 503(b)(9) and 507 of title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing them to pay the prepetition claims of certain parties that are entitled to administrative priority under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claimants") and (ii) granting certain related relief. In support of this Motion, the Debtors incorporate the statements contained in the Declaration of James Dibbo in Support of First-Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

**Background**

1. On the date hereof (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[2] By a motion filed on the Petition Date, the

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636). The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2] This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2. Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("<u>Tesco</u>"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices. The Debtors currently operate 167 stores located in California, Arizona and Nevada. In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "<u>Campus</u>") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products. In close proximity to the Campus is one of the Debtors' two distribution centers, with the other inactive distribution center located in Stockton, California. For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

3. As described in more detail in the First Day Declaration, the Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "<u>Proposed Buyer</u>"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process. The Debtors intend to liquidate all other assets not included in the proposed sale. The Debtors believe the proposed sale and the liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

***The 503(b)(9) Claimants***

4. Prior to the Petition Date, and in the ordinary course of their businesses, the Debtors purchased and received a variety of inventory and other goods used in their grocery operations. The Debtors received certain amounts of these goods within the 20 days

immediately prior to the Petition Date.  Section 503(b)(9) of the Bankruptcy Code provides a priority status for prepetition claims for the value of goods received within the 20-day period (the "503(b)(9) Claims").

5. The vast majority of the suppliers that hold 503(b)(9) Claims are essential to the Debtors' grocery operations.  The Debtors estimate that approximately $15 million of 503(b)(9) Claims existed as of the Petition Date.

**Legal Basis for Relief Requested**

*Allowing Payment of the 503(b)(9) Claims Will*
*Have No Adverse Impact on Claimants Holding General Unsecured Claims*

6. Section 503(b)(9) of the Bankruptcy Code classifies claims that arise in connection with goods that the Debtors received within 20 days immediately prior to the Petition Date as administrative expenses.  As administrative expenses, section 507(a)(2) of the Bankruptcy Code provides the 503(b)(9) Claims with a payment priority over general unsecured claims.  In addition, section 1129(a)(9)(A) of the Bankruptcy Code requires that the Debtors satisfy the 503(b)(9) Claims in full as part of any chapter 11 plan the Debtors may confirm in these cases.  Thus, the granting of the relief sought herein with respect to the 503(b)(9) Claimants will not afford such claimants any greater priority than they otherwise would have if the relief requested herein were not granted, and will not prejudice any other party in interest.[3]

*The Doctrine of Necessity Provides the Basis for Granting the Requested Relief*

7. In addition, payment of the 503(b)(9) Claims is necessary for the Debtors to maintain their existing vendor relationships and preserve the going concern value of the

---

[3] Nothing contained herein is intended or shall be construed as:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim against the Debtors would constitute a 503(b)(9) Claim; or (v) the assumption of any contract.

Debtors' estates. Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under equitable common law principles.

8. Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operations of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted). The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882). "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999). "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11 — a successful reorganization." Id. at 825-26.

9.      Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code.  See In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing In re Lehigh & New England Rwy. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'")).

10.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  See In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

11.     This Motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to the Debtors' reorganization.  The vast majority of the 503(b)(9) Claimants provide goods that are critical to the Debtors' ongoing operations.  The Debtors operate in a highly competitive business sector, and the Debtors cannot afford any material disruptions of their business operations or present anything less than a "business as usual" appearance to the public.  In fact, any erosion in the Debtors' relationships with their suppliers may threaten the Debtors' ability to keep their stores adequately stocked, a result that could substantially harm customer satisfaction.

NYI-4546448v1
RLF1 9415860v.1

12. The Debtors, moreover, intend to reserve the right to make any such payments to the 503(b)(9) Claimants in their sole discretion, and to require, as a condition to payment, that each 503(b)(9) Claimant agree to: (i) release any liens it may have and, (ii) on a prospective basis, provide credit, pricing or payment terms equal to, or better than, those provided to the Debtors prepetition. By reserving the right to require, as a condition to any payment on account of any 503(b)(9) Claim, that the 503(b)(9) Claimants agree to release any liens and provide credit terms equivalent to those provided prepetition, the Debtors anticipate that they will be able to enhance their liquidity during these chapter 11 cases to the benefit of their estates and creditors.

13. Further, as set forth in greater detail in the First Day Declaration, the Debtors negotiated an asset purchase agreement (the "Stalking Horse APA") to sell a substantial portion of the Debtors' assets (the "Sale Transaction"). Pursuant to Section 4.01 of the Stalking Horse APA, the Debtors are required to continue to operate their businesses "in the ordinary course consistent with past practice" and to "preserve the business operations, organization and goodwill associated with the Business at the Acquired Properties and present business relationships (contractual or otherwise) with customers, suppliers, resellers, employees, licensors, distributors and others having material business relationships with Sellers." In order to fulfill their obligations under the Stalking Horse APA to preserve and protect their businesses and business relationships, the Debtors must have the ability to pay the 503(b)(9) Claimants in a timely manner. Failure to pay the 503(b)(9) Claimants in a timely manner may threaten the Debtors' ability to consummate the Sale Transaction, a result that likely would decrease the value of the Debtors' estates and potentially harm the Debtors' creditors and other parties in interest.

Accordingly, the Debtors respectfully submit that the Court should allow the Debtors to pay the 503(b)(9) Claims in the ordinary course of business.

### Request for Authority for Banks to Honor and Pay Checks in Connection Herewith

14. The Debtors also request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to 503(b)(9) Claimants, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of 503(b)(9) Claims. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

### Requests for Immediate Relief & Waiver of Stay

15. Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an order granting the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the

twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

16. As set forth above and the First Day Declaration, the honoring and payment of the 503(b)(9) is necessary to prevent the immediate and irreparable damage to the Debtors' retail operations, going-concern value and ability to reorganize that would result from a collapse of customer confidence in the Debtors.  Accordingly, the Debtors submit that ample cause exists to justify:  (i) the immediate entry of an order granting the relief sought herein; and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**Consent to Jurisdiction**

17. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**Notice**

18. Notice of this Motion shall be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; (v) the 503(b)(9) Claimants and (vi) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

-8-

NYI-4546448v1
RLF1 9415860v.1

## **No Prior Request**

19. No previous request for relief sought herein has been made to this Court or any other court.

NYI-4546448v1
RLF1 9415860v.1

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

| | |
|---|---|
| Dated:  September 30, 2013<br>Wilmington, Delaware | Respectfully submitted,<br><br>/s/ Mark D. Collins<br>Mark D. Collins (DE 2981)<br>John H. Knight (DE 3848)<br>Lee E. Kaufman (DE 4877)<br>RICHARDS, LAYTON & FINGER, P.A.<br>One Rodney Square<br>920 North King Street<br>Wilmington, Delaware 19801<br>Telephone:  (302) 651-7700<br>Facsimile:  (302) 651-7701<br><br>-and-<br><br>Paul D. Leake<br>Lisa Laukitis<br>JONES DAY<br>222 East 41st Street<br>New York, New York  10017<br>Telephone:  (212) 326-3939<br>Facsimile:  (212) 755-7306<br><br>PROPOSED ATTORNEYS FOR DEBTORS |

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**ORDER (I) AUTHORIZING THE DEBTORS TO PAY CLAIMS ENTITLED TO PRIORITY AS ADMINISTRATIVE EXPENSES UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE AND (II) GRANTING CERTAIN RELATED RELIEF**

This matter coming before the Court on the Debtors' Motion for an Order (I) Authorizing the Debtors to Pay Claims Entitled to Priority as Administrative Expenses Under Section 503(b)(9) of the Bankruptcy Code and (II) Granting Certain Related Relief (the "Motion"),[2] filed by the above-captioned debtors (collectively, the "Debtors"); the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this District pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) good cause exists to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; after due deliberation the Court having determined that the relief requested in the Motion is necessary and

---

[1]   The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]   Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Motion.

NYI-4546448v1
RLF1 9415860v.1

essential for the Debtors' reorganization and that such relief is in the best interests of the Debtors, their estates and their creditors; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Debtors are authorized, but not required, to pay, in their sole discretion and in the ordinary course of their businesses without further order of this Court, the 503(b)(9) Claims. Nothing in this paragraph shall be construed as requiring the Debtors to make a payment to a particular creditor or claimant.

3. The Banks are authorized, when requested by the Debtors in the Debtors' sole discretion, to receive, process, honor and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to 503(b)(9) Claimants, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and fund transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

4. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim against the Debtors is an administrative claim under section 503(b)(9) of the Bankruptcy Code; or (v) the assumption of any contract.

5. The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

-3-

      6.      Pursuant to Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.


Dated: _____, 2013
       Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE