**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

**DEBTORS' MOTION FOR AN ORDER**
**(I) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION**
**LIEN CLAIMANTS AND (II) GRANTING CERTAIN RELATED RELIEF**

The above-captioned debtors (collectively, the "Debtors") move the Court for the entry of an order pursuant to sections 105(a), 363 and 507(a) of title 11 of the United States Code (the "Bankruptcy Code"): (i) authorizing them to pay certain prepetition claims of vendors and providers within the distribution network for the Debtors' goods and miscellaneous lien claimants and (ii) granting certain related relief. In support of this Motion, the Debtors incorporate the statements contained in the Declaration of James Dibbo in Support of First-Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

**Background**

1. On the date hereof (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[2] By a motion filed on the Petition Date, the

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636). The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2] This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

NYI-4546449v1
RLF1 9415855v.1

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2.  Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices.  The Debtors currently operate 167 stores located in California, Arizona and Nevada.  In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "Campus") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products.  In close proximity to the Campus is one of the Debtors' two distribution centers, with the other inactive distribution center located in Stockton, California.  For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

3.  As described in more detail in the First Day Declaration, the Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process.  The Debtors intend to liquidate all other assets not included in the proposed sale.  The Debtors believe the proposed sale and the liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

*The Debtors' Distribution Network Vendors*

4.  The Debtors operate nearly 167 grocery stores (the "Markets") in the ordinary course of business.  An integral component of operating the Debtors' Markets is the efficient flow of inventory and products to and from their manufacturing, assembly, storage

facilities and Markets.  Accordingly, the Debtors rely extensively on numerous common commercial carriers, movers, shippers, warehousemen, truckers, shipping auditing services, customs brokers and certain other third-party vendors and service providers (collectively, the "Distribution Network Vendors").  The Distribution Network Vendors ship, transport, store and deliver inventory, raw materials and other products (the "Goods") used in the Debtors' operations.  As such, the Distribution Network Vendors maintain possession of products vital to the Debtors' operations.  As of the Petition Date, many of the Distribution Network Vendors had claims for storage, transportation and related services previously provided to the Debtors (collectively, with any custom duties, the "Distribution Network Vendor Claims").

5.    If the Debtors fail to pay the Distribution Network Vendor Claims, the Debtors believe that many of the Distribution Network Vendors may stop providing their essential services to the Debtors.  The Debtors believe that any such interruption in obtaining the services and cooperation of the Distribution Network Vendors would:  (i) delay necessary shipments of Goods to the Debtors' manufacturing and assembly facilities and Markets; (ii) undermine the Debtors' ability to maintain the selection of inventory at their Markets necessary to retain customer loyalty (and thus impair the Debtors' ability to generate ongoing operating revenue); and (iii) adversely and irreparably affect the Debtors' ability to continue operating as a going concern.  Moreover, even if suitable alternative Distribution Network Vendors are available, the time necessary to identify these replacement providers and integrate them into the Debtors' operations likely would cause a significant disruption to the Debtors' operations.  During any such transition period, the Debtors would lose access to valuable goods held by the Distribution Network Vendors.

6.      The Distribution Network Vendors may also have the right under federal or state law to assert certain possessory liens on the Goods or property in their possession, which secure the charges or expenses incurred in connection with the transportation of Goods.[3]  Because the perfection and maintenance of the liens held by Distribution Network Vendors in most cases is dependent upon possession, it is anticipated that the Distribution Network Vendors will refuse to deliver or release such goods before their claims have been satisfied and their liens extinguished.  Such a material disruption in the Debtors' business would delay the shipment of Goods to the Debtors' Markets and ultimately impair the Debtors' ability to operate their business in the ordinary course.  As such, the Debtors have determined, in the exercise of their business judgment, that payment of the Distribution Network Vendor Claims is necessary to avoid costly disruptions to the Debtors' operations and preserve their ability to maintain the appropriate levels of inventory and product mix expected by their customers.

7.      The Debtors have reviewed actual disbursements made prior to the Petition Date for, or related to, the Distribution Network Vendor Claims.  Although it is difficult to estimate with precision the Distribution Network Vendor Claims outstanding at any given moment, the Debtors estimate that the amount of outstanding prepetition Distribution Network Vendor Claims owed to the Distribution Network Vendors was no more than $100,000 as of the Petition Date.

---

[3] For example, section 7-307 of the Uniform Commercial Code provides, in pertinent part, that a "carrier has a lien on the goods covered by a bill of lading for charges subsequent to the date of its receipt of the goods for storage or transportation (including demurrage and terminal charges) and for expenses necessary for preservation of the goods incident to their transportation or reasonably incurred in their sale pursuant to law." U.C.C. § 7-307(1). See U.C.C. § 7-209(a) ("a warehouse has a lien against the bailor on the goods covered by a warehouse receipt or storage agreement or on the proceeds thereof in its possession for charges for storage or transportation including demurrage and terminal charges, insurance, labor, or other charges, present or future, in relation to the goods, and for expenses necessary for preservation of the goods or reasonably incurred in their sale pursuant to law.").  Substantially similar versions of these provisions of the U.C.C. have been enacted in each of the major domestic jurisdictions in which the Debtors do business.

*The Debtors' Miscellaneous Lien Claimants*

8. Additionally, in the ordinary course of business, the Debtors employ the services of (the "Miscellaneous Lien Claimants" and together with the claims held by the Distribution Network Vendors, the "Distribution Network Vendor Claimants", collectively, the "Lien Claimants"). The Miscellaneous Lien Claimants could potentially assert liens, including mechanic's liens, artisan's liens and materialmen's liens (the "Miscellaneous Lien Claims") against the Debtors' property for amounts the Debtors owe to these third parties.

9. Although the Debtors were generally current with respect to their payment obligations to the Miscellaneous Lien Claimants as of the Petition Date, there may be certain obligations that remain unpaid. Absent timely payments, these Miscellaneous Lien Claimants, like the Distribution Network Vendor Claimants, may also have the right under federal or state law to assert certain possessory liens on the Debtors' equipment and other property in their possession, which secure the charges or expenses incurred in connection with their services.[4] Accordingly, the Miscellaneous Lien Claimants may be entitled to assert and perfect materialmen's, mechanics', artisans', warehousemen's or other liens (collectively the "Liens"), notwithstanding the automatic stay under section 362 of the Bankruptcy Code. See 11 U.S.C. § 362(a)(3) (the act of perfecting such a lien, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay); 11 U.S.C. § 546(b) (a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of

---

[4] Nevada, Arizona and California state law all provide for similar protection and statutory rights to Miscellaneous Lien Claimants. See, e.g., NEV. REV. STAT. § 108.222(1)(a) (a contractor has a statutory right to a mechanic's lien for the unpaid balance of the price agreed upon for labor, materials and equipment furnished); ARIZ. REV. STAT. § 33–981(A) (a lien is valid if "the work was done or the articles were furnished at the instance of the owner ... or his agent."); CAL. CIV. CODE § 8400 ("A person that provides work authorized for a work of improvement, including, but not limited to [direct contracts, subcontractors, material suppliers, equipment lessors, laborers, etc.] has a lien right.").

an interest in property to be effective against an entity that acquires rights in such property before the date of perfection . . . .").

11. The Debtors estimate that the amount of outstanding prepetition Miscellaneous Lien Claims owed to the Miscellaneous Lien Claimants was no more than $600,000 as of the Petition Date.

## Legal Basis for Relief Requested

11. The payment of the Distribution Vendor Network Claims and the Miscellaneous Lien Claims (collectively, the "Lien Claims") is warranted under sections 105(a), 363, 507 and 541 of the Bankruptcy Code and case law in this District and elsewhere.[5] Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code under equitable common law principles.

12. Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is

---

[5] Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim against the Debtors is a Lien Claim; or (v) the assumption of any contract.

essential to the continued operations of the debtor." In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted).  The United States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in Miltenberger v. Logansport, C. & S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882).  "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999).  "The necessity of payment doctrine recognizes that paying certain pre-petition claims may be necessary to realize the goal of chapter 11. . . . ." Id. at 825-26.

    13. Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code.  See In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing In re Lehigh & New England Rwy. Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'").

    14. The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  Indeed, a debtor in possession operating a business under

section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  <u>See</u> <u>In re CoServ, L.L.C.</u>, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

15. This Motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to maximize value for the Debtors' estates, and payment of the Lien Claims represents a reasonable exercise of the Debtors' business judgment.  It is essential that the Debtors be permitted immediately to pay the Distribution Network Vendor Claims to insure that the flow of Goods to the Debtors' Markets remains constant, timely and efficient.  Should the Debtors' flow of Goods be interrupted for even a brief time, the Debtors could suffer disruptions of their business, with a corresponding loss of customer confidence.  As the Debtors operate in the highly competitive retail grocery industry, the Debtors cannot afford any material disruptions of their business operations or present anything less than a "business as usual" appearance to the public.

16. In addition, because the amounts of most of the Liens Claims are less than the value of the property securing those claims, it appears that many of the Lien Claimants are (or will allege that they are) fully secured creditors. In general, pursuant to section 506 of the Bankruptcy Code, fully secured creditors are entitled to receive (i) payment in full of their prepetition claims and (ii) the postpetition interest accruing on such claims up to the value of the collateral.  Consequently, payment of the Lien Claims now will (i) in most cases give the Lien Claimants no more than they otherwise would be entitled to receive on account of their claims in the chapter 11 process and (ii) potentially save the Debtors the cost of interest that otherwise may

accrue on the Lien Claims.  Accordingly, the Debtors' general unsecured creditors are not prejudiced by the relief sought herein.

17. The Debtors, moreover, intend to reserve the right to make any such payments in their sole discretion, and to require, as a condition to payment, that each Lien Claimant agree to (i) release any liens it may have and (ii) on a prospective basis, provide credit, pricing or payment terms equal to, or better than, those provided to the Debtors prepetition.  By reserving the right to require, as a condition to any payment on account of any Lien Claim, that the Lien Claimants agree to release any Liens and provide credit terms equivalent to those provided prepetition, the Debtors anticipate that they will be able to enhance their liquidity during these chapter 11 cases to the benefit of their estates and creditors.

18. Further, as set forth in greater detail in the First Day Declaration, the Debtors negotiated an asset purchase agreement (the "Stalking Horse APA") to sell a substantial portion of the Debtors' assets (the "Sale Transaction").  Pursuant to Section 4.01 of the Stalking Horse APA, the Debtors are required to continue to operate their businesses "in the ordinary course consistent with past practice" and to "preserve the business operations, organization and goodwill associated with the Business at the Acquired Properties and present business relationships (contractual or otherwise) with customers, suppliers, resellers, employees, licensors, distributors and others having material business relationships with Sellers."  In order to fulfill their obligations under the Stalking Horse APA to preserve and protect their businesses and business relationships, the Debtors must have the ability to pay the Lien Claimants in a timely manner.  The failure to pay the Lien Claimants in a timely manner may threaten the Debtors' ability to consummate the Sale Transaction, a result that likely would decrease the value of the Debtors' estates and potentially harm the Debtors' creditors and other parties in interest.

19. Indeed, it is common for courts in this District to authorize the payment of claims of providers and vendors within the distribution network for a debtor's goods where the payment of such claims is essential to a debtor's continued operations. See, e.g., In re AFA Inv. Inc., No. 12-11127 (MFW) (Bankr. D. Del. Apr. 3, 2012); In re Chef Solutions Holdings, LLC., No. 11-13139 (KG) (Bankr. D. Del. Oct. 5, 2011); In re Harry & David Holdings, Inc., No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); In re Appleseed's Intermediate Holdings LLC, No. 11-10160 (KG) (Bankr. D. Del. Feb. 23, 2011); In re Atrium Corp., No. 10-10150 (BLS) (Bankr. D. Del. Feb 23, 2010); In re Boscov's Inc., No. 08-11637 (KG) (Bankr. D. Del. Aug. 5, 2008); In re Linens Holding Co., No. 08-10832 (CSS) (Bankr. D. Del. May 2, 2008).

### Request for Authority for Banks to Honor and Pay Checks in Connection Herewith

20. In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, Lien Claims, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Lien Claims. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

### Requests for Immediate Relief & Waiver of Stay

21. Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an order granting

the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."  Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

22.     As set forth above and in the First Day Declaration, the payment of the Lien Claims is necessary to prevent the immediate and irreparable damage to the Debtors' operations (and customer confidence therein), going-concern value and ability to maximize value that would result from the Debtors' inability to obtain indispensable goods and services. Accordingly, the Debtors submit that ample cause exists to justify (i) the immediate entry of an order granting the relief sought herein and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Consent to Jurisdiction

23.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

24.     Notice of this Motion shall be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated

NYI-4546449v1
RLF1 9415855v.1

-11-

list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m). Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

## No Prior Request

25. No previous request for relief sought herein has been made to this Court or any other court.

[The remainder of this page is intentionally blank.]

-13-

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as <u>Exhibit A</u>:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  September 30, 2013
       Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins
Mark D. Collins (DE 2981)
John H. Knight (DE 3848)
Lee E. Kaufman (DE 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Paul D. Leake
Lisa Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

PROPOSED ATTORNEYS FOR DEBTORS

## **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**ORDER (I) AUTHORIZING THE PAYMENT
OF CERTAIN PREPETITION LIEN CLAIMANTS
AND (II) GRANTING CERTAIN RELATED RELIEF**

This matter coming before the Court on the Motion of the Debtors for an Order Authorizing the Debtors to Pay Certain Prepetition Lien Claimants (the "Motion"),[2] filed by the above-captioned debtors (collectively, the "Debtors"); the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; after due deliberation the Court having determined that the relief requested in the Motion is (i) in the best interests of the

---

[1]    The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

Debtors, their estates and their creditors and (ii) necessary to prevent immediate and irreparable harm to the Debtors and their estates; and good and sufficient cause having been shown;

        IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Debtors are authorized to pay, in their sole discretion, Distribution Network Vendor Claims in an amount not to exceed $100,000.

3. The Debtors are authorized to pay, in their sole discretion, Miscellaneous Lien Claims in an amount not to exceed $600,000.

4. The Debtors may require, as a condition to payment of any Distribution Network Vendor Claim and Miscellaneous Lien Claim, that the Lien Claimants agree to: (i) release any liens; and (ii) on a prospective basis, provide credit, pricing or payment terms equal to, or better than, those provided to the Debtors prepetition.

5. The Banks are authorized to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, the Lien Claims paid pursuant to this Order, regardless of whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

6. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular

claim is a Distribution Network Vendor Claim or a Miscellaneous Lien Claim; or (v) the assumption of any contract.

       7.      The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

       8.      This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

Dated: _____, 2013
       Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE