**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.,*[1] | : | |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

**DEBTORS' MOTION FOR AN ORDER (I) AUTHORIZING
THE PAYMENT OF PREPETITION CLAIMS ASSERTED UNDER THE
(A) PERISHABLE AGRICULTURAL COMMODITIES ACT OR (B) PACKERS
AND STOCKYARDS ACT AND (II) GRANTING CERTAIN RELATED RELIEF**

The above-captioned debtors (collectively, the "Debtors") hereby move the Court for the entry of an order pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code"):  (i) authorizing the payment of prepetition claims (collectively the "PACA/PASA Claims") asserted under the (a) Perishable Agricultural Commodities Act of 1930, as amended 7 U.S.C. §§ 499a et seq. ("PACA"), and (b) Packers and Stockyards Act of 1921, as amended 7 U.S.C. § 181 et seq. ("PASA"); and (ii) granting certain related relief. In support of this Motion, the Debtors incorporate the statements contained in the Declaration of James Dibbo in Support of First-Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further respectfully state as follows:

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

**Background**

1. On the date hereof (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[2] By a motion filed on the Petition Date, the Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2. Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices. The Debtors currently operate 167 stores located in California, Arizona and Nevada. In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "Campus") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products. In close proximity to the Campus is one of the Debtors' two distribution centers, with the other inactive distribution center located in Stockton, California. For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

3. As described in more detail in the First Day Declaration, the Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process. The Debtors intend to liquidate all other assets not included in the proposed sale. The Debtors believe the proposed sale and the

---

[2] This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

*The PACA/PASA Claims*

4.  The Debtors' grocery store operations rely on a constant supply of fresh fruits and vegetables that may fall within the definition of "perishable agricultural commodities" under PACA.[3] PACA's definition of "perishable agricultural commodities" generally includes "fruits and vegetables of every kind and character whether or not frozen or packed in ice." (the "PACA Goods"). 7 U.S.C. § 499a(b)(4). Under PACA, eligible produce suppliers and their agents are the beneficiaries of a floating non-segregated statutory trust in all of the buyer's perishable agricultural commodity inventory and proceeds (the "PACA Trust"). See 7 U.S.C. § 499e(c). The PACA Trust includes a buyer's entire inventory of food or other derivatives of perishable agricultural commodities, the products derived therefrom and the proceeds related to any sale of the commodities or products (collectively, the "PACA Trust Assets"). See 7 U.S.C. § 499e(c)(2).

5.  The Debtors also regularly purchase meat, poultry and other similar products from vendors that may be eligible to assert claims under PASA.[4] Congress enacted

---

[3] PACA's application is limited to sales to commission merchants, brokers and dealers. 7 U.S.C. § 499e(c). PACA defines the term "dealer" as "any person engaged in the business of buying or selling in wholesale or jobbing quantities, as defined by the Secretary, any perishable agricultural commodity in interstate or foreign commerce." 7 U.S.C. § 499a(b). PACA further provides that "no person buying any such commodity solely for sale at retail shall be considered a 'dealer' until the invoice cost of his purchases of perishable agricultural commodities in any calendar year are in excess of $230,000." 7 U.S.C. § 499a(b)(6)(B).

[4] Similar to PACA, PASA provides protections to unpaid sellers of livestock and/or poultry to a dealer. PASA defines the term "dealer" as any person "engaged in the business of buying and selling in commerce livestock at a stockyard." 7 U.S.C. § 201. Case law suggests that a person becomes a "dealer" under PASA if it buys livestock from stockyards that are subject to PASA. See In re Magic Rests., Inc., 205 F.3d 108, 117 n.10 (3d Cir. 2000) (J., Rendell dissenting) (citing Kelley v. United States, 202 F.3d 838, 841 (10th Cir. 1953)). PASA also provides sellers of livestock and/or poultry protection in the form of a statutory trust on a dealer's entire inventory of livestock and/or poultry, as applicable, and all products, receivables or

[Footnote continued on next page]

PASA to protect the interests of livestock producers and prescribe the conditions of operations for businesses dealing in livestock.  See In re G&L Packing Co., Inc., 20 B.R. 780, 801 n.3 (Bankr. N.D.N.Y. 1982) (noting Congress enacted PASA to "offer producers the best protection against packer bankruptcies.").  PASA creates a statutory trust scheme that is virtually identical to PACA in respect of delivery of livestock and other eligible goods (the "PASA Trust", and together with the PACA Trust, the PACA/PASA Trust")  See 7 U.S.C. § 181 et seq.; In re W.L. Bradley Co., 75 B.R. 505, 509 (Bankr. E.D. Pa. 1987) ("The Legislative history expressly notes that the [PACA Trust] was modeled on the trust amendment to the Packers and Stockyards Act.").  See 7 U.S.C. §§ 196, 197.

      6.      The Debtors estimate that they purchase approximately $430 million of goods from suppliers that are eligible suppliers of perishable agricultural commodities, perishable livestock and other eligible goods from suppliers protected by PACA and PASA (the "PACA/PASA Claimants") on an annual basis.  In addition, the Debtors estimate that the PACA/PASA Claimants held approximately $12 million in unpaid claims as of the Petition Date.  Nevertheless, the Debtors only seek authority to pay a maximum of $5 million of the PACA/PASA Claims, because the Debtors believe the vast majority of PACA/PASA Claims also qualify for administrative priority under section 503(b)(9) of the Bankruptcy Code (the "503(b)(9) Claims"), and the Debtors have filed a separate motion seeking authority to pay the 503(b)(9) Claims.

---

proceeds related to any sale of thereof immediately on the delivery of goods to such dealer.  See 7 U.S.C. §§ 196, 197.

**Legal Basis for Relief Requested**

7.  As set forth below, the protections afforded to the PACA/PASA Claimants under PACA and PASA make the payment of the PACA/PASA Claims necessary to preserve the going concern value of the Debtors' business.[5]

8.  PACA Trust Assets are preserved as a non-segregated floating trust and may be commingled with non-trust assets. See In re Magic Rests., Inc., 205 F.3d 108, 111 (3d Cir. 2000). Case law construing PACA consistently holds that PACA Trust Assets do not constitute property of the Debtors' estates under section 541 of the Bankruptcy Code. See In re Kornblum & Co., 81 F.3d 280, 284 (2d Cir. 1995); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F.Supp. 346, 348 (S.D.N.Y. 1993); W.L. Bradley Co., 75 B.R. at 513. As a result, the distribution of assets to beneficiaries of the PACA Trust falls outside of the priority scheme established by the Bankruptcy Code and the plan process (i.e., trust beneficiaries may be paid outside of, and prior to, a confirmed plan). See, e.g., Magic Rests., 205 F.3d at 110; Consumers Produce Co., Inc. v. Volante Wholesale Produce, Inc., 16 F.3d 1374, 1377-78 (3d Cir. 1994). Despite this, the disposition of the assets held in the PACA Trust remains subject to the jurisdiction of the bankruptcy court. See Monterey Mushrooms, Inc. v. Carolina Produce Distribs., Inc., 110 B.R. 207, 209 (W.D.N.C. 1990); Allied Growers Co-Op, Inc. v. United Fruit and Produce Co., 86 B.R. 14, 16 (Bankr. D. Conn. 1988).

9.  The PACA Trust offers PACA Claimants a "self-help tool that will enable them to protect themselves against the abnormal risk of losses resulting from slow-pay and no-

---

[5] Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim against the Debtors is a PACA/PASA Claim; or (v) the assumption of any contract.

pay practices by buyers or receivers of [PACA Goods]." 49 F.R. § 45735 (1984).[6]  Failure to maintain a PACA Trust and make full payment promptly to trust beneficiaries is unlawful.  See 7 U.S.C. § 499b(4).  Moreover, purchasers of PACA Goods "are required to maintain trust assets in a manner that such assets are freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities[; and] . . . [a]ny act or omission inconsistent with this responsibility, including dissipation of trust assets, is unlawful . . . ."  7 C.F.R. § 46.46(d)(1).  Dissipation of PACA Trust Assets is defined as the diversion of trust assets or the impairment of a seller's right to obtain payment.  See 7 C.F.R. § 46.46(a)(2).  Upon a showing that the PACA Trust is being dissipated or threatened with dissipation, sellers of goods governed by PACA may seek and obtain an immediate injunction requiring non-dissipation of PACA Trust Assets if the seller is not paid. See Frio Ice, S.A. v. Sunfruit, Inc., 918 F.2d 154 (11th Cir. 1990).

    10. PASA creates a statutory trust scheme which is virtually identical to the PACA Trust, but addresses the supply of livestock, poultry or other eligible goods to dealers.  See  W.L. Bradley Co., 75 B.R. at 509.  Indeed, "PACA's trust provision was modeled on that of [PASA]" Magic Rests., 205 F.3d at 115, n.8.  As such, like the PACA Trust, PASA provides sellers of livestock, poultry and other eligible goods protection in the form of a statutory trust on a dealer's entire inventory of such goods, as applicable, and all products, receivables or proceeds

---

[6]  PACA includes provisions that require sellers of PACA Goods to take certain steps in order to preserve their rights as trust beneficiaries.  To qualify as a beneficiary of the PACA Trust, which is imposed upon delivery of qualifying goods to the buyer, the seller of the PACA Goods must provide a written notice (the "PACA Notice") to the buyer of such goods of its intent to preserve the benefits of the PACA Trust. 7 U.S.C. § 499e(c)(3)-(4).  The PACA Notice can take one or two forms.  A seller can either (i) put the statutorily-mandated language on the face of its invoices or (ii) provide written notice to the buyer of fresh produce within thirty (30) days after the time payment is due.  See 7 U.S.C. § 499e(c)(3)-(4).

Sellers who adhere to the statutory notice requirements outlined above are entitled to prompt payment from the PACA Trust Assets ahead of secured and unsecured creditors of a debtor's estate.  See "R" Best Prod. Inc. v. 646 Corp., 2002 WL 31453909, at *1 (S.D.N.Y. Oct. 31, 2001).  A seller's failure to comply with the notice requirements set forth in PACA renders its claim a general unsecured claim.  See In re H.R. Hindle & Co., 149 B.R. 775, 786 (Bankr. N.D. Cal. 1990).

related to any sale thereof immediately on the delivery of goods to such dealer.  See 7 U.S.C. §§ 196, 197.

*Payment of the PACA/PASA Claims Is Warranted*

11.     As set forth above, the PACA/PASA Claimants likely are entitled to payment from the PACA/PASA Trust ahead of the Debtors' other creditor and outside any plan of reorganization.  As such, payment of the PACA/PASA Claims will not prejudice or affect the amount available for distribution to other creditors of the Debtors.

12.     Further, in certain circumstances, shareholders, officers, or directors of a corporate entity who are in a position to control trust assets, but breach the fiduciary duty to preserve those assets, may be held personally liable under PACA and PASA.  See Sunkist Growers, Inc. v. Fisher, 104 F.3d 280, 283 (9th Cir. 1997); Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 349 (S.D.N.Y. 1993) (noting PASA, like PACA, provides that "any failure to account for or preserve trust assets, for whatever reason and however innocent, creates a liability for those trust assets."); see also Goldman-Hayden Co. v Fresh Source Produce, Inc., 217 F.3d 348, 350 (5th Cir. 2000) (noting that a court will inquire (i) whether the individual's involvement with the corporation was sufficient to establish legal responsibility and (ii) whether the individual, in failing to exercise any appreciable oversight of the corporation's management, breached a fiduciary duty owed to the PACA creditors, to determine personal liability).

13.     Thus, to the extent that any valid obligations arising under PACA or PASA remain unsatisfied by the Debtors, the Debtors' officers and directors may be subject to lawsuits during the pendency of these chapter 11 cases.  Any such lawsuit (and the ensuing potential liability) would distract the Debtors and their officers and directors from their attempts

to consummate the proposed sale transaction with the Proposed Buyer (the "Proposed Sale Transaction") and the liquidation of the Debtors' remaining assets.

14. Finally, the payment of the PACA/PASA Claims will allow the Debtors to maintain their relationships with a large percentage of their most essential suppliers, the PACA/PASA Claimants. Absent the continued support of the PACA/PASA Claimants, it would be extremely difficult for the Debtors to provide the fresh, quality goods that their customers expect. In the highly competitive grocery market, the loss of customers may threaten the Debtors' ability to consummate the Proposed Sale Transaction, a result that likely would decrease the value of the Debtors' estates and potentially harm the Debtors' creditors and other parties in interest.

15. Courts in this and other jurisdictions have approved similar treatment of PACA/PASA Claims. See, e.g., In re AFA Inv. Inc., No. 12-11127 (MFW) (Bankr. D. Del. Apr. 3, 2012); In re Chef Solutions Holdings, LLC., No. 11-13139 (KG) (Bankr. D. Del. Oct. 5, 2011); In re Harry & David Holdings, Inc., No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011); In re CB Holding Corp., No. 10-13683 (MFW) (Bankr. D. Del. Nov. 19, 2010 and Jan. 10, 2011); In re Magic Brands, LLC, No. 10-11310 (BLS) (Bankr. D. Del. Apr. 23, 2010); In re VI Acquisition Corp., No. 08-10623 (KG) (Bankr. D. Del. Apr. 4, 2008); In re Buffets Holdings, Inc., No. 08-10141 (MFW) (Bankr. D. Del Feb. 13, 2008).

**Request for Authority for Banks to
Honor and Pay Checks in Connection Herewith**

16. In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to the PACA/PASA Claims,

whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of PACA/PASA Claims. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

### Requests for Immediate Relief & Waiver of Stay

17. Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an order granting the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

18. As set forth above and in the First Day Declaration, the payment of the PACA/PASA Claims is necessary to prevent the immediate and irreparable damage to the Debtors' retail operations (and customer confidence therein), going-concern value and ability to maximize value for all stakeholders that would result from the Debtors' inability to obtain indispensable goods and services. Accordingly, the Debtors submit that ample cause exists to

justify (i) the immediate entry of an order granting the relief sought herein and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Consent to Jurisdiction

19. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

20. Notice of this Motion shall be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m). Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

## No Prior Request

21. No previous request for relief sought herein has been made to this Court or any other court.

[The remainder of this page is intentionally blank.]

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit A: (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  September 30, 2013
         Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins
Mark D. Collins (DE 2981)
John H. Knight (DE 3848)
Lee E. Kaufman (DE 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

Paul D. Leake
Lisa Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

PROPOSED ATTORNEYS FOR DEBTORS

## **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**ORDER (I) AUTHORIZING THE PAYMENT
OF PREPETITION CLAIMS ASSERTED UNDER THE
(A) PERISHABLE AGRICULTURAL COMMODITIES ACT AND
(B) PACKERS AND STOCKYARDS ACT AND (II) GRANTING RELATED RELIEF**

This matter coming before the Court on the Debtors' Motion for an Order (I) Authorizing the Payment of Certain Prepetition Claims Asserted Under (A) the Perishable Agricultural Commodities Act and (B) Packers and Stockyards Act and (II) Granting Related Relief (the "<u>Motion</u>"),[2] filed by the above-captioned debtors (collectively, the "<u>Debtors</u>"); the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "<u>Hearing</u>"); the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. § 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion and the Hearing was sufficient under the circumstances and (v) there is good cause to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h) to the extent it is applicable;

---

[1]    The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]    Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

after due deliberation the Court having determined that the relief requested in the Motion is (i) in the best interests of the Debtors, their estates and their creditors and (ii) necessary to prevent immediate and irreparable harm to the Debtors and their estates; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1. The Motion is GRANTED.

2. The Debtor are authorized to pay, in their sole discretion, the PACA/PASA Claims in an aggregate amount not to exceed $ 5 million.

3. The Banks are authorized to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, the PACA/PASA Claims paid pursuant to this Order, regardless of whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

4. Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim is a PACA/PASA Claim; or (v) the assumption of any contract.

5. The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

-3-

      6.      This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

Dated: _____, 2013
        Wilmington, Delaware

                                              _____
                                              UNITED STATES BANKRUPTCY JUDGE