**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.,*[1] | : | |
| | : | |
| Debtors. | : | (Joint Administration Requested) |
| | : | |

**MOTION OF THE DEBTORS FOR AN ORDER**
**AUTHORIZING THEM TO PAY CERTAIN PREPETITION TAXES**

The above-captioned debtors (collectively, the "Debtors") move for the entry of

an order pursuant to sections 105(a), 363(b), 507(a) and 541 of title 11 of the United States Code

(the "Bankruptcy Code"):  (i) authorizing them to pay all prepetition sales, use, franchise,

property and payroll expense estate taxes as well as all other taxes, fees and governmental

obligations for which there may be personal liability for officers and directors (collectively,

the "Prepetition Taxes"); and (ii) granting certain related relief.  In support of this Motion, the

Debtors incorporate the statements contained in the Declaration of James Dibbo in Support of

First-Day Pleadings (the "First Day Declaration") filed contemporaneously herewith and further

respectfully state as follows:

**Background**

1.    On the date hereof (the "Petition Date"), each of the Debtors commenced a

case under chapter 11 of the Bankruptcy Code.[2]  By a motion filed on the Petition Date, the

---

[1]    The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

Debtors have requested that their chapter 11 cases be consolidated for procedural purposes only and administered jointly.

2.      Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices.  The Debtors currently operate 167 stores located in California, Arizona and Nevada.  In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "Campus") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products.  In close proximity to the Campus is one of the Debtors' two distribution centers, with the other inactive distribution center located in Stockton, California.  For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

3.      As described in more detail in the First Day Declaration, the Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process.  The Debtors intend to liquidate all other assets not included in the proposed sale.  The Debtors believe the proposed sale and the liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

***Prepetition Taxes Paid by the Debtors***

4.      Sales Taxes.  The Debtors collect and remit to certain taxing authorities (collectively, the "Taxing Authorities") a variety of sales, local gross receipts and other similar taxes in connection with the sale of merchandise to their customers and the sale of fixtures,

furnishings and equipment to third parties (collectively, the "Sales Taxes").  The Debtors

typically pay Sales Taxes on a monthly basis, depending on the applicable laws and regulations

of the relevant state.  As of the Petition Date, the Debtors estimate that the aggregate amount of

Sales Taxes owing to the Taxing Authorities is no more than approximately $1.2 million.

5.     Use Taxes.  The Debtors are required to pay use taxes (collectively,

the "Use Taxes") when they make certain purchases of fixed assets and consumables from an

out-of-state vendor.  If the vendor has no business operations within the state, it has no legal

obligation to charge or remit sales taxes for sales to parties within such state.  Nevertheless,

under these circumstances, various state laws require the Debtors to self-assess the amount of

sales taxes that would have been owed on purchases from out-of-state vendors and pay these

amounts as Use Taxes to the applicable Taxing Authorities.  In most jurisdictions, the Debtors

remit the Use Taxes to the Taxing Authorities on a monthly basis.  As of the Petition Date, the

Debtors estimate that the aggregate amount of Use Taxes owing to the Taxing Authorities is no

more than $56,000.

6.     Franchise Taxes.  The Debtors pay federal and state income, franchise and

similar taxes and fees (collectively, the "Franchise Taxes") to certain of the Taxing Authorities to

maintain the right to operate their business in the applicable taxing jurisdictions.  Some states

assess a flat minimum Franchise Tax on all businesses, and other states assess a Franchise Tax

based upon net operating income and may impose a minimum Franchise Tax.  Certain states will

refuse to qualify a debtor to do business in a state if Franchise Taxes have not been paid.  Most

jurisdictions assess Franchise Taxes on a quarterly or annual basis, in arrears.  In the ordinary

course of their businesses, the Debtors believe they remitted to the applicable Taxing Authorities

all such Franchise Taxes when they became due under applicable law.

7.    Property Taxes.  The Debtors pay real estate and personal property taxes (collectively, the "Property Taxes") to certain of the Taxing Authorities within those jurisdictions where the Debtors own real or personal property.  The Debtors pay Property Taxes on a quarterly, semi-annual or annual basis, depending on the applicable laws and regulations of the relevant jurisdiction.  As of the Petition Date, the Debtors estimate that the aggregate amount of Property Taxes owing to the Taxing Authorities is no more than $3.2 million.

8.    Payroll Taxes.  The Debtors pay payroll expense taxes (collectively, "Payroll Taxes") to certain of the Taxing Authorities on payroll expenses attributable to employees working in jurisdictions imposing such Payroll Taxes.  In the ordinary course of their businesses, the Debtors believe they remitted to the applicable Taxing Authorities all such Payroll Taxes when they became due under applicable law.

9.    Business License Fees and Taxes, Annual Report Taxes and other Corporate Fees.  Many municipal, county and state government agencies require businesses to obtain business licenses and pay corresponding business license fees and taxes (collectively, the "Business License Fees").  Certain state governments also require the Debtors to pay annual report or bi-annual report taxes (collectively, the "Annual Report Taxes") and other corporate fees in order to be in good standing for purposes of conducting business within that state.  In the ordinary course of business, the Debtors believe they remitted to the applicable Taxing Authorities all such Business License Fees and Annual Report Taxes when they became due under applicable law.

10.    Other Taxes Imposing Personal Liability Upon Directors and Officers.  Many federal, state and local Taxing Authorities impose personal liability on directors and/or responsible officers of entities responsible for collecting or paying certain taxes or fees to the

extent that such taxes or fees are not remitted.  Thus, if any such taxes or fees remain unpaid, the

Debtors' directors and responsible officers may be subject to lawsuits or even criminal

prosecution on account of such nonpayment during the pendency of these chapter 11 cases.  Such

lawsuits or proceedings obviously would constitute a significant distraction for the Debtors'

directors and responsible officers at a time when they should be focused on the Debtors' efforts

to market and sell their business in chapter 11.

11.	Although the Debtors believe that all taxes and fees for which the Debtors'

directors and/or responsible officers may be personally liable are described herein, it is possible

that other prepetition obligations similar in nature (and in threat of personal liability) may be

uncovered by the Debtors subsequent to the filing of this Motion.  To the extent that such

prepetition obligations exist, the Debtors will consider such obligations "Prepetition Taxes" as

that term is defined and used herein and request the authority to pay such Prepetition Taxes as

they may arise in the ordinary course of their businesses.

## Legal Basis for Relief Requested

12.	The Debtors respectfully submit that the Court should authorize the

payment of the Prepetition Taxes because:  (i) certain of the Prepetition Taxes do not constitute

property of the Debtors' chapter 11 estates; (ii) the failure to pay certain of the Prepetition Taxes

may impact the Debtors' ability to conduct business in certain jurisdictions and their ability to

perform under their postpetition agreements; and (iii) the Debtors' officers and directors may

face personal liability if certain of the Prepetition Taxes are not paid.[3]

---

[3]	Concurrently with the filing of this Motion, the Debtors also have filed a motion seeking authority to satisfy certain obligations relating to prepetition employee wages and benefits, including authority to remit to the applicable taxing authorities prepetition trust fund taxes withheld from employee paychecks.

13.     The prepetition Sales Taxes and certain of the other taxes identified above are "trust fund taxes" that, by definition, are held by the Debtors in trust for the benefit of those third parties to whom payment is owed or on behalf of whom such payment is being made. Section 541(d) of the Bankruptcy Code excludes "property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest." 11 U.S.C. § 541(d).  It is well established under section 541(d) of the Bankruptcy Code that taxes collected on behalf of taxing authorities are not property of the estate. See Begier v. IRS, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.), 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus not property of a debtor's estate, even where such funds were commingled with the debtor's other property); In re Am. Int'l Airways, Inc., 70 B.R. 102, 103 (Bankr. E.D. Pa. 1987) (funds held in trust for federal excise taxes are not property of a debtor's estate and, therefore, are not available for distribution to creditors).  Because the Prepetition Taxes that are trust fund taxes do not constitute property of the Debtors' estates, these amounts will not otherwise be available for distribution to the Debtors' creditors.  Thus, the payment of these Prepetition Taxes will not adversely affect the Debtors' estates and is warranted.

14.     The Debtors are required to pay Franchise Taxes and, in some instances, other Prepetition Taxes to maintain their good standing to operate in the jurisdictions in which they do business.  Thus, if such taxes are not paid, state and local Taxing Authorities may refuse to issue good standing certificates, which are often required in securities and financing transactions, and may refuse to take other actions requested of them by the Debtors during their

chapter 11 cases.  The inability to obtain these documents may create potential issues in the Debtors' ability to exit bankruptcy.

15.     In addition, the Debtors believe that some of these state and local Taxing Authorities may initiate audits if the Debtors fail to pay the Prepetition Taxes promptly.  Such audits would further divert attention and resources from the process of administering these chapter 11 cases.  Moreover, as described above, the Debtors' directors and officers may be subject to personal liability in the event the Prepetition Taxes are not remitted or paid to the appropriate Taxing Authority, which event would clearly undermine the Debtors' efforts to bring these cases to an expeditious conclusion.

16.     Finally, the failure to pay Property Taxes generally gives rise to a lien on or security interest in the taxed property.  Tax liens relating to Property Taxes typically arise on or relate back to a date prior to the due date of the tax bill (e.g., the assessment date or tax status date).  Under section 506(b) of the Bankruptcy Code, secured tax claims may accrue interest and penalties up to the value of the underlying collateral.[4]  See, e.g., United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242-43 (1989) (nonconsensual lienholders may receive interest on their claims under section 506(b) of the Bankruptcy Code).  Further, under section 511 of the Bankruptcy Code, interest on a secured tax claim will accrue at the applicable rate under non-bankruptcy law.[5]  In re Bernbaum, 404 B.R. 39, 43 (Bankr. D. Mass. 2009) ("The plain meaning of § 511 is unambiguous: the bankruptcy court must refer to state law and may no longer use its

---

[4]     Section 506(b) of the Bankruptcy Code provides:  "To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."  11 U.S.C. § 506(b).

[5]     Section 511(a) of the Bankruptcy Code provides, in pertinent part, that "[i]f any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax . . . the rate of interest shall be the rate determined under applicable nonbankruptcy law."  11 U.S.C. § 511(a).

equitable powers to alter the interest rate on a tax claim from the rate set forth under the

applicable state law.") (citation omitted).

**_The Doctrine of Necessity Provides a_**
**_Further Basis for Granting the Requested Relief_**

17.    Section 363(b)(1) of the Bankruptcy Code provides:  "The trustee, after

notice and a hearing, may use, sell or lease, other than in the ordinary course of business,

property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, _sua_
> _sponte_, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent the abuse of process.

11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad

authority and discretion to enforce the provisions of the Bankruptcy Code under equitable

common law principles.

18.    Courts have repeatedly recognized "the existence of the judicial power to

authorize a debtor . . . to pay prepetition claims where such payment is essential to the continued

operations of the debtor."  In re Ionosphere Clubs, Inc., 98 B.R. 174, 176 (Bankr. S.D.N.Y.

1989); see also In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994)

(finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the

payment is "essential to the continued operation of the business") (citations omitted).  The

United States Supreme Court first articulated the equitable common law principle commonly

referred to as the "doctrine of necessity" over 125 years ago in Miltenberger v. Logansport, C. &

S.W.R. Co., 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882).  "The Supreme Court, the Third

Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-

petition claims when such payment is necessary for the debtor's survival during chapter 11." In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999).

19.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay critical prepetition claims, even though such payment is not explicitly authorized under the Bankruptcy Code.  See In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing In re Lehigh & New England Rwy Co., 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a prepetition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'").

20.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of chapter 11, specifically sections 1107(a), 1108 and 363(b)(1) of the Bankruptcy Code, which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business.  Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform the debtor's duty.  See In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim.").

21.     This Motion satisfies the foregoing criteria, as the relief sought herein is essential to the continued operation of the Debtors, and payment of the Prepetition Taxes is warranted.  The Debtors' payment of the Prepetition Taxes is necessary to forestall the obstacles to the smooth functioning of the Debtors' business operations that likely would result from a failure to remit the tax payments described herein.  Specifically, the failure to maintain good standing, potential audits by state and local Taxing Authorities and, crucially, the threat of

personal liability for the Debtors' directors and responsible officers represent a few of the adverse consequences that may result from the Debtors' failure to make necessary tax payments.  Thus, payment of the Prepetition Taxes is warranted in these chapter 11 cases.

22.    Similar relief is routinely granted by courts in this District.  See, e.g., In re OnCure Holdings, Inc., et al., Case No. 13-11540 (KG) (Bankr. D. Del. Jun. 18, 2013); In re AFA Investment Inc., et al., Case No. 12-11127 (MFW) (Bankr. D. Del. Apr. 3, 2012); In re Harry & David Holdings, Inc., et al., Case No. 11-10884 (MFW) (Bankr. D. Del. Mar. 29, 2011).

### Request for Authority for Banks to Honor and Pay Checks in Connection Herewith

23.    In addition, by this Motion, the Debtors request that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtors, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtors related to, Prepetition Taxes, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtors represent that these checks are drawn on identifiable disbursement accounts and can be readily identified as relating directly to the authorized payment of Prepetition Taxes. Accordingly, the Debtors believe that checks other than those relating to authorized payments will not be honored inadvertently.

24.    Nothing contained herein is intended or shall be construed as:  (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; or (iv) an implication or admission that any particular claim against the Debtors would constitute a claim for Prepetition Taxes.

## **Requests for Immediate Relief & Waiver of Stay**

25.     Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek (i) immediate entry of an order granting the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to pay all or part of a claim that arose before the filing of the petition."  Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

26.     As set forth above and in the First Day Declaration, the payment of the Prepetition Taxes is necessary to prevent the immediate and irreparable damage to the Debtors' retail operations and going concern value that would result from, among other things, the Debtors' failure to (i) maintain good standing within the jurisdictions in which they conduct their businesses or (ii) protect their directors and responsible officers from personal liability. Accordingly, the Debtors submit that ample cause exists to justify (i) the immediate entry of an order granting the relief sought herein and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## Consent to Jurisdiction

27.    Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

28.    Notice of this Motion shall be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Motion is necessary.

## No Prior Request

29.    No previous request for relief sought herein has been made to this Court or any other court.

[The remainder of this page is intentionally blank.]

WHEREFORE, the Debtors respectfully request that the Court enter an order substantially in the form attached hereto as Exhibit A:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  September 30, 2013
        Wilmington, Delaware

Respectfully submitted,

/s/ Mark D. Collins
Mark D. Collins (DE 2981)
John H. Knight (DE 3848)
Lee E. Kaufman (DE 4877)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

       -and-

Paul D. Leake
Lisa Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

PROPOSED ATTORNEYS FOR DEBTORS

**<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-_____ (___) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

**ORDER AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION TAXES**

This matter coming before the Court on the Motion of the Debtors for an Order

Authorizing Them to Pay Certain Prepetition Taxes (the "Motion"),[2] filed by the

above-captioned debtors (collectively, the "Debtors"); the Court having reviewed the Motion and

the First Day Declaration and having considered the statements of counsel and the evidence

adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court

having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a

core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Motion and the Hearing was

sufficient under the circumstances and (v) there is good cause to waive the fourteen-day stay

imposed by Bankruptcy Rule 6004(h) to the extent it is applicable; after due deliberation the

Court having determined that the relief requested in the Motion is (i) in the best interests of the

Debtors, their estates and their creditors and (ii) necessary to prevent immediate and irreparable

---

[1]     The Debtors are the following two entities (the last four digits of their respective taxpayer identification
        numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy
        Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200,
        El Segundo, California 90245.

[2]     Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

harm to the Debtors, their estates and their directors and responsible officers; and good and sufficient cause having been shown;

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized, in the Debtors' sole discretion, to pay the Prepetition Taxes in an aggregate amount not to exceed $4.5 million.

3.      The Banks are authorized, when requested by the Debtors, to receive, process, honor and pay all checks presented for payment of, and to honor all funds transfer requests made by the Debtors related to, Prepetition Taxes, whether such checks were presented or funds transfer requests were submitted prior to or after the Petition Date, provided that funds are available in the Debtors' accounts to cover such checks and funds transfers. The Banks are authorized to rely on the Debtors' designation of any particular check or funds transfer as approved by this Order.

4.      Nothing in the Motion or this Order, nor the Debtors' payment of claims pursuant to this Order, shall be deemed or construed as: (i) an admission as to the validity of any claim against the Debtors; (ii) a waiver of the Debtors' rights to dispute any claim on any grounds; (iii) a promise to pay any claim; or (iv) an implication or admission that any particular claim is a claim for Prepetition Taxes.

5.      The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

6.      This Order shall be immediately effective and enforceable upon its entry. To the extent that it may be applicable, the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.


Dated:  _____, 2013
         Wilmington, Delaware                       _____
                                         UNITED STATES BANKRUPTCY JUDGE