**Exhibit A**

**Proposed Form of Bidding Procedures Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FRESH & EASY NEIGHBORHOOD MARKET INC., *et al.*,[1] | Case No. 13-12569 (KJC) |
| Debtors. | (Joint Administration Requested) |

**ORDER (I) APPROVING PROCEDURES IN CONNECTION WITH THE SALE OF A SUBSTANTIAL PORTION  OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) AUTHORIZING THE DEBTORS TO ENTER INTO A STALKING HORSE APA IN CONNECTION THEREWITH, (III) AUTHORIZING THE PAYMENT OF STALKING HORSE PROTECTIONS, (IV) SETTING BID DEADLINE, AUCTION AND SALE APPROVAL HEARING DATES, (V) ESTABLISHING NOTICE PROCEDURES AND APPROVING FORMS OF NOTICE, AND (VI) APPROVING PROCEDURES RELATED TO ASSUMPTION AND <u>ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

Upon the motion (the "<u>Motion</u>"),[2] dated September 30, 2013, of Fresh & Easy

Neighborhood Market Inc. and Fresh & Easy Property Company LLC, as debtors in possession

(together, the "<u>Debtors</u>") in the above-referenced chapter 11 cases, pursuant to sections 105(a),

363(b), 365, 503(b) and 507 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy</u>

<u>Code</u>"); Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"); and Rule 6004-1 of the Local Rules for the United States Bankruptcy

Court for the District of Delaware (the "<u>Local Rules</u>"), for (i) approval of the procedures

---

[1]     The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]     Capitalized terms not otherwise defined herein have the meanings given to them in the Motion.

(the "Bidding Procedures") to be used in connection with the sale of certain of the Debtors' assets

(the "Bid Assets"), (ii) authorization to enter into the Stalking Horse APA (as defined below) in

connection therewith, (iii) authorization to pay the Stalking Horse Protections (as defined below)

in connection therewith, (iv) the setting of dates for the Bid Deadline, Auction and Sale Hearing

(each as defined in the Bidding Procedures) (if needed), and (v) the approval of procedures

related to the assumption and assignment of executory contracts and unexpired leases, all as

more fully described in the Motion; and the Court having held a hearing to consider the relief

requested therein (the "Bidding Procedures Hearing") with the appearances of all interested

parties noted in the record of the Bidding Procedures Hearing; and upon the record of the

Bidding Procedures Hearing; the Declaration of James Dibbo in Support of First-Day Pleadings

[Docket No. 3] (the "First Day Declaration") and all of the proceedings before the Court;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.       The Court has jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334.  Venue of these cases and the Motion in this

district is proper under 28 U.S.C. §§ 1408 and 1409.

B.       The Debtors have provided due and proper notice of the Motion and Bidding

Procedures Hearing to the Notice Parties (as defined below) and no further notice is necessary.

A reasonable opportunity to object or be heard regarding the relief requested in the Motion

(including, without limitation, with respect to the Bidding Procedures and Stalking Horse

---

[3]       Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  See FED. R. BANKR. P. 7052.  This order shall be deemed to incorporate any findings of fact and conclusions of law made on the record at the Bidding Procedures Hearing pursuant to Bankruptcy Rule 7052.

Protections) has been afforded to all interested persons and entities, including but not limited to the Notice Parties.

      C.      The Debtors' proposed notice of the Motion, the Bidding Procedures, the Auction and the Sale Hearing is appropriate and reasonably calculated to provide all interested parties with timely and proper notice, and no other or further notice is required.

      D.      The Bidding Procedures in the form attached hereto as <u>Annex 1</u> are fair, reasonable, and appropriate and are designed to maximize the recovery from a sale of the Bid Assets (the "<u>Sale</u>").

      E.      The Bidding Procedures and the Stalking Horse APA were each negotiated in good faith and at arm's length among the Debtors, Tesco, PLC and the Proposed Buyer (as defined below).  The process for selection of the Proposed Buyer was fair and appropriate under the circumstances and is in the best interests of the Debtors' estates.

      F.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and, thereby:  (i) approve of the Bidding Procedures as contemplated by the agreement for the sale of the Acquired Assets (as defined in the Stalking Horse APA), dated as of September 10, 2013 (the "<u>Stalking Horse APA</u>"), with YFE Holdings, Inc. (the "<u>Proposed Buyer</u>"), attached as <u>Exhibit D</u> to the Motion; (ii) authorize the Debtors to pay a break-up fee and expense reimbursement (together, the "<u>Stalking Horse Protections</u>"), under the terms and conditions set forth in the Stalking Horse APA and the Bidding Procedures; (iii) set the dates of the Bid Deadline, Auction (if needed) and Sale Hearing; (iv) establish notice procedures and approve the forms of notice; and (v) approve the procedures related to assumption and assignment of executory contracts and unexpired leases.

-3-

G.      The Stalking Horse Protections, as approved by this Order, are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

H.      If necessary, the payment of the Stalking Horse Protections, under this Order and upon the conditions set forth in the Stalking Horse APA and the Bidding Procedures, is (a) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code, (b) reasonably tailored to encourage, rather than hamper, bidding for the Bid Assets, (c) of substantial benefit to the Debtors' estates and creditors and all parties in interest herein, (d) reasonable and appropriate and (e) material inducements for, and conditions necessary to ensure that the Proposed Buyer will continue to pursue its proposed agreement to purchase the Acquired Assets.

I.      Entry of this Order is in the best interests of the Debtors and their estates, creditors, and interest holders and all other parties-in-interest herein.

J.      The Notice of Assignment and Cure and Notice of Successful Bidder are reasonably calculated to provide each counterparty to the Assumed Contracts and Leases with proper notice of its potential assumption and assignment, any cure amounts, if any, relating thereto, and the Assignment Procedures.

K.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law.

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Bidding Procedures attached hereto as <u>Annex 1</u> are approved, fully incorporated into this Order and the Debtors are authorized and directed to act in accordance

-4-

therewith. The failure to specifically include a reference to any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

2.      Any objections to the Motion or the relief requested therein that have not been adjourned, withdrawn or resolved are overruled in all respects on the merits.

3.      The form of Sale Notice attached to the Motion as <u>Exhibit E</u> is approved.

4.      Within seven (7) days after entry of the Bidding Procedures Order, the Debtors shall serve the Sale Notice on (a) the Office of the United States Trustee for the District of Delaware; (b) the applicable state and local taxing authorities; (c) the Internal Revenue Service; (d) the Securities & Exchange Commission; (e) the United States Attorney General/Antitrust Division of Department of Justice; (f) each of the non-Debtor counterparties to the Assumed Contracts and Leases; (g) counsel to Tesco; and (h) all entities who are known to possess or assert a claim against the Debtors (collectively, the "<u>Notice Parties</u>").  On or about the same date, the Debtors will publish the Sale Notice once in the National Edition of The Wall Street Journal.

5.      Service of the Sale Notice on the Notice Parties and applicable interested bidders in the manner described in the Motion constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or further notice is required.

6.      If no Qualified Bids with respect to the Bid Assets other than the Stalking Horse APA are received on or before the Bid Deadline, the Debtors shall not conduct the Auction with respect to the Bid Assets, and instead shall seek approval of the sale of the Bid Assets pursuant to the Stalking Horse APA at the Sale Hearing.

7.      In the event the Debtors receive, on or before the Bid Deadline, one or more Qualified Bids in addition to the Stalking Horse APA, an Auction shall be conducted at the

NYI-4541939

RLF1 9419070v.1

offices of Jones Day, 222 East 41st Street, New York, New York 10017 on November 13, 2013

at 10:00 a.m. (Eastern Time), or such later time on such day or such other place as the Debtors

shall notify all Qualified Bidders.

8.      Within one (1) business day after the conclusion of the Auction, the Debtors shall

file a notice (i) identifying the Successful Bidder(s) and (ii) providing adequate assurance

materials demonstrating the ability of the Successful Bidder(s) to perform under the Assumed

Contracts and Leases (the "Notice of Successful Bidder").

9.      Objection Deadline to Sale Order. Objections to the relief sought in the Sale

Order shall be in writing, filed and served, so as to be actually received by (i) the Debtors, Fresh

& Easy, 2120 Park Place, Suite 200, El Segundo, California 90245 (Attention: Mary Kasper);

(ii) proposed co-counsel to the Debtors, Jones Day, 222 East 41st Street, New York, New York

10017-6702 (Attention: Paul D. Leake and Lisa Laukitis); (iii) proposed co-counsel to the

Debtors, Richards Layton & Finger, One Rodney Square, 920 North King Street, Wilmington,

Delaware 19801 (Attention: Mark D. Collins); (iv) the Office of the United States Trustee for the

District of Delaware (the "U.S. Trustee"), 884 King Street, Suite 2207, Lockbox 35, Wilmington,

DE 19801 (Attention: Tiiara Patton); (v) counsel to YFE Holdings, Inc., Latham & Watkins, 355

South Grand Avenue, Los Angeles, California 90071-1560 (Attention: Robert A. Klyman) and

Young Conaway Stargatt & Taylor LLP, 1000 North King Street, Wilmington, Delaware  19801

(Attention:  Michael Nestor); (vi) counsel to Tesco PLC, Davis Polk & Wardwell, 450 Lexington

Avenue New York, NY 10017 (Attention: Donald S. Bernstein and Damon P. Meyer); and (vii)

proposed counsel to any official committee appointed in these Chapter 11 Cases pursuant to

-6-

section 1102 of the Bankruptcy Code (collectively, the "Service Parties") by November 7, 2013 at 4:00 p.m. (Eastern Time).

10.    The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Courtroom ___, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, on _____, 2013 at ___:___ _.m. (Eastern Time) or such other date and time that the Court may later direct; provided, however, that the Sale Hearing may be adjourned, from time to time, without further notice to creditors or parties in interest other than by announcement of the adjournment in open Court or on the Court's docket.

11.    As soon as practicable after the conclusion of the Auction, but no later than before the Sale Hearing, the Debtors shall file a final form of order approving the Sale as agreed upon between the Debtors and the Successful Bidder(s) (as defined in the Bidding Procedures).

12.    Stalking Horse Protections.  Pursuant to sections 105, 363, 364, 503 and 507 of the Bankruptcy Code, the Debtors are hereby authorized, empowered and directed to pay the Stalking Horse Protections to the Proposed Buyer in accordance with the terms of the Stalking Horse APA without further order of this Court.  The dollar amount of the Break-Up Fee and Expense Reimbursement Amount (each as defined in the Stalking Horse APA) are hereby approved.  The Stalking Horse Protections shall be allowed as administrative expense claims in each of the Debtors' Chapter 11 Cases as super-priority administrative expense priority obligations under Section 364(c)(1) of the Bankruptcy Code with priority over all expenses of the kind specified in Sections 502(b) and 507(b) of the Bankruptcy Code.  The Proposed Buyer shall be entitled to receive the Stalking Horse Protections in accordance with the terms and conditions of the Stalking Horse APA and the Bidding Procedures.   In the event that a sale

-7-

transaction is consummated with an Alternate Bidder(s) that is the Successful Bidder(s) (an

"Alternative Transaction"), then the Debtors will pay the Break-Up Fee and Expense

Reimbursement Amount to Proposed Buyer by wire transfer of immediately available funds from

the proceeds of the applicable Alternative Transaction immediately upon the consummation

thereof.

13.    Assignment Procedures. The assignment procedures set forth in the Motion (the

"Assignment Procedures") are hereby approved.  Attached to the Stalking Horse APA as

Schedules 1.01(a)(ii)(A), 1.01(a)(ii)(B) and 1.01 (a)(iii) (together, the "Assignment Schedule")

listing all the Assumed Contracts and Assumed Leases proposed to be assumed and assigned

pursuant to the Stalking Horse APA on the date the Sale Order is entered (the "Assumed

Contracts and Leases"). The Debtors will serve each of the non-Debtor counterparties to the

Assumed Contracts and Leases a notice, which shall be in form and substance acceptable to the

Proposed Buyer (a "Notice of Assignment and Cure"), by first class mail, that will include (i) the

title of the Assumed Contracts and Leases to be assumed, (ii) the name of the counterparty to the

Assumed Contracts and Leases, (iii) any applicable cure amounts, (iv) that the assignee is the

Proposed Buyer or its designee, or any other Successful Bidder(s), and (v) the deadline by which

any such Assumed Contracts and Leases counterparty must object.

14.    Any objections to the assumption and/or assignment of any Assumed Contracts

and Leases identified on a Notice of Assignment and Cure, including to the cure amount set forth

on such notice, must be in writing, filed with the Court, and be actually received by the Notice

Parties no later than fourteen (14) days after such Notice of Assignment and Cure is mailed to

the affected party, as indicated by the date noted on such Notice of Assignment and Cure

NYI-4541939

RLF1 9419070v.1

(the "Assignment and Cure Objection Deadline"), and must set forth a specific default under the Assumed Contracts and Leases and claim a specific monetary amount that differs from the amount, if any, specified by the Debtors in such Notice of Assignment of Cure.

15.    Resolution of Objections to Assumption and/or Assignment of Assumed Contracts and Leases. If no objection is received by the Assignment and Cure Objection Deadline, then the assumption and assignment of the applicable Assumed Contract or Lease is authorized pursuant to Section 365 of the Bankruptcy Code and the cure amounts, if any, set forth on the Notice of Assignment and Cure shall be binding upon the non-Debtor party to the Assumed Contracts and Leases for all purposes and will constitute a final determination of total cure amounts required to be paid to the Assumed Contracts and Leases counterparty in connection with any potential assignment of such Assumed Contracts and Leases to the Successful Bidder(s). In addition, each non-Debtor party to such Assumed Contracts and Leases shall be forever barred from objecting to the assumption and assignment of such contract or lease or the cure information set forth in the Notice of Assignment and Cure, including, without limitation, the right to assert any additional cure or other amounts with respect to the Assumed Contracts and Leases arising or relating to any period prior to such assumption or assignment. Furthermore, if no timely objection is received by the Assignment and Cure Objection Deadline, the Proposed Buyer (or Successful Bidder(s), if applicable) shall enjoy all of the rights and benefits under all Assumed Contracts and Leases acquired under the Stalking Horse APA (or such other purchase agreement of an alternative Successful Bidder(s), if applicable) without the necessity of obtaining any party's written consent to the Debtors' assumption and assignment of

-9-

such rights and benefits, and each such party shall be deemed to have waived any right to object to, contest, condition or otherwise restrict any such assumption and assignment.

16.     If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Court may hear such objection at a later date set by the Court. At the sole discretion of the Debtors, the pendency of a dispute relating to cure amounts will not prevent or delay the assumption and assignment of any Assumed Contracts and Leases. If an objection is filed only with respect to the cure amount listed on the Notice of Assignment and Cure, the Debtors may proceed with the assumption and assignment of the Assumed Contract or Assumed Lease and resolve the dispute regarding the cure amount at a later date as set by the Court. Any such dispute with respect to the cure amount will be resolved consensually, if possible, or, if the parties are unable to resolve their dispute, by the Court.

17.     Notwithstanding Bankruptcy Rules 6004, 6006 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

18.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

19.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Court, to allow the Proposed Buyer to deliver any notice provided for in the Stalking Horse APA, including, without limitation, a notice terminating the Stalking Horse APA, and allow the Proposed Buyer to take any and all actions permitted under the Stalking Horse APA in accordance with the terms and conditions thereof.

NYI-4541939

RLF1 9419070v.1

20.      To the extent this Order is inconsistent with any prior order or pleading with respect to the Motion in these cases, the terms of this Order shall govern.

21.      The Court shall retain jurisdiction over any matters related to or arising from the implementation or interpretation of this Order. To the extent any provisions of this Order shall be inconsistent with the Motion, the terms of this Order shall control.


Dated:    _____, 2013
            Wilmington, Delaware

                                            _____
                                            THE HONORABLE KEVIN J. CAREY
                                            UNITED STATES BANKRUPTCY JUDGE

NYI-4541939

RLF1 9419070v.1

**Annex 1**

**Bidding Procedures**

# BIDDING PROCEDURES

Fresh & Easy Neighborhood Market Inc. and its affiliate Fresh & Easy Property Company LLC (together, the "Debtors"), debtors in possession in jointly administered chapter 11 cases (the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") have entered into a stalking-horse asset purchase agreement, dated September 10, 2013 (the "Stalking Horse APA")[1] with YFE Holdings, Inc. (the "Proposed Buyer"), a company associated with Yucaipa Companies, LLC.[2]

Pursuant to the Stalking Horse APA, and subject to the terms and conditions thereof, the Proposed Buyer has agreed to acquire the Acquired Assets (as set forth in the Stalking Horse APA) from the Debtors and assume certain of the Debtors' liabilities.  In order to attain the highest or otherwise best offer for the Debtors' assets, the Debtors propose these Bidding Procedures to solicit bids for (i) any portion of the Acquired Assets and (ii) any portion of the Debtors' assets that are not Acquired Assets ((i) and (ii) together, the "Bid Assets").

**Any interested bidder should contact, as soon as practical, the following:**[3]

| | |
|---|---|
| **ALVAREZ & MARSAL NORTH AMERICA, LLC** | **GREENHILL & CO., LLC** |
| 600 Madison Avenue | 300 Park Avenue |
| New York, New York 10022 | New York, New York 10022 |
| (212) 759-4433 | (212) 389-1500 |
| Attn: Dennis Stogsdill | Attn: Richard Steinman and Christopher Grubb |

**ALVAREZ & MARSAL SECURITIES, LLC**
1 East Washington Street, Suite 1850
Phoenix, Arizona
(602) 459-7000
Attn: Marc Liebman

These Bidding Procedures describe, among other things, (a) the Bid Assets offered for sale, (b) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction (as defined below), if

---

[1]    All terms used but not defined herein have the meaning ascribed to such term in the Stalking Horse APA.

[2]    The Debtors' entry into the Stalking Horse APA and these Bidding Procedures were approved by the Bankruptcy Court on _____, 2013 [Docket No. ____].

[3]    Alvarez & Marsal North America, LLC, Alvarez & Marsal Securities, LLC and Greenhill & Co., LLC are collectively referred to herein as the "Financial Advisors").

1

necessary, (d) the selection of the Successful Bidder(s) (as defined below), and (e) the Court approval of the sale of the Bid Assets to the Successful Bidder(s).

1.      **Participation Requirements**

(a)      **Interested Parties**

Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (each an "Interested Party") must deliver the following (unless previously delivered) to the Financial Advisors so as to be received no later than 5:00 p.m. (Eastern Time) on November 1, 2013:

(A)      an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(B)      a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, that the Interested Party has a *bona fide* interest in purchasing the Bid Assets; and

(C)      sufficient information, as defined by the Debtors, to allow the Debtors to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal or other authorizations to close the Sale Transaction, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in their discretion).

If the Debtors determine, after receipt of the items identified above, that an Interested Party has a *bona fide* interest in the Bid Assets, no later than two business days after the Debtors make that determination and have received all of the materials required above, such Interested Party will be deemed a "Potential Bidder" and the Debtors will deliver to such Potential Bidder: (A) an electronic copy of the Stalking Horse APA and (B) access information for the Debtors' confidential electronic data room concerning the Bid Assets (the "Data Room"). The Debtors reserve the right to determine whether an Interested Party has satisfied the above participation requirements such that it is eligible to be a Potential Bidder.

(b)      **Due Diligence**

Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Debtors will provide any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors determine to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to the Financial Advisors. The Debtors, with the assistance of the Financial Advisors, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. In the event that any such due diligence material is in written form and has

2

not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide such materials to all Potential Bidders and the Proposed Buyer.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder, from and after the Bid Deadline or (B) the Bidding Process is terminated in accordance with its terms.

## 2.    Qualified Bids

Each offer, solicitation or proposal by a Potential Bidder must satisfy each of the following conditions to be deemed a "Qualified Bid," and for the Potential Bidder to be deemed a "Qualified Bidder."

(a)    **Bid Deadline**

A Potential Bidder who desires to be a Qualified Bidder must deliver the Required Bid Documents (as defined below) so as to be received not later than 12 noon (Eastern Time) on November 7, 2013 (the "Bid Deadline"), to the Financial Advisors, with copies to Jones Day, 222 East 41st Street, New York, New York 10017 (Attn:  Paul D. Leake and Lisa Laukitis).  The Debtors may extend the Bid Deadline with the written consent of the Proposed Buyer.  If the Debtors extend the Bid Deadline, the Debtors will promptly notify all Potential Bidders who have signed a confidentiality agreement of such extension.

(b)    **Bid Requirements**

All bids must include the following (the "Required Bid Documents"):

- a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving any other bidder for the Bid Assets identified in such offer;

- a duly authorized and executed purchase agreement, including the purchase price for the Bid Assets, together with all exhibits and schedules marked to show those amendments and modifications to the Stalking Horse APA and the proposed Sale Order; and

- written evidence of a firm commitment for financing, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtors; [4]

---

[4]    As part of the Stalking Horse APA, an entity affiliated with the Debtors' indirect parent company, Tesco PLC ("Tesco"), is providing secured financing (the "Tesco Financing") to the Proposed Buyer.  Any

3

A bid will be considered only if the bid:

- identifies the assets to be purchased and the contracts and leases to be assumed and assigned;

- sets forth the consideration for the assets to be purchased and the contracts and leases to be assumed and assigned;

- provides for consideration that is higher or better than the consideration provided for by the Stalking Horse APA, taking into account the Break-Up Fee and Expense Reimbursement Amount;

- is not conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;

- provides evidence satisfactory to the Debtors, in their sole discretion, of the bidder's financial wherewithal and operational ability to consummate the transaction and satisfy its adequate assurance of future performance requirement with respect to any executory contract or unexpired lease to be assigned to it;

- is irrevocable until the Debtors have consummated a transaction with the Successful Bidder(s) (as defined below) or the Alternate Bidder(s) (as defined below), as applicable;

- to the extent the bid is for any or all of the Acquired Assets, is accompanied by a deposit by wire transfer to an escrow agent selected by the Debtors (the "Deposit Agent") equal to $10,000,000, and to the extent the bid is for any asset that is not an Acquired Asset, is accompanied by a deposit by wire transfer to the Deposit Agent of an amount equal to 10% of the consideration set forth in connection with such bid (any such deposit, a "Good Faith Deposit");

- sets forth the representatives who are authorized to appear and act on behalf of the contemplated transactions;

- indicates that the bidder will not seek any transaction or Break-Up Fee, expense reimbursement, or similar type of payment;

- include evidence of the Qualified Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the Qualified Bidder, in a form that will permit

---

Interested Party which seeks to request the provision of financing from Tesco in connection with their bid should contact Greenhill & Co.

NYI-4541939

RLF1 9419070v.1

the immediate dissemination of such evidence to the counterparties to such contracts and leases; and

• is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements.  Notwithstanding the foregoing, the Proposed Buyer shall be deemed a Qualified Bidder and the Stalking Horse APA shall be deemed a Qualified Bid for all purposes in connection with the Bidding Procedures.  Within one (1) business day of the Bid Deadline, the Debtors will provide the Proposed Buyer with copies of any Qualified Bids.

All Qualified Bids will be considered but the Debtors reserve the right to reject any and all bids other than the highest or otherwise best bid(s) in the Debtors' sole discretion.  The Debtors may, in their discretion, evaluate bids on numerous grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Debtors including, without limitation, payment of the Stalking Horse Protections.  Bids other than Qualified Bids will not be considered.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Bid Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Bid Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder(s), the asset purchase agreement(s) with such Successful Bidder(s).

## 3.    **Break-Up Fee and Expense Reimbursement Amount**

Recognizing the Proposed Buyer's expenditure of time, energy, and resources, and the benefit that these efforts provided to all Interested Parties, the Debtors have agreed that if the Proposed Buyer is not the Successful Bidder, the Sellers will, in certain circumstances, pay to the Proposed Buyer a Break-Up Fee and an Expense Reimbursement Amount.  The payment of the Break-Up Fee and Expense Reimbursement Amount will be governed by the provisions of the Stalking Horse APA and the order of the Bankruptcy Court approving these Bidding Procedures (the "Bidding Procedures Order").  The Break-Up Fee is in amount equal to $1,500,000.[5]  The Expense Reimbursement Amount is in an amount up to $750,000.

---

[5]    In addition to the Break-Up Fee set forth in the Stalking Horse APA, Tesco has agreed to provide the Buyer with an additional break-up fee in an amount equal to $8,500,000.

NYI-4541939

RLF1 9419070v.1

4.    **Auction**

The Proposed Buyer is deemed a Qualified Bidder and its bid is deemed a Qualified Bid. In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an auction (the "Auction") of the Bid Assets.  The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids.  The Auction will be conducted at the offices of Jones Day, 222 East 41st Street, New York, New York 10023 on November 13, 2013 at 10:00 a.m. (Eastern Time).

Only representatives or agents of the Debtors, Tesco, the Proposed Buyer, the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Creditors' Committee"), and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only the Proposed Buyer and Qualified Bidders will be entitled to make any subsequent bids at the Auction.

At least two business days prior to the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtors believe is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders which have informed the Debtors of their intent to participate in the Auction and, if requested, will provide an explanation of how the Starting Bid is valued and a list containing the identification of all Qualified Bidders.

The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith and (ii) disclosed to each Qualified Bidder; and provided further than all bids shall be made openly, in the presence of all parties at the Auction.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors determine that such Subsequent Bid is (a) for the first round, a higher or otherwise better offer than the Starting Bid, and (b) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (defined below), in each case taking into account other Qualified Bids for other Bid Assets.  The Debtors, in their sole discretion, may determine appropriate minimum bid increments or requirements for each round of bidding.

After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

6

For the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtors may take into account the Break-Up Fee and the Expense Reimbursement Amount that may be payable to the Proposed Buyer under the Stalking Horse APA.

For the purpose of evaluating Subsequent Bids, the Sellers may require a Qualified Bidder (other than the Proposed Buyer) submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors in their sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction.

If Debtors do not receive any Qualified Bid other than the Proposed Buyer's Qualified Bid on or prior to the Bid Deadline, no Auction shall occur and Sellers shall seek approval of the Stalking Horse APA at the Sale Hearing and no further bids shall be considered.

**5.    Selection Of Successful Bid(s)**

The Debtors reserve the right to (i) determine in their reasonable discretion which Qualified Bid(s) is/are the highest or otherwise best and (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any bid or offer, other than the Stalking Horse Bid, that the Debtors in their reasonable discretion deem to be (x) inadequate or insufficient, (y) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, or (z) contrary to the best interests of the Debtors and their estates.

Prior to the conclusion of the Auction, the Debtors will:  (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (B) identify the highest or otherwise best offer or collection of offers (the "Successful Bid(s)"); (C) determine which Qualified Bid is the Successful Bid(s) and which is the next highest or otherwise best offer or collection of offers (the "Alternate Bid(s)") for the Bid Assets; and (D) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder or bidders (the "Successful Bidder(s)"), the amount and other material terms of the Successful Bid(s) and the identity of the party or parties that submitted the Alternate Bid(s) (the "Alternate Bidder(s)").  Within one business day of the completion of the Auction, the Successful Bidder(s) and the applicable Debtors shall complete and execute all agreements, instruments or other documents necessary to consummate the applicable Sale(s) or otherwise contemplated by the applicable Successful Bid(s).

The Debtors will sell the Bid Assets for the highest or otherwise best Qualified Bid(s) to the Successful Bidder(s) upon the approval of such Qualified Bid by the Court after the Sale Hearing.  The presentation of a particular Qualified Bid to the Court for approval does not constitute the Debtors' acceptance of the Qualified Bid.  The Debtors will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing.  Only the Proposed Buyer or another entity or entities constituting the Successful Bidder(s) shall be entitled to purchase the Bid Assets pursuant to these Bidding Procedures.

NYI-4541939

RLF1 9419070v.1

If for any reason, the entity or entities that submit(s) the highest or otherwise best Qualified Bid(s) fails to consummate the purchase of the Bid Assets, or any part thereof, the Debtors and the Alternate Bidder(s) are authorized to effect the sale of the Bid Assets to such Alternate Bidder(s) as soon as is commercially reasonable.  If such failure to consummate the purchase is the result of a breach by the Successful Bidder(s), the Debtors reserve the right to seek all available remedies from the defaulting Successful Bidder(s), subject to the terms of the applicable purchase agreement.

## 6.     **The Sale Hearing**

The Sale Hearing will be held before the Honorable _____ on _____, 2013 at __:__ _.m. (Eastern time) in the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., Wilmington, Delaware 19801.  The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing.  If the Debtors do not receive any Qualified Bids (other than the Qualified Bid of the Proposed Buyer), the Debtors will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of the Bid Assets to the Proposed Buyer following entry of the Sale Order in accordance with the terms of the Stalking Horse APA.  At the Sale Hearing, the Debtors will seek approval of the offer or offers constituting the Successful Bid(s), and, at the Debtors' election, the offer or offers constituting the Alternate Bid(s).

The Debtors' presentation to the Bankruptcy Court of the offer or offers constituting the Successful Bid(s) and Alternate Bid(s) will not constitute the Debtors' acceptance of either of any such bid, which acceptance will only occur upon approval of such bid(s) by the Bankruptcy Court at the Sale Hearing.  Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtors or the Successful Bidder(s) upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder(s) upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Debtors will be authorized, but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court; provided nothing herein shall limit or alter any rights or remedies the Proposed Buyer may have under the Stalking Horse APA (as such agreement may be amended, modified or supplemented) arising from the selection of another bidder as a Successful Bidder(s) or the consummation of any sale.

## 7.     **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court.  The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder(s) and the Alternate Bidder(s) until the closing of the Sale Transaction

8

unless otherwise ordered by the Bankruptcy Court.  The Good Faith Deposits of the other Qualified Bidders will be returned within four business days of the entry of the Sale Order.  At the closing of the Sale Transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will be entitled to a credit for the amount of its Good Faith Deposit.  The Good Faith Deposit of the Alternate Bidder(s) will be released by the Debtors four business days after the closing of the Sale Transaction.  Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon.

**8.**     **As Is, Where Is**

The sale of the Bid Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except as provided in any agreement with respect to the sale or sales approved by the Bankruptcy Court.

**9.**     **Free and Clear of Any and All Interests**

Except as otherwise provided in the Stalking Horse APA or another Successful Bidder(s)'s purchase agreement, all of Debtors' right, title and interest in and to the Bid Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Bid Assets with the same validity and priority as such Interests applied against the Bid Assets.

9