**<u>Exhibit B</u>**

**Proposed Form of Sale Order**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-12569 (KJC) |
| MARKET INC., *et al*.,[1] | : |  |
|  | : |  |
| Debtors, | : | (Joint Administration Requested) |
|  | : |  |

## ORDER (I) APPROVING THE SALE OF
## A SUBSTANTIAL PORTION OF THE DEBTORS' ASSETS
## FREE AND CLEAR OF ALL NON-ASSUMED LIENS, CLAIMS,
## ENCUMBRANCES AND INTERESTS, (II) APPROVING THE ASSUMPTION
## AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion")[2] [Docket No.___] dated September 30, 2013, of

Fresh & Easy Neighborhood Markets Inc. and Fresh & Easy Property Company LLC (the

"Debtors"), as debtors and debtors-in-possession pursuant to sections 105(a), 362, 363, 365, 503

and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") for, inter alia, (i) approval of procedures (the "Bidding

Procedures"), in connection with the sale of certain of the Debtors' assets (the "Acquired Assets")

free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code),

encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature

---

[1]     The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]     Capitalized terms used, but not defined, herein have the meaning ascribed to them in the Sale Motion.  This order shall be deemed to incorporate any findings of fact and conclusions of law made on the record at the Sale Hearing (as defined herein) pursuant to Fed. R. Bankr. P. 7052.

except as expressly provided in the Stalking Horse APA (as defined below) (collectively, the "Liens"); (ii) authorization to enter into that certain Asset Purchase Agreement, dated as of September 10, 2013, for the sale of the Acquired Assets (the "Stalking Horse APA"), by and among the Debtors and YFE Holdings, Inc (collectively with its designees and assignees as contemplated under the Stalking Horse APA, the "Buyer") and consummate the transactions contemplated thereby (the "Transactions"), and (iii) approval of the assumption and assignment of certain executory contracts and unexpired leases (such executory contracts and unexpired leases that are proposed to be assumed and assigned pursuant to the Stalking Horse APA, the "Assumed Contracts and Leases"); after holding a hearing on _____, 2013 (the "Bidding Procedures Hearing") the Bankruptcy Court having entered an order dated _____, 2013 (the "Bidding Procedures Order") [Docket No. ___], authorizing the Debtors to solicit and consider offers for the Bid Assets (as defined therein) and conduct an auction ("Auction") in accordance with the terms and conditions of the Bidding Procedures and approving, inter alia, (i) the Bidding Procedures; (ii) the form and manner of notice of the Auction and Sale Hearing (defined below); and (iii) the manner in which the notice of the assignment and proposed cure amounts of the Assumed Contracts and Leases (the "Notice of Assignment and Cure") would be provided and the procedures related to the assignment of the Assumed Contracts and Leases to the Buyer; and the Bankruptcy Court having conducted a hearing on the Sale Motion on _____, 2013 (the "Sale Hearing"); and all parties in interest having been heard, or having had the opportunity to be heard, regarding the Stalking Horse APA; and the Bankruptcy Court having reviewed and considered the Sale Motion, and the arguments of counsel made, and the evidence adduced, at the Bidding Procedures Hearing and the Sale Hearing; and upon the record of the Bidding Procedures Hearing and the Sale Hearing, the Declaration of James Dibbo in

Support of the First-Day Pleadings [Docket No. ___] and these chapter 11 cases and proceedings, and after due deliberation thereon, and good cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

      A.      **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction over the Sale Motion and the Transactions pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

      B.      **Statutory Predicates**.  The statutory predicates for the relief requested in the Sale Motion are Bankruptcy Code sections 105, 362, 363 and 365, Bankruptcy Rules 2002, 6004, 6006 and 9014, and Local Rule 6004-1.

      C.      **Notice**.  Proper, timely, adequate, and sufficient notice of the Sale Motion, including, without limitation, the Sale, the Transactions, the assumption and assignment of the Assumed Contracts and Leases, the Auction, the Sale Hearing, and of the entry of this Order have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007, and Local Rule 6004-1, and in compliance with the Bidding Procedures Order.  Such notice was good and sufficient and appropriate under the particular circumstances.  No other or further notice of the Sale Motion, including, without limitation, the Sale, the Transactions, the assumption and assignment of the Assumed Contracts and Leases, the Auction, the Sale Hearing, or of the entry of this Order is necessary or shall be required.

      D.      A Notice of Assignment and Cure has been provided to each of the non-Debtor counterparties to the Assumed Contracts and Leases identified on the list(s) the Debtors have

---

[3]     Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

filed (including, without limitation, Schedules 1.01(a)(ii)(A), 1.01(a)(ii)(B) and 1.01(a)(iii) to the Stalking Horse APA), all in accordance with and as provided by the Bidding Procedures Order. The service of the Notice of Assignment and Cure was sufficient under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts and Leases or establishing Cure Amounts (as defined below).  Non-Debtor parties to the Assumed Contracts and Leases have had an adequate opportunity to object to assumption and assignment of the Assumed Contracts and Leases and the associated Cure Amounts.

       E.      **Opportunity to Object**.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

       F.      **Title in the Acquired Assets**.  The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

       G.      **Business Justification**.  The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Stalking Horse APA, assume and assign the Assumed Contracts and Leases, and sell the Acquired Assets.  Such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the Sale is not consummated quickly; (ii) the Stalking Horse APA constitutes the highest or otherwise best offer for the Acquired Assets; and (iii) the Stalking Horse APA and the Closing will present the best opportunity to realize the value of the Debtors on a going concern basis and to avoid decline and devaluation of the Debtors' businesses.  Entry of this Order and all provisions hereof is a necessary condition precedent to the Buyer consummating the Transactions.

H.    **Opportunity to Bid**.  The Debtors and their professionals marketed the Acquired Assets and conducted the marketing and sale process as set forth in the Sale Motion and in accordance with the Bidding Procedures Order.  The Auction process set forth in the Bidding Procedures Order and the Bidding Procedures afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Acquired Assets.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Assets.

I.    **[Auction**.  An Auction was conducted in accordance with the Bidding Procedures and after conclusion of the Auction, the Buyer was declared to have made the highest or otherwise best offer.  The Auction was conducted at arm's length, without collusion, and in good faith.][4]

J.    **Highest or Otherwise Best Offer**.  The total consideration provided by the Buyer for the Acquired Assets is the highest or otherwise best offer received by the Debtors.  The Buyer is the successful bidder for the Acquired Assets in accordance with the Bidding Procedures Order.  The Buyer has complied in all respects with the Bidding Procedures Order.

K.    **Good Faith Purchaser**.  The Stalking Horse APA and the Transactions contemplated thereby have been negotiated by the Debtors, Tesco PLC and the Buyer (and their respective affiliates and representatives) in good faith, at arm's length and without collusion or fraud.  The terms and conditions of the Stalking Horse APA and the Transactions, including the total consideration to be realized by the Debtors pursuant to the Stalking Horse APA, are fair and reasonable, and the Transactions are in the best interest of the Debtors, their creditors and their estates.

---

[4]    Insert language if there is an Auction.

L.      The Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to the sale and assignment of the Acquired Assets and the Transactions.

M.      The Stalking Horse APA was not controlled by an agreement between potential or actual bidders within the meaning of Bankruptcy Code section 363(n).  The Debtors and the Buyer have not engaged in any conduct that would cause or permit the Stalking Horse APA or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.  The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

N.      The Buyer will be acting in good faith in consummating the Transactions at any time on or after entry of this Order, and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).  The Buyer is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

O.      **Corporate Power and Authority**.  Subject to entry of this Order, the Debtors have full corporate power and authority to execute and deliver the Stalking Horse APA and the Transactions and to perform all of their respective obligations thereunder, and the sale of the Acquired Assets and assignment of the Assumed Contracts and Leases has been duly and validly authorized by all corporate authority necessary to consummate the Transactions.  No consents or approvals, other than as expressly provided for in the Stalking Horse APA and the entry of this Order, are required by the Debtors to consummate the Transactions.

P.      **Transfer and Sale of Assumed Liabilities**.  The transfer and sale of the Assumed Liabilities pursuant to the terms of this Order is integral to the Stalking Horse APA and is in the best interests of the Debtors, their estates and their creditors, and represents the

NYI-4543121
RLF1 9419075v.1

reasonable exercise of sound and prudent business judgment by the Debtors.  Accordingly, such transfer and sale is reasonable, enhances the value of the Debtors' estates and does not constitute unfair discrimination.

Q.    **Assumption and Assignment in Best Interests**.  The assumption and assignment of the Assumed Contracts and Leases by the Debtors pursuant to the terms of this Order is integral to the Stalking Horse APA and is in the best interests of the Debtors, their estates and their creditors, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  Accordingly, such assumption and assignment is reasonable, enhances the value of the Debtors' estates and does not constitute unfair discrimination.  No provision of any Assumed Contract or Lease that purports to prohibit, restrict or condition the use, consideration or assignment of any such Assumed Contract or Lease in connection with the Transactions shall have any force or effect.  Pursuant to Section 365(f) of the Bankruptcy Code, the Assumed Contracts and Leases shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision of the Assumed Contracts and Leases or other restriction prohibiting their assignment or transfer.

R.    **Cure/Adequate Assurance**.  The Debtors have met all of the requirements of Section 365(b) of the Bankruptcy Code for each of the Assumed Contracts and Leases.  The Debtors have provided adequate assurance of cure of any default existing prior to the Closing under any of the Assumed Contracts and Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts and Leases within the meaning of Bankruptcy Code section 365(b)(1)(B).  The Buyer has provided adequate assurance of its future performance of and

under the Assumed Contracts and Leases, within the meaning of Bankruptcy Code section 365(b)(1)(C) (including to the extent, if any, modified by section 365(b)(3)).  The non-Debtor parties to the Assumed Contracts and Leases were given notice and the opportunity to object to the Notice of Assumption and Cure and are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

S.    **Free and Clear**.  The Debtors are the sole and lawful owners of the Acquired Assets.  The sale and assignment of the Acquired Assets to the Buyer will be, as of the Closing, a legal, valid and effective transfer of such assets, and each such transfer and assignment shall, at Closing, vest the Buyer with all right, title and interest of the Debtors to the Acquired Assets free and clear of all Liens and Excluded Liabilities (each as defined herein), with any such Liens or Excluded Liabilities to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Closing.  The Buyer would not enter into the Stalking Horse APA to acquire the Acquired Assets if the sale of the Acquired Assets were not free and clear of all Liens and Excluded Liabilities, or if the Buyer would, or in the future could, be liable for any such Liens or Excluded Liabilities.  A sale of the Acquired Assets other than one free and clear of all Liens and Excluded Liabilities would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale.  Therefore, the Sale contemplated by the Stalking Horse APA is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

T.    **Satisfaction of 363(f) Standards**.  The Debtors may sell and assign the Acquired Assets free and clear of all Liens, because, with respect to each creditor asserting a Lien, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied.

NYI-4543121
RLF1 9419075v.1

Those holders of Liens who did not object or who withdrew their objections to the Sale, the Transactions or any Notice of Assignment and Cure are deemed to have consented to the Sale Motion and sale and assignment of the Acquired Assets to the Buyer pursuant to Bankruptcy Code section 363(f)(2).  Those holders of Liens who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having their Liens, if any, attach to the proceeds of the Transactions ultimately attributable to the Acquired Assets in which such holders allege a Lien, in the same order of priority, with the same validity, force and effect that such holder had prior to the Transactions, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

U.    **No Successor Liability**.  The Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, principals, directors, officers,  and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors other than those liabilities expressly assumed under or pursuant to the Stalking Horse APA (the "Assumed Liabilities").

V.    The Transactions contemplated under the Stalking Horse APA do not amount to a consolidation, merger or de facto merger of the Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors, there is no common identity between the Debtors and the Buyer, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or their estates, and the Buyer does not constitute a successor to the Debtors or their estates.  Other than the Assumed Liabilities, the Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, directors, officers, principals and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the Debtors including, without limitation, all

"claims" (as defined in section 101(5) of the Bankruptcy Code), liens, liabilities, interests, rights

and encumbrances, mortgages, restrictions, hypothecations, indentures, loan agreements,

instruments, leases, licenses, options, deeds of trust, security interests, equity interests,

conditional sale rights or other title retention agreements, pledges, judgments, demands, rights of

first refusal, consent rights, rights of offset, contract rights, recoupment rights, rights of recovery,

reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability

claims, claims arising under PACA (as defined below), alter-ego claims, environmental rights

and claims, labor rights and claims, employment rights and claims, pension rights and claims, tax

claims, regulatory violations, decrees of any court or foreign or domestic governmental or quasi-

governmental entity, charges or any kind or nature, debts arising in any way in connection with

any agreements, acts or failures to act, reclamation rights and claims, obligation claims,

demands, guaranties, option rights or claims, and all other matters of any kind and nature,

whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled,

noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed,

contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-

material, disputed or undisputed, whether arising prior to or subsequent to the commencement of

the Chapter 11 Cases and whether imposed by agreement, understanding, law, rule, equity or

otherwise (but, for the avoidance of doubt, in each case prior to the Closing) (collectively, the

"Excluded Liabilities"), and upon consummation of the Transactions, the Buyer and its affiliates

and their respective predecessors, successors, assigns, members, partners, directors, officers,

principals and shareholders (or equivalent) will be released and discharged from any and all of

the Debtors' claims, causes of action, obligations, liabilities, demands, losses, costs and expenses

of any kind, character or nature whatsoever, known or unknown, assented or unassented, fixed or

contingent, relating to the Transactions, and the sale of the Acquired Assets and assignment of the Assumed Contracts and Leases except for liabilities and obligations under the Stalking Horse APA. The Bankruptcy Court finds that the Buyer would not have acquired the Acquired Assets but for the foregoing protections against potential claims, including those based upon "successor liability" theories.

W. **No Fraudulent Transfer**. The Transactions are not for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor the Buyer are or will be entering into the Transactions fraudulently.

X. **Fair Consideration**. The consideration constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code or any similar state or federal law), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Stalking Horse APA represents a fair and reasonable offer to purchase the Acquired Assets and assume or acquire liabilities under the circumstances of the Debtors' cases. Approval of the Stalking Horse APA and the consummation of the Transactions are in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

Y. **Compliance with Bankruptcy Code**. The consummation of the Transactions is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b) and 365(f) and all of the applicable requirements of such sections have been or will be complied with in respect of the Transactions as of the Closing Date.

NYI-4543121
RLF1 9419075v.1

Z.    **Transactions Not a Sub Rosa Plan**.  The sale and assignment of the Acquired Assets and Assumed Liabilities outside of a plan of reorganization pursuant to the Stalking Horse APA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Transactions do not constitute a sub rosa chapter 11 plan.

AA.    **Time is of the Essence**.  Time is of the essence in consummating the Transactions.  In order to maximize the value of the Debtors' assets, it is essential that the sale and assignment of the Acquired Assets and the Assumed Contracts and Leases occur within the time constraints set forth in the Stalking Horse APA.  Specifically, the Transactions must be approved and consummated promptly in order to preserve the viability of the business subject to the Sale as a going concern, to maximize the value to the Debtors, their estates, their creditors, and all other parties in interest.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

The Transactions contemplated by the Stalking Horse APA are in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Relief Granted**.  The relief requested in the Sale Motion is granted in its entirety.

2.    **Objections Overruled**.  All objections and responses to the Sale Motion, this Order or the relief granted herein that have not been overruled, withdrawn, waived, settled or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3.    **Notice**.  Notice of the Sale Motion, including without limitation, the transactions set forth in the Stalking Horse APA and the assumption and assignment of the

Assumed Contracts and Leases, the Auction, the Sale Hearing and the Sale was fair and

equitable under the circumstances and complied in all respects with section 102(1), 363 and 365

of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007 and Local Rule

6004-1.

    4.  **Prior Findings of Fact and Conclusions of Law**.  The Bankruptcy

Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the

record of the Bidding Procedures Hearing, are incorporated herein by reference.

    5.  **Approval**.  The Stalking Horse APA and the Transactions are hereby

approved and authorized in all respects, and the Debtors are hereby authorized and empowered

and directed to enter into, and to perform their obligations under, the Stalking Horse APA and to

execute and perform such agreements or documents, and take such other actions as are necessary

or desirable to effectuate the terms of the Stalking Horse APA.

    6.  **Good Faith Buyer**.  The Buyer is a good faith purchaser of the Acquired

Assets and is hereby granted and is entitled to all of the protections provided to a good faith

purchaser under section 363(m) of the Bankruptcy Code.  Pursuant to section 363(m) of the

Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or

vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal,

modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or

assignment under the Stalking Horse APA or obligation or right granted pursuant to the terms of

this Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any

reversal, modification or vacatur, any sale, transfer or assignment shall be governed in all

respects by the original provisions of this Order or the Stalking Horse APA, as the case may be.

NYI-4543121
RLF1 9419075v.1

7.      **Section 363(n) of the Bankruptcy Code**.  The sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

8.      **Authorization of Performance by the Debtors**.  The Debtors are authorized to fully perform under, consummate, and implement the terms of the Stalking Horse APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Stalking Horse APA, this Order, and the Transactions, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Acquired Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Stalking Horse APA, without any further corporate action or orders of the Bankruptcy Court.

9.      The Debtors are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Stalking Horse APA, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.  The

NYI-4543121
RLF1 9419075v.1

execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

10.     The Buyer shall have no obligation to proceed with the Closing until all conditions precedent to their obligations to do so have been met, satisfied or waived in accordance with the terms of the Stalking Horse APA.

11.     **Valid Transfer**.  Effective as of the Closing (a) the sale and assignment of the Acquired Assets and the Assumed Contracts and Leases by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Acquired Assets and the Assumed Contracts and Leases notwithstanding any requirement for approval or consent by any person, and vests the Buyer with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Liens, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of the Assumed Contracts and Leases and any Assumed Liabilities by the Buyer constitutes a legal, valid and effective delegation of any and all obligations, liabilities and claims in respect thereof to the Buyer and divests the Debtors and their affiliates (the "Debtor Parties") of all liability with respect to the Assumed Contracts and Leases and such Assumed Liabilities.

12.     **Retention Period**.  The restrictions on the Debtors and their estates with respect to the Purchase Price Warrant or any Buyer Common Stock (each as defined in the Stalking Horse APA) set forth in Section 9.11(f) of the Stalking Horse APA shall, without further order of the Bankruptcy Court, be binding on and enforceable against (a) the Debtors and their respective estates, (b) their respective successors and assigns, including without limitation, any reorganized Debtor under a chapter 11 plan, any chapter 11 trustee hereinafter appointed for any of the Debtors' estates, or any chapter 7 trustee appointed if any of these cases are converted

-15-

into cases under chapter 7 of the Bankruptcy Code and (c) all holders of the Purchase Price Warrant or any Buyer Common Stock.

13.    **Free and Clear**.  Except to the extent specifically provided in the Stalking Horse APA, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Acquired Assets and assign the Assumed Contracts and Leases to the Buyer.  The sale and assignment of the Acquired Assets and the assignment of the Assumed Contracts and Leases to the Buyer vests the Buyer with all right, title and interest of the Debtors to the Acquired Assets free and clear of any and all Liens, Excluded Liabilities, and other liabilities of any kind or nature whatsoever, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens to attach only to the proceeds of the sale and assignment of the Acquired Assets with the same priority, validity, force, and effect as they now have in or against the Acquired Assets.  The Sale Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Acquired Assets free and clear of all Liens and Excluded Liabilities in accordance with Local Rule 6004-1.  Following the Closing, no holder of any Lien on the Acquired Assets may interfere with the Buyer's use and enjoyment of the Acquired Assets based on or related to such Lien, or any actions that the Debtors may take in their chapter 11 cases and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Transactions or by this Order.

14.    The term "Liens" shall include, among other things, any claim, interest, lien or encumbrance described in the definition of "Excluded Liabilities" and, without limitation: all liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature in respect of

-16-

the Debtors or any property of the Debtors, including, without limitation, the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of any Debtor; (4) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitations, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any theories of successor liability, including any theories on product liability grounds; (8) any interests arising under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq*. ("PACA") and (9) any environmental or other liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the Closing (as defined in the Stalking Horse APA) (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive

Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or other state statute.

15.     The provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of Liens and the Excluded Liabilities, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

16.     **Direction to Creditors**.  On the Closing Date (as defined in the Stalking Horse APA), each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens in the Acquired Assets, if any, as such Liens may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens* or other documents, instruments, notices or agreements evidencing any Lien against or in the Acquired Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Acquired Assets, then with regard to the Acquired Assets, (a) the Debtors and/or the Buyer are authorized to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Debtors and/or Buyer are authorized to file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Acquired Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

17. **Direction to Government Agencies**. Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Stalking Horse APA and this Order. All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens against the Acquired Assets from their records, official and otherwise.

18. **Direction to Surrender Possession or Control**. All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Acquired Assets are directed to surrender possession or control of the Acquired Assets to the Buyer on the Closing Date or at such time thereafter as the Buyer may request.

19. **Licenses and Permits**. To the extent provided in the Stalking Horse APA and available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to the Acquired Assets and the Assumed Contracts and Leases, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, the Buyer shall apply for and obtain any necessary license or permit promptly

after the Closing Date and such licenses or permits of the Debtors shall remain in place for the Buyer's benefit until new licenses and permits are obtained.

20.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of this chapter 11 cases or the consummation of the transactions contemplated by the Stalking Horse APA.

21.    **Transfer of Title and Interests**.  All of the Debtors' interests in the Acquired Assets to be acquired by the Buyer under the Stalking Horse APA shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets including the Assumed Contracts and Leases acquired by the Buyer under the Stalking Horse APA and/or a bill of sale or assignment transferring indefeasible title and interest in the Acquired Assets, including the Assumed Contracts and Leases, to the Buyer.

22.    **Fair Consideration**.  The consideration provided by the Buyer to the Debtors pursuant to the Stalking Horse APA for the purchase of the Acquired Assets and assignment of the Assumed Contracts and Leases constitutes reasonably equivalent value and fair consideration under, and the Transactions shall not constitute a fraudulent transfer or fraudulent conveyance under, the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

NYI-4543121
RLF1 9419075v.1

23.    **No Successor Liability**.  The Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the Transactions contemplated by the Stalking Horse APA or any other event occurring in the chapter 11 cases under any theory of law or equity, (b) deemed to have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  The Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any Excluded Liabilities, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Stalking Horse APA, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1.  Except for the Assumed Liabilities, the transfer of the Acquired Assets and the Assumed Contracts and Leases to the Buyer under the Stalking Horse APA shall not result in (i) the Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent), or the Acquired Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors (including, without limitation, Excluded Liabilities), (ii) the Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent), or the Acquired Assets, having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity,

NYI-4543121
RLF1 9419075v.1

whether by payment, setoff or otherwise, directly or indirectly, any Liens or Excluded Liability, or (iii) the Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent), or the Acquired Assets, having any liability or responsibility to the Debtors except as is expressly set forth in the Stalking Horse APA.  In the event that Buyer elects to be treated as a successor employer under section 3121(a)(1) of the Internal Revenue Code, or makes an election to assume, on an employee by employee basis, immigration-related liabilities with respect to former employees of the Debtors hired by the Buyer, the Buyer shall not by reason of any such election be deemed to have assumed any other liabilities or to be a successor for any other purpose.

24.    Without limiting the effect or scope of the foregoing, as of the Closing Date, the Buyer and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent) shall have no successor or  vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Acquired Assets or the Assumed Contracts and Leases prior to the Closing.

25.    **Injunction**.  Except to the extent expressly included in the Assumed Liabilities, all persons and entities, including, but not limited to, the Debtors, employees, former employees, all debt security holders, equity holders, administrative agencies, governmental units

NYI-4543121
RLF1 9419075v.1

(as defined in section 101(27) of the Bankruptcy Code), tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers and other parties in possession of any of the Acquired Assets at any time, trade creditors and all other creditors, holding any Excluded Liabilities or Liens of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the Assumed Contracts and Leases, the operation of the Debtors' business before the Closing Date, the Transactions, or the transfer of the Acquired Assets and the Assumed Contracts and Leases to the Buyer, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against the Buyer, or any affiliates, predecessor, successors or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Acquired Assets.  Actions that are barred hereby include, without limitation: (i) the commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment, collection or recovery of any judgment, award, decree or order, (iii) the creation, perfection or enforcement of any lien, claim, interest or encumbrance, (iv) the assertion of any right of setoff, subrogation or recoupment of any kind, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of

-23-

this Order, any actions contemplated or taken in respect hereof, or the Stalking Horse APA and (vi) the revocation, termination or failure or refusal to renew any license, permit, registration or governmental authorization or approval to operate any of the Acquired Assets or conduct the businesses associated with such Acquired Assets.  Following the Closing Date, no holder of a Lien in the Debtors shall interfere with the Buyer's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, or any actions that the Debtors may take in the Debtors' cases.

26.     The Buyer has not assumed and is not otherwise obligated for any of the Debtors' liabilities other than the Assumed Liabilities and the Buyer has not acquired any of the Excluded Assets (as defined in the Stalking Horse APA).  Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens, based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Buyer or the Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens or on account of any liabilities of the Debtors other than Assumed Liabilities pursuant to the Stalking Horse APA.  All persons holding or asserting any Lien on the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or cause of action against the Buyer or the Acquired Assets for any liability associated with the Excluded Assets.

27.     **<u>No Bulk Sales; No Brokers</u>**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Sale and the Transactions.  No brokers were involved in consummating the Sale or the Transactions, and no brokers' commissions are due to any person or entity in connection with the Sale or the Transactions. The Buyer is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or

-24-

financial advisor as a result of the consummation of the Transactions based upon any arrangement made by or on behalf of the Debtors.

28.    **Fees and Expenses**.  Any amounts payable by the Debtors under the Stalking Horse APA or any of the documents delivered by the Debtors in connection with the Stalking Horse APA, including without limitation, any allowed claims for breach thereof and the purchase price adjustment amount, if any, shall be paid in the manner provided in the Stalking Horse APA without further order of the Bankruptcy Court, shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by written agreement with the Buyer or its successors or assigns (such agreement to be provided in the Buyer's or its successors' or assigns' respective sole discretion).

29.    **Assumption and Assignment of Assumed Contracts and Leases**. Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Transactions, the Debtors' assumption and assignment of the Assumed Contracts and Leases to the Buyer free and clear of all Liens and Excluded Liabilities pursuant to the terms set forth in the Stalking Horse APA, as modified by the terms of any amendments reached directly by the Buyer with the respective counterparty, is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) (including to the extent, if any, modified by section 365(b)(3)) of the Bankruptcy Code with respect thereto are hereby deemed satisfied. Each counterparty to the Assumed Contracts and Leases is hereby forever barred, estopped, and permanently enjoined from raising or asserting against the Debtors Parties or the Buyer, or the property of any of them, any assignment fee, default, breach, claim, pecuniary loss, liability or

obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated senior or subordinate) arising under or out of, in connection with, or in any way related to the Assumed Contracts and Leases existing as of the Closing Date or arising by reason of the Closing.

30.     The Assumed Contracts and Leases shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts and Leases.  The assignment of each of the Assumed Contracts and Leases are deemed to be made in good faith under, and are entitled to the protections of, section 363(m) of the Bankruptcy Code.

31.     **Adequate Assurance**.  The Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts and Leases within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code (including to the extent, if any, modified by section 365(b)(3)).  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of the Assumed Contracts and Leases have been satisfied.

32.     **Anti-Assignment Provisions Unenforceable**.  No sections or provisions of the Assumed Contracts and Leases that purport to (a) prohibit, restrict or condition Debtors' assignment of the Assumed Contracts and Leases, including, but not limited to, the conditioning of such assignment on the consent of the non-Debtor party to such Assumed Contracts and Leases; (b) authorize the termination, cancellation or modification of the Assumed Contracts and Leases based on the filing of a bankruptcy case, the financial condition of the Debtors or similar

-26-

circumstances; (c) declare a breach or default as a result of a change in control in respect of the

Debtors; or (d) provide for additional payments, penalties, conditions, renewals, extensions,

charges, other financial accommodations in favor of the non-Debtor third party to the Assumed

Contracts and Leases, or modification of any term or condition upon the assignment of an

Assumed Contract or the occurrence of the conditions set forth in subsection (b) above, shall

have any force and effect, and such provisions constitute unenforceable anti-assignment

provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. §

365(e).  The entry of this Order constitutes the consent of the non-Debtor parties to the Assumed

Contracts and Leases to the assumption and assignment of such agreements.  All Assumed

Contracts and Leases shall remain in full force and effect, without existing default(s), subject

only to payment of the appropriate cure amount, if any, by the Debtors.

33.     **No Fees for Assumption and Assignment**.  There shall be no rent

accelerations, assignment fees, increases or any other fees charged to the Buyer, its successors or

assigns, or the Debtors as a result of the assumption and assignment of the Assumed Contracts

and Leases.

34.     **Cure Amounts**.  All defaults or other obligations shall be deemed cured

by the payment or other satisfaction of the cure amounts, if any, associated with the Assumed

Contracts and Leases (the "Cure Amounts").  Except for the Cure Amounts, if any, there are no

other defaults existing under the Assumed Contracts and Leases.

35.     Payment of the Cure Amounts pursuant to the Stalking Horse APA is

hereby authorized.

36.     **Notice of Assumption and Assignment**.  The Debtors have served all of

the non-Debtor counterparties to the Assumed Contracts and Leases, identified on the lists the

Debtors have filed with the Bankruptcy Court, by first class mail, a Notice of Assignment and Cure that included (i) the title of the Assumed Contract, (ii) the name of the counterparty to the Assumed Contract, (iii) any applicable Cure Amounts, (iv) the identity of the Assignee, and (v) the deadline by which any such Assumed Contract counterparty must file an objection ("**Objection**") to the proposed assumption and assignment.  No other or further notice is required.

37.    **Objections to Assumption and Assignment**.  Except as provided herein, all Objections have been overruled, withdrawn, waived, settled or otherwise resolved.  Any Objections as to applicable Cure Amounts that have not been resolved by the parties may be heard at a later date as set by the Bankruptcy Court.  The pendency of a dispute relating to a particular Assumed Contract or Assumed Lease shall not prevent or delay the assumption and assignment of any other Assumed Contracts and Leases or the Closing.

38.    Any non-Debtor counterparty to the Assumed Contracts and Leases designated to be assumed and assigned to the Buyer who has not filed an Objection by the deadline as set forth in the Notice of Assignment and Cure shall thereafter be barred from objecting or asserting monetary or non-monetary defaults with respect to any such Assumed Contract or Assumed Lease and such Assumed Contract or Assumed Lease shall be deemed assumed by the Debtors and assigned to the Buyer on the Closing Date.

39.    **Direction to Assumed Contracts and Leases Counterparties**.  All counterparties to the Assumed Contracts and Leases shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyer, and shall not charge the Buyer for, any instruments, applications, consents, or other documents which may be required or requested by

any public or quasi-public authority or other party or entity to effectuate the applicable transfers

in connection with the Transactions.

40.    **Release and Discharge**.  Other than the Assumed Liabilities, the Buyer

and its affiliates and their respective successors, assigns, members, partners, officers, directors,

principals and shareholders (or equivalent) shall have no obligations with respect to any

liabilities of the Debtors, including, without limitation, the Excluded Liabilities, and, upon

consummation of the Transactions, the Debtors and their estates are deemed to release and

forever discharge the Buyer and its affiliates and their respective successors, assigns, members,

partners, officers, directors, principals and shareholders (or equivalent) from any and all claims,

causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind,

character or nature whatsoever, known or unknown, fixed or contingent, relating to the

Transactions, the sale of the Acquired Assets and assignment of the Assumed Contracts and

Leases, except for liabilities and obligations expressly assumed under the Stalking Horse APA.

41.    **Amendments**.  Subject to the terms of the Stalking Horse APA, the

Stalking Horse APA and any related agreements may be waived, modified, amended, or

supplemented by agreement of the Debtors and the Buyer, without further action or order of the

Bankruptcy Court; provided, however, that any such waiver, modification, amendment, or

supplement does not have a material and adverse effect on the Debtors and their estates.  At the

sole discretion of the Buyer, the Debtors and the Buyer are expressly authorized, without further

order of the Bankruptcy Court, to execute an amendment to the Stalking Horse APA to provide

for the Closing to occur on one or more Closing Dates.  Any material modification, amendment,

or supplement to the Stalking Horse APA that has an adverse effect on the Debtors and their

estates must be approved by Order of the Bankruptcy Court following a motion on notice to all

interested parties.

42.    **Failure to Specify Provisions**.  The failure specifically to include any

particular provisions of the Stalking Horse APA or any related agreements in this Order shall not

diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy

Court, the Debtors and the Buyer that the Stalking Horse APA and any related agreements are

authorized and approved in their entirety with such amendments thereto as may be made by the

parties in accordance with this Order.  Likewise, all of the provisions of this Order are

nonseverable and mutually dependent.

43.    **Binding Order**.  This Order and the Stalking Horse APA shall be binding

upon and govern the acts of all persons and entities, including without limitation, the Debtors

and the Buyer, their respective successors and permitted assigns, including, without limitation,

any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a

chapter 7 case if this case is converted from chapter 11, all creditors of any Debtor (whether

known or unknown), all non-Debtor parties to any Assumed Contracts and Leases, filing agents,

filing officers, title agents, recording agencies, governmental departments, secretaries of state,

federal, state and local officials, and all other persons and entities who may be required by

operation of law, the duties of their office or contract, to accept, file, register, or otherwise record

or release any documents or instruments or who may be required to report or insure any title in or

to the Acquired Assets.  The Stalking Horse APA and Transactions shall not be subject to

rejection or avoidance under any circumstances.  This Order and the Stalking Horse APA shall

inure to the benefit of the Debtors, their estates, their creditors, the Buyer and its respective

successors and assigns.

NYI-4543121
RLF1 9419075v.1

44.    **Allocation of Consideration**.  Except as provided in the Stalking Horse APA, all rights of the respective Debtors' estates with respect to the allocation of consideration received from the Buyer in connection with the Transactions (including, without limitation, the value of the assumption of any assumed liabilities) are expressly reserved for later determination by the Court and, to the extent consideration is received by any Debtor that is determined to be allocable to another Debtor, the recipient Debtor shall be liable to such other Debtor for a claim with the status of an expense of administration in the case of the recipient Debtor under section 503(b) of the Bankruptcy Code.

45.    **No Stay of Order**.  Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Time is of the essence in closing the Transactions referenced herein, and the Debtors and the Buyer intend to close the Transactions as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal, pursuing a stay and obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

46.    **Lift of Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Bankruptcy Court, to allow the Buyer to deliver any notice provided for in the Stalking Horse APA and allow the Buyer to take any and all actions permitted under the Stalking Horse APA, including, without limitation, terminating the Stalking Horse APA, in each case in accordance with the terms and conditions thereof.

47.    **Retention of Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, the Bidding Procedures Order, and the Stalking Horse APA, including all amendments thereto and any

NYI-4543121
RLF1 9419075v.1

waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, and (b) to decide any disputes concerning this Order and the Stalking Horse APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Stalking Horse APA and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Assumed Contracts and Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens.

48.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or any other order in the Debtors' cases (including any order entered after any conversion of these cases into cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Stalking Horse APA or this Order and, to the extent of any such conflict, the terms of this Order and the Stalking Horse APA shall control.

49.    **Further Assurances**.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Transactions, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in the Buyer its right, title and interest in and to the Acquired Asset and the Assumed Contracts and Leases.

50.    **Governing Terms**.  To the extent this Order is inconsistent with any prior order or pleading in these chapter 11 cases, the terms of this Order shall govern.  To the extent

NYI-4543121
RLF1 9419075v.1

there is any inconsistency with between the terms of this Order and the terms of the Stalking

Horse APA (including all ancillary documents executed in connection therewith), the terms of

the Stalking Horse APA and such documents shall govern.


Dated: _____, 2013
        Wilmington, Delaware

                                          _____
                                          THE HONORABLE KEVIN J. CAREY
                                          UNITED STATES BANKRUPTCY JUDGE

NYI-4543121
RLF1 9419075v.1