UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re | Chapter 11 |
| FRESH & EASY NEIGHBORHOOD MARKET INC. *et al.*,[1] | Case No. 13-12569 (KJC) |
|  | (Jointly Administered) |
| Debtors. |  |

**APPLICATION OF THE DEBTORS FOR AN ORDER
AUTHORIZING THEM TO RETAIN AND EMPLOY PILLSBURY WINTHROP SHAW
PITTMAN LLP AS SPECIAL CORPORATE COUNSEL, *NUNC PRO TUNC* AS OF THE
PETITION DATE, PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE**

The above-captioned debtors (collectively, the "Debtors") hereby apply to the Court for entry of an order pursuant to sections 327(e) of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing them to retain and employ Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") as special corporate counsel in these chapter 11 cases, *nunc pro tunc* as of September 30, 2013 (the "Petition Date").  In support of this Application, the Debtors (i) submit the Declaration of Christopher Patay, a partner of Pillsbury (the "Patay Declaration"), a copy of which is attached hereto as Exhibit A and incorporated herein, and further respectfully states as follows:

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

NYI-4547220
RLF1 9443404v.1

**Background**

1. On the Petition Date, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[2] The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

2. Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices. The Debtors currently operate 167 stores located in California, Arizona and Nevada. In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "Campus") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products. In close proximity to the Campus is one of the Debtors' two distribution centers, with the other inactive distribution center located in Stockton, California. For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

3. The Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process. The Debtors intend to liquidate all other assets not included in the proposed sale. The Debtors believe the proposed sale and the liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

---

[2] This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      By this Application, the Debtors seek to retain and employ Pillsbury as special corporate counsel in these chapter 11 cases to assist the Debtors with corporate, commercial and transactional matters, pursuant to section 327(e) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-1.  The Debtor requests that Pillsbury be retained under an evergreen retainer, *nunc pro tunc*, to the Petition Date, to perform the services described in this Application and on the terms set forth herein.

## Basis for Relief Requested

5.      The Debtors need to retain counsel to assist them with various corporate, commercial and transactional matters.  The Debtors submit that the proposed retention of Pillsbury meets all the requirements for retention of special counsel under section 327(e) of the Bankruptcy Code.  This section permits a debtor-in-possession, with court approval, to employ counsel for a "specified special purpose" if such employment is in the best interests of the estate.  As Pillsbury is the proposed special counsel for the purpose of advising and assisting the Debtor on certain various corporate, commercial and transactional matters described below, section 327(e) does not require that Pillsbury be "disinterested persons" as defined in Bankruptcy Code section 101(14).  Rather, section 327(e) of the Bankruptcy Code requires only that Pillsbury not represent or hold any interest adverse to the Debtor or the estate with respect to the matters on which Pillsbury is to be employed.

6.      As required by Bankruptcy Rule 2014(a), this Application sets forth the following:  (a) the specific facts showing the necessity for Pillsbury's employment, (b) the reasons for the Debtors' selection of Pillsbury as their special corporate counsel, (c) the services to be provided by Pillsbury, (d) the arrangement between the Debtors and Pillsbury with respect to Pillsbury's compensation, and (e) to the best of the Debtors' knowledge, the extent to which

Pillsbury represents any other parties in interest or creditors of the Debtors in connection with matters in which Pillsbury is proposed to be engaged by the Debtors.

### **Retention of Pillsbury is Warranted**

7. The Debtors seek to retain Pillsbury as special corporate counsel because of Pillsbury's extensive history and experience as the Debtors' primary outside counsel in connection with the types of legal matters described in this Application during the last six years. Based on its prior experience and long-standing relationship with the Debtors, Pillsbury possesses extensive knowledge about the Debtors' businesses. Moreover, Pillsbury is currently engaged in a number of matters for the Debtors that may continue during these chapter 11 cases, including representation of the Debtors in connection with (a) the proposed stalking horse asset sale to the Proposed Buyer; (b) the Debtors' loyalty card program; (c) privacy law compliance by the Debtor; (d) certain alcohol beverage licensing and compliance; (e) certain vendor contract negotiations; (f) insurance claim counseling; and (g) other corporate, commercial and transactional matters. Accordingly, Pillsbury is able to represent the Debtors with respect to nonbankruptcy issues with greater efficiency, speed and effectiveness than any other counsel. Accordingly, Pillsbury is well qualified to serve as special corporate counsel to the Debtors.

8. The attorney in charge of this engagement is Christopher Patay, a partner and member of Pillsbury's Corporate & Securities group. Christopher Patay has been the lead Pillsbury attorney on the Debtors' matters since March 2007.

9. The Debtors believe that retention of Pillsbury as special corporate counsel for these matters will provide continuity of service, enhance efficiency, and thereby preserve estate assets, and is clearly in the best interest of the estates, its creditors, and other parties in interest.

### Scope of Services

10. The Debtors propose that Pillsbury shall continue to provide the following services:

(a) representation of the Debtors in connection with the proposed stalking horse asset sale to YFE Holdings, Inc. or other asset sale and property disposition transactions;

(b) representation of the Debtors in connection with commercial transactional and counseling matters including with respect to Debtors' loyalty card program; privacy law compliance; alcohol beverage licensing and compliance; vendor contract negotiations; and insurance claim counseling; and

(c) other corporate, commercial transactional and non-bankruptcy services for Debtors to the extent requested by Debtors.

### Pillsbury's Connections

11. As set forth in detail in the Patay Declaration, Pillsbury has represented, currently represents and will continue to represent entities that are claimants of, or interest holders in, the Debtors, in matters that are not adverse to the Debtors or related to the Debtors' pending chapter 11 cases. To the best of Debtors' knowledge and based on the Patay Declaration, Pillsbury does not have any relationship with any creditor or other parties in interest adverse to the Debtors except as set forth in the Patay Declaration.

### Compensation of Pillsbury

12. Subject to Court approval under section 330(a) and 331 of the Bankruptcy Code, compensation will be payable to Pillsbury on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Pillsbury. As is the case with respect to rates charged in non-bankruptcy matters of this type, Pillsbury's rates are subject to periodic adjustment to reflect economic and other conditions. Currently, customary hourly rates of partners for Pillsbury in the U.S. range from $590 to $1,155. Other U.S. attorneys' customary

hourly rates, including counsel positions, range from $360 to $925. The customary hourly rates charged for Pillsbury paraprofessionals and other timekeepers in the U.S. range from $65 to $855.

13.  Pillsbury's hourly rates are set at a level designed to fairly compensate Pillsbury for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by Pillsbury from time to time. It is Pillsbury's policy to charge its clients in all areas of practice for all other expenses incurred in connection with a client's case. The expenses charged to clients include, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long-distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals" and telecopier charges. Pillsbury will charge the Debtors for these expenses in a manner and at rates consistent with charges made generally to its other clients. Pillsbury believes that it is fairer to charge these expenses to the particular client rather than increase the hourly rates and spread expenses among all clients.

14.  As of September 27, 2013, Pillsbury held an advance payment retainer of approximately $330,000.00 for its services and expenses to be rendered or incurred for or on behalf of the Debtors (the "Retainer"). The Debtors have agreed that the Retainer may be applied against prepetition fees and expenses. The remaining balance of the Retainer will be held by Pillsbury as a retainer, to be applied against post-petition fees and expenses, as and when approved by the Court.

### Notice

15. Notice of this Application shall be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Application is necessary.

### No Prior Request

16. No previous request for relief sought herein has been made to this Court or any other court.

[Remainder of Page Intentionally Blank]

-8-

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit B</u>:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  October 3, 2013                              Respectfully submitted,


                                                    /s/ James Dibbo
                                                    Chief Financial Officer of the Debtors