**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| FRESH & EASY NEIGHBORHOOD MARKET INC., *et al.*,[1] | : | Case No. 13-12569 (KJC) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

**DEBTORS' APPLICATION FOR AN ORDER (I) AUTHORIZING THEM TO RETAIN AND EMPLOY THE JOINT VENTURE OF GORDON BROTHERS GROUP, LLC AND CERTAIN OF ITS AFFILIATES AND TIGER CAPITAL GROUP, LLC AND CERTAIN OF ITS AFFILIATES AS CONSULTANT, *NUNC PRO TUNC* AS OF THE PETITION DATE AND (II) WAIVING COMPLIANCE WITH CERTAIN INFORMATION REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(g)**

The above-captioned debtors (collectively, the "Debtors") hereby apply to the Court for entry of an order pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2(g) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") authorizing them to retain and employ the joint venture comprised of Gordon Brothers Group, LLC (together, with its affiliates, "GBG") and its joint venture partner Tiger Capital Group, LLC (together, with its affiliates, "TC"; GBG and TC together, as a joint venture proposed to serve as a consultant as described herein, "JV"), as a consultant in these chapter 11

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses): Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636). The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

NYI-4547297
RLF1 9443564v.1

cases, *nunc pro tunc* as of September 30, 2013 (the "Petition Date").[2] In support of this Application, the Debtors submit (i) the Declaration of Michael D. Chartock, a principal and managing director of GBG (the "Chartock Declaration"), a copy of which is attached hereto as Exhibit A and (ii) the Declaration of Albert T. Nassi, a member and counsel of TC (the "Nassi Declaration") a copy of which is attached hereto as Exhibit B, which are incorporated herein, and further respectfully states as follows:

## Background

1. On September 30, 2013 (the "Petition Date"), each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[3] The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being administered jointly.

2. Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices. The Debtors currently operate 167 stores located in California, Arizona and Nevada. In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "Campus") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products. In close proximity to the Campus is one of the Debtors' two distribution centers, with the other inactive distribution center located in Stockton,

---

[2] TC is participating in JV primarily as a financial resource; TC is not expected to perform any of the consulting or other JV services described in this Application in connection with the Debtors' chapter 11 cases. Accordingly, this Application will address JV's suitability to serve as a consultant to Debtors based upon the qualifications of GBG as set forth herein.

[3] This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

California. For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

        3.      The Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process. The Debtors intend to liquidate all other assets not included in the proposed sale. The Debtors believe the proposed sale and the liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

        4.      By this Application, the Debtors seek to retain and employ JV as a consultant in these chapter 11 cases to assist the Debtors with their disposition of various real estate and other property not included in the proposed sale transaction, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rule 2014(a) and Local Rules 2014-1 and 2016-2(g), *nunc pro tunc* as of the Petition Date, pursuant to the engagement letter between Jones Day and JV, dated as of September 1, 2013, a copy of which is attached as Exhibit C hereto (the "Engagement Letter").[4]

## Legal Basis for Relief Requested

*JV's Qualifications*

        5.      The Debtors seek to retain JV as their consultant because, among other things, GBG is a consulting firm with significant experience in the representation of debtors concerning the disposition of retail inventory, real estate and other retail assets in bankruptcy

---

[4]     Any references to or summaries of the Engagement Letter herein are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and the summaries provided herein.

proceedings.  The Debtors believe that JV is well qualified to act as consultant to the Debtors in this bankruptcy case.

6. GBG has advised numerous chapter 11 debtors in connection with leasing issues related to their restructuring efforts, including in the following cases:  In re Ultimate Acquisition Partners, LP, Case No. 11-10245 (MFW) (Bankr. D. Del Apr. 8, 2011); In re Borders Group, Inc., Case No. 11-10614 (MG) (Bankr. D. Del. Mar. 16, 2011); In re Blockbuster Inc., Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Nov. 23, 2010); In re Movie Gallery, Inc., Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010); In re TSIC, Inc. f/k/a Sharper Image Corp., Case No. 08-10322 (KG) (Bankr. D. Del. July 23, 2009); In re Goody's LLC, Case No. 09-10124 (Bankr. D. Del. Feb. 12, 2009); In re Circuit City Stores, Inc., Case No. 08-35653 (KRH) (Bankr. E.D. Va. Jan. 9, 2009); In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. July 24, 2008).  Because of the voluminous nature of the orders authorizing GBG or its affiliate(s) as consultants in the cases cited herein, such orders are not annexed to this Application.  Copies of the orders approving GBG or its affiliate(s) as consultants in these cases will be made available upon request of Debtors' counsel.

7. Accordingly, the Debtors believe that JV's resources, capabilities, and experience will greatly assist the Debtors in their efforts to maximize value from their real estate leases and other assets.

***Services to Be Provided by JV***

8. Subject to further order of this Court, and consistent with the Engagement Letter, JV will provide the following consulting and advisory services:

  (a) Negotiating lease terminations with landlords of certain leased properties;

  (b) Preparing and implementing a marketing program to assign or sublease certain leases of leased properties;

-4-

      (c)      Preparing and implementing a marketing program to sell certain of the Debtors' owned properties;

      (d)      Assisting in selling furniture, fixtures and equipment (collectively, "FF&E") from the Debtors' stores;

      (e)      Assisting the Debtors in connection with their procurement of "store closing" internal and external signs and similar promotional material in connection with the Debtors' closing of certain stores; and

      (f)      Selling certain of the Debtors' non-retail fixed assets (e.g., affixed assets located at the Campus).

9. The services that JV will provide to the Debtors are necessary to enable the Debtors to maximize the value of their real estate leases, FF&E and other property and thereby the value of their estates. These services will not duplicate the services that other professionals are providing to the Debtors in these chapter 11 cases. Specifically, JV will carry out unique functions and will use reasonable efforts to avoid unnecessary duplication of services.

*Professional Compensation*

10. Subject to Court approval, in consideration of the services to be provided by JV, as more fully described in the Engagement Letter, the Debtors will compensate JV pursuant to the following fee structure (the "Fee Structure") (capitalized terms used in this paragraph 10 but not defined in such paragraph shall have the respective meanings ascribed to them in the Engagement Letter):

      (a)      Lease Terminations, Assignments and Subleases:

                    As set forth in Schedule B of the Engagement Letter and Section 12 of the Engagement Letter, a copy of each of which is attached as Exhibit D hereto.

      (b)      Store FF&E:

                    As set forth in Section 2(B) of the Engagement Letter, a copy of which is attached as Exhibit E hereto.

(c) <u>Non-Retail Fixed Assets</u>:

As set forth in Section 2(D) of the Engagement Letter, excerpted below:

Consultant will be the seller of such of the Company's non-retail fixed assets (e.g. affixed assets located at the campus locations) as designated by the Company during the Term. Consultant shall not charge Company a fee for such Service but Consultant (i) will be compensated by charging buyers a fifteen percent (15%) buyers premium for any such fixed assets sold, and (ii) will be reimbursed by the Company for any reasonable out-of-pocket expenses related to the sale of such fixed assets; provided that in the event any such non-retail fixed assets are sold under or pursuant to the Real Estate Services, Consultant shall not be entitled to a separate fee or premium under this Paragraph D.

(d) <u>Retainer/Expense Reimbursement</u>.

As set forth in Section 2(E) of the Engagement Letter, excerpted below:

On the Effective Date, the Company shall pay to the Consultant the amount of Five Hundred Thousand dollars ($500,000.00), which the Consultant shall hold as a security retainer for all amounts due to it hereunder, whether in the nature of fees, reimbursement of expenses, or otherwise. Company shall reimburse Consultant for (i) its reasonable marketing and out-of pocket costs incurred in the provision of the Services, subject to a budget to be reasonably approved by the parties; and (ii) its reasonable travel expenses incurred in the provision of the Services, provided that Company has pre-approved such travel. Any reimbursable expenses shall be paid to Consultant within ten (10) business days after receipt of reasonably detailed invoices therefore.

11. To the best of the Debtors' knowledge, and as set forth in the Chartock Declaration, GBG has no agreement with any entity, other than with its joint venture partner TC, to share with such entity any compensation received by JV or GBG in connection with the Debtors' bankruptcy cases. To the best of the Debtors' knowledge, and as set forth in the Nassi Declaration, TC has no agreement with any entity, other than with its joint venture partner GBG, to share with such entity any compensation received by JV or TC in connection with the Debtors' bankruptcy cases.

NYI-4547297
RLF1 9443564v.1

*The Fee Structure is Reasonable Pursuant to Section 328(a) of the Bankruptcy Code*

12. Section 328(a) of the Bankruptcy Code authorizes a debtor to employ a professional under section 327 of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

13. The Debtors believe that the Fee Structure is fair and reasonable in light of industry practice, market rates both in and out of chapter 11 proceedings, JV's restructuring experience, and the scope of work to be performed pursuant to JV's retention.  The Fee Structure was agreed upon by the parties after arms' length negotiations.  JV's restructuring expertise, as well as its appraisal services and financial capabilities, some or all of which may be required by the Debtors during the term of JV's engagement, were important factors in setting the Fee Structure.  In addition, the parties agreed upon the Fee Structure in anticipation that a substantial commitment of professional time and effort will be required by JV, which may foreclose JV from pursuing other business opportunities during its engagement by the Debtors.

14. Accordingly, the Debtors submit that the Fee Structure is reasonable and market-based and should be approved pursuant to section 328(a) of the Bankruptcy Code.

*Fee Applications*

15. Local Rule 2016-2(g) provides that the Court may waive, "for cause," the requirement that a professional comply with the information requirements of Local Rule 2016-2(d).  In the instant case, it is not the general practice for JV's professionals, or professionals at similar real estate advisory firms, to keep detailed time records similar to those kept by attorneys.  Such firms do not bill their time on an hourly basis and generally are compensated on a transactional basis, as provided for in the Engagement Letter.  The Fee Structure in the

Engagement Letter is results-oriented and directly related to benefits received by the Debtors' estates in each transaction.

16. Given the transactional nature of JV's engagement and the Fee Structure, the Debtors submit that recording and submitting detailed time entries for services rendered by JV in these cases is unnecessary and would be unduly burdensome to JV. Thus, pursuant to Local Rule 2016-2(g), JV should be exempted from the detailed information requirements set forth in Local Rule 2016(d).

17. In addition, in accordance with the Engagement Letter, JV should not be required to submit interim fee applications. Such additional scrutiny of JV's fees is unnecessary where, as set forth above, JV is to be paid only upon the successful completion of transactions beneficial to the Debtors' estates. Because the Fee Structure is reasonable pursuant to section 328(a) of the Bankruptcy Code, and in the light of the foregoing, the Debtors submit that additional review of JV's compensation under section 330 of the Bankruptcy Code is unwarranted.

18. Notwithstanding the foregoing, as is customary in this District, JV will submit a final fee application with the Bankruptcy Court, subject to review by the United States Trustee for the District of Delaware (the "U.S. Trustee") under the standard set forth in section 330 of the Bankruptcy Code.

*Indemnification Provisions*

19. The Engagement Letter provides that the Debtors shall indemnify and hold JV and its affiliates, and their respective officers, directors, employees, agents, and independent contractors harmless from and against all claims, demands, penalties, losses, liabilities or damages, including without limitation, reasonable attorney's fees and expenses, directly or indirectly asserted against, resulting from, or related to JV's services provided under the

Engagement Letter, unless solely resulting from JV's gross negligence or willful misconduct (the "Indemnification Provisions").

20. Notwithstanding the Indemnification Provisions set forth in the Engagement Letter, during the pendency of these chapter 11 cases, the order approving JV's retention (the "JV Retention Order") shall modify the terms of the Engagement Letter as follows.

   a. JV shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, other than services and indemnification, contribution, or reimbursement that is approved by the Court;

   b. The Debtors shall have no obligation to indemnify JV, or provide contribution or reimbursement to JV, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from JV's gross negligence, fraud, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of JV's contractual obligations, unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Co., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which JV should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

   c. If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, JV believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by the JV Retention Order), including, without limitation, the advancement of defense costs, JV must file an application therefore in this Court, and the Debtors may not pay any such amounts to JV before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by JV for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify JV. All parties in interest shall retain the right to object to any demand by JV for indemnification, contribution or reimbursement.

21. The Debtors and JV believe that the Indemnification Provisions, as they will be modified by the JV Retention Order, are customary and reasonable for real estate

-9-

advisory engagements in chapter 11 cases in this District and other jurisdictions.  See, e.g., In re Ultimate Acquisition Partners, LP, Case No. 11-10245 (MFW) (Bankr. D. Del Apr. 8, 2011) [Docket No. 607]; In re Borders Group, Inc., Case No. 11-10614(MG) (Bankr. D. Del. Mar. 16, 2011) [Docket No. 394]; In re Blockbuster Inc., Case No. 10-14997 (BRL) (Bankr. S.D.N.Y. Nov. 23, 2010) [Docket No. 570]; In re Movie Gallery, Inc., Case No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010) [Docket No. 75]; In re TSIC, Inc. f/k/a Sharper Image Corp., Case No. 08-10322 (KG) (Bankr. D. Del. July 23, 2009) [Docket No. 1039]; In re Goody's LLC, Case No. 09-10124 (Bankr. D. Del. Feb. 12, 2009) [Docket No. 276]; In re Linens Holding Co., Case No. 08-10832 (CSS) (Bankr. D. Del. July 24, 2008) [Docket No. 1024].

22. The Debtors respectfully submit that the Indemnification Provisions, as modified by the JV Retention Order, are reasonable and in the best interests of the Debtors, their estates, and creditors.  Accordingly, the Debtors request that the Court approve the Indemnification Provisions, as modified, as set forth above.

*Disclosure Concerning Disinterestedness*

23. In reliance on the Chartock Declaration, to the best of the Debtors' knowledge, information, and belief and except as set forth in the Chartock Declaration, (i) GBG has no connections with the Debtors, their creditors, the U.S. Trustee, any person employed in the Office of the U.S. Trustee, any United States Bankruptcy Judge for the District of Delaware, or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; (ii) GBG is not a creditor, equity security holder, or insider of the Debtors, (iii) neither GBG nor any of its principals is or was, within two years of the Petition Date, a director, officer, or employee of the Debtors; and (iv) GBG does not have an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity

security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.

24. In reliance on the Nassi Declaration, to the best of the Debtors' knowledge, information, and belief and except as set forth in the Nassi Declaration, (i) TC has no connections with the Debtors, their creditors, the U.S. Trustee, any person employed in the Office of the U.S. Trustee, any United States Bankruptcy Judge for the District of Delaware, or any other party with an actual or potential interest in these chapter 11 cases or their respective attorneys or accountants; (ii) TC is not a creditor, equity security holder, or insider of the Debtors, (iii) neither TC nor any of its principals is or was, within two years of the Petition Date, a director, officer, or employee of the Debtors; and (iv) TC does not have an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.

25. Accordingly, the Debtors believe that JV is a "disinterested person," as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code.

26. The disclosures identified above are based upon all information reasonably available to GBG and/or TC, as applicable, at this time. GBG and/or TC (as the case may be) will, to the extent necessary, file a supplemental Declaration as may be required if and when any other relationships exist or are modified during the term of the Engagement Letter.

NYI-4547297
RLF1 9443564v.1

**Consent to Jurisdiction**

27. Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

**Notice**

28. Notice of this Application shall be provided to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Bankruptcy Rule 2002. Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Application is necessary.

**No Prior Request**

No previous request for relief sought herein has been made to this Court or any other court.

[The remainder of this page is intentionally blank.]

-13-

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as <u>Exhibit F</u>:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:  October 3, 2013	Respectfully submitted,


	 /s/ James Dibbo
	James Dibbo
	Chief Financial Officer of the Debtors