## EXHIBIT C

**Engagement Letter**

AGREEMENT

For

SERVICES

Between

FRESH & EASY NEIGHBORHOOD MARKET INC.

And

A Joint Venture comprised of

GORDON BROTHERS GROUP, LLC

And

TIGER CAPITAL GROUP, LLC _Dmk_

Fresh 091613

## AGREEMENT FOR SERVICES

This **AGREEMENT FOR SERVICES** ("Agreement") is made as of this 1st day of September, 2013 ("**Effective Date**") by and between a joint venture comprised of **GORDON BROTHERS GROUP, LLC** and **TIGER CAPITAL** (collectively "**Consultant**"), and **FRESH & EASY NEIGHBORHOOD MARKET INC.** ("**Company**"). GROUP, LLC

### RECITALS

A.  Company leases or owns those certain real properties (individually a "**Property**" or collectively the "**Properties**") listed on Schedule A attached hereto. Company desires to (i) market and negotiate for the sale of owned Properties and the sublease, assignment or termination of leases of the leased Properties; (ii) sell furniture, fixtures and equipment located at the retail stores ("**Stores**") operated at the Properties; and (iii) assist the Company in connection with the Company's procurement of "store closing" internal and external signs and similar promotional material in connection with the Company's closure of the Stores.

B.  Company desires to retain Consultant to provide the services set forth in Recital "A" and as set forth in more detail in Paragraph 2 below (the "**Services**") under the terms and conditions contained herein, and Consultant is willing to provide such Services under such terms and conditions.

### AGREEMENT

NOW, THEREFORE, in consideration of the facts set forth in the Recitals above, the mutual covenants and conditions below, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Term of Agreement. This Agreement shall remain in full force and effect for a term of twelve (12) months following the Effective Date (the "**Term**"). Thereafter, the Term shall be automatically extended for successive thirty (30) day periods until terminated by either party upon at least thirty (30) days prior written notice to the other party.

2.  Services. During the term of engagement Consultant shall provide the following Services:

A. Real Estate.
  - Negotiate lease terminations with landlords of leased Properties.
  - Prepare and implement a marketing program to assign or sublease leases of leased Properties.
  - Prepare and implement a marketing program to sell the owned Properties.
  - Fees for Real Estate Services are set forth on Schedule B attached hereto.
  - Consultant shall not be responsible for any transactional costs and/or legal expenses incurred by Company in connection with Consultant's provision of the Services. Company shall reimburse Consultant for its reasonably incurred travel expenses in connection with the Real Estate Services, provided Company has pre-approved such travel. Allowed expenses shall be paid to Consultant within ten (10) business days of Company's receipt of an invoice therefore.
  - In providing the Real Estate Services, Consultant will work closely with Company's consultants, Alvarez & Marsal North America, LLC ("**A&M**"). In that regard, it is expected that: (i) Consultant and A&M will jointly be responsible for project management, overall strategy, negotiations with potential bulk buyers, and reporting and deal documentation (although Consultant with Company's counsel will take the lead on

## AGREEMENT FOR SERVICES

deal documentation); (ii) Consultant will primarily be responsible for marketing, negotiations with individual location buyers/replacement tenants, and negotiations with landlords; and (iii) A&M will primarily be responsible for analytics and reporting and data management and solely be responsible for Property management.

B. Store FF&E.

- At any time and from time to time during the Term, the Company may request that Consultant assist it in selling Store furniture, fixtures, and equipment. The Company shall designate in writing the items of Store furniture, fixtures, and equipment that it wishes to sell (and, for the avoidance of doubt, the Company is free to include/exclude items in its sole discretion, and to sell or otherwise dispose of excluded items, including by contracting with others to do so on its behalf). Notwithstanding the foregoing, Consultant shall not have any obligation to sell, handle, or clean-out/remove any furniture, fixtures, and equipment containing hazardous materials (including, without limitation, Freon), nor shall the Consultant be responsible for selling, disposing of or cleaning-out/removing any furniture, fixtures, and equipment that, at such time, contains any hazardous materials. With respect to all Store furniture, fixtures, and equipment that the Company does wish the Consultant to assist it in selling ("FF&E"), Consultant shall assist with the marketing and sale of such FF&E, and the Company shall pay Consultant a commission equal to (i) twenty percent (20%) of the first $5.0 million of gross sales of FF&E net only of sales tax plus (ii) five percent (5%) of any additional gross sales of FF&E net only of sales taxes ("FF&E Commission"). On a weekly basis, the Company shall pay Consultant the portion of the FF&E Commission earned on account of sales of FF&E made during each prior week. For the avoidance of doubt, in the event that any Store furniture, fixtures and equipment which are not specifically designated as FF&E in accordance with this Paragraph B are disposed of or transferred in connection with a transaction under or pursuant to the Real Estate Services, Consultant shall not be entitled to a separate fee under this Paragraph B.

- The Company shall reimburse Consultant for its marketing and sales expenses associated with the sale of FF&E, not to exceed an amount to be mutually agreed upon based upon the composition and location of the FF&E as determined by the Company ("FF&E Expense Budget"). The Company shall make such reimbursements weekly upon the receipt of reasonable documentation therefore.

- Consultant shall have the right to abandon any unsold Store furniture, fixtures; and equipment (including without limitation FF&E) at the Stores at the conclusion of the Term, without liability to the Company, any landlord or any other third party; provided however, that at the Company's request, Consultant would be pleased to assist the Company in cleaning-out/removing any unsold Store furniture, fixtures, and equipment (including without limitation FF&E) in which case the Company and Consultant would need to mutually agree upon an increase to the FF&E Expense Budget to reflect any such clean-out/removal expenses to be incurred by Consultant.

- Company shall be solely responsible for the collection, reporting and payment of all sales and similar taxes related to the sale of FF&E and Consultant shall have no responsibility therefore.

C. Signs. Consultant shall assist the Company in connection with the Company's procurement of "store closing" internal and external signs and similar promotional material in connection with the Company's closure of the Stores. Consultant shall invoice the Company for the actual cost of such signage (without any "lift" or other premium). The Company (and not Consultant) shall be solely responsible for the content and manner of use of such signage. Upon the Effective Date, the Company shall advance a sum to Consultant equal to the estimated costs to produce and deliver signage to the Stores. The Company and Consultant

## AGREEMENT FOR SERVICES

thereafter shall reconcile such advance based on the actual costs as set forth on statements and invoices.

D. <u>Non-Retail Fixed Assets</u>. Consultant will be the seller of such of the Company's non-retail fixed assets (e.g. affixed assets located at the campus locations) as designated by the Company during the Term. Consultant shall not charge Company a fee for such Service but Consultant (i) will be compensated by charging buyers a fifteen percent (15%) buyers premium for any such fixed assets sold, and (ii) will be reimbursed by the Company for any reasonable out-of-pocket expenses incurred to the sale of such fixed assets; provided that in the event any such non-retail fixed assets are sold under or pursuant to the Real Estate Services, Consultant shall not be entitled to a separate fee or premium under this Paragraph D.

In providing the Services, Consultant will reasonably consult and cooperate with the advisors of the Company and its affiliates.

3. <u>Retainer/Expense Reimbursement</u>. On the Effective Date, the Company shall pay to the Consultant the amount of Five Hundred Thousand dollars ($500,000.00), which the Consultant shall hold as a security retainer for all amounts due to it hereunder, whether in the nature of fees, reimbursement of expenses, or otherwise. Company shall reimburse Consultant for (i) its reasonable marketing and out-of pocket costs incurred in the provision of the Services, subject to a budget to be reasonably approved by the parties; and (ii) its reasonable travel expenses incurred in the provision of the Services, provided that Company has pre-approved such travel. Any reimbursable expenses shall be paid to Consultant within ten (10) business days after receipt of reasonably detailed invoices therefore.

4. <u>Exclusive</u>. During the term of this Agreement, Consultant shall have the sole and exclusive authority to perform the Services. All third-party inquiries regarding the Services made to Company or any representative of Company concerning those Services shall be re-directed to Consultant.

5. <u>Real Estate Documents</u>. Company shall:  (i) within five (5) business days after the Effective Date, (a) provide to Consultant an electronic spreadsheet for leased Properties with a list of contact information for landlords, premises size, expiration dates and option periods, rents, real estate taxes and other charges payable pursuant to leases, and (b) provide to Consultant an electronic spreadsheet for owned  Properties with a list of locations, addresses and sizes and copies of the Company's most recent title reports, with copies of exceptions, surveys, environmental reports and property condition reports; and (ii) assist and cooperate with Consultant whenever reasonably necessary by making Company personnel available to Consultant for consultation, and providing other information and data reasonably necessary for the performance of the Services.

6. <u>Publicity</u>. Consultant may use the Company's name and logo to identify Company as one of Consultant's clients.

7. <u>Approval of Real Estate Contracts</u>. All of the terms and conditions of each and every proposed lease modification agreement, assignment, sublease, termination agreement, Property sale agreement or other agreement involving a Property proposed by Consultant shall be subject to approval by Company, which approval may be withheld in Company's sole discretion.

8. <u>Default</u>. If either party materially fails to perform its obligations in accordance with the terms hereof, and does not cure such failure within ten (10) business days of written notice of such default, the other party shall have the right to terminate this Agreement by notice of termination to the non-performing party, effective ten (10) calendar days after the date such notice is given. In

## AGREEMENT FOR SERVICES

no event shall Consultant's liability to Company hereunder exceed the amount of any fees paid or payable to Consultant hereunder.

9. <u>Assignment</u>. Consultant shall not have the right to assign this Agreement without Company's consent, which consent may be withheld in Company's sole discretion.

10. <u>Notices</u>. All notices, requests, consents, approvals, payments in connection with this Agreement, or communications which either party desires or is required or permitted to give or make to the other party under this Agreement shall be deemed to have been given, made and delivered, only when made or given in writing and personally served; deposited in the United States mail, certified or registered mail, postage prepaid; sent by email, upon the sender's receipt of an acknowledgement from the intended recipient (such as by the "return receipt requested" function, as available, return e-mail or other written acknowledgement); sent by telecommunication, when transmitted to the applicable fax number and an appropriate answer back is received; or sent by reputable overnight courier (e.g., UPS or Federal Express) and addressed to the parties as follows:

To Company:

> Fresh & Easy Neighborhood Market Inc.
> 2120 Park Place, Suite 200
> El Segundo, CA 90245
> Attn:   Mary Kasper
>         General Counsel
> Tel: (310) 341-1435
> Fax: (310) 341-1501
> E-mail: mary.kasper@freshandeasy.com

With a copy to:

> Pillsbury Winthrop Shaw Pittman LLP
> 725 South Figueroa Street, Suite 2800
> Los Angeles, CA 90017-5406
> Attn: Christopher Patay
> Tel: (213) 488-7282
> Fax: (213) 629-1033
> Email: christopher.patay@pillsburylaw.com

and

> Pillsbury Winthrop Shaw Pittman LLP
> 1540 Broadway
> New York, NY 10036
> Attn: Christopher Mirick
> Tel: (212) 858-1333
> Fax: (212) 973-7492
> Email: christopher.mirick@pillsburylaw.com

To Consultant:

> Gordon Brothers Group, LLC
> Prudential Tower
> 800 Boylston Street, 27th Floor
> Boston, MA 02199
> Attn: Michael Chartock
>       General Counsel
> Tel: 617-210-71116

Fresh 091613                                  -4-

## AGREEMENT FOR SERVICES

Fax: 617-531-7906
E-mail: mchartock@gordonbrothers.com

11. <u>Compliance With Laws.</u> Consultant agrees to comply with all applicable federal, state and local laws, regulations, and codes in the performance of the Services and this Agreement. In furtherance of the Real Estate Services, Consultant may associate with licensed real estate brokers in the states in which the Properties are located.

12. <u>Survival of Fee.</u> In the event Company, or its successors or assigns, enters into any transaction with a landlord of a Property or other party during the term of this Agreement, the result of which would entitle Consultant to a fee for Real Estate Services pursuant to this Agreement, then Consultant shall be entitled to its fee pursuant to the terms of this Agreement. If Consultant has conducted documented substantive negotiations with a landlord or other party prior to the termination of this Agreement and an agreement with such landlord or other party is entered into within one hundred eighty (180) days after the termination of this Agreement, which agreement ultimately leads to the consummation of a transaction(s), the result of which would otherwise have entitled Consultant to a fee for Real Estate Services pursuant to this Agreement, then Consultant shall be entitled to a fee for such transaction(s) in accordance with the terms of this Agreement. Consultant must provide to Company, as part of its otherwise required reporting, a written list of such parties with whom it had documented substantive negotiations within ten (10) business days after termination of this Agreement.

13. <u>Use and Access.</u> The Company shall provide Consultant with access to, and peaceful use and occupancy of, all Properties as necessary for Consultant to perform the Services hereunder, without charge to Consultant. The Consultant shall have the right to use all assets and services currently available to Company, and necessary to perform the Services hereunder, such as computer systems, without charge to Consultant. The Company also shall make available to Consultant Company employees and personnel (to be designated as of the Effective Date) necessary for Consultant to perform the Services hereunder, including but not limited to authorized employees and personnel necessary to make binding decisions about transactions (e.g. sales of inventory) contemplated hereunder.

14. <u>Covenants Representations and Warranties of Company.</u> Company covenants, represents and warrants that:

      (i)     All FF&E will be in the Properties on the Effective Date;

      (ii)    All FF&E is owned by the Company free of any liens claims or encumbrances; and

      (iii)   Company has obtained any consents and approvals, if any, needed to consummate this Agreement.

15. <u>Bankruptcy Filing.</u> If, during the Term, the Company files a voluntary petition for bankruptcy protection pursuant to the United States Bankruptcy Code (a "**Bankruptcy Case**"), Company shall promptly use good faith efforts to (i) assume this Agreement in the Bankruptcy Case and (ii) with respect to all fees payable to Consultant, other than fees for owned property sales that are paid at closing, obtain an order from the court with jurisdiction over the Bankruptcy Case (the "**Court**") that Consultant's fees shall be payable pursuant to Section 506 (c) of the Bankruptcy Code from the proceeds of any secured party's collateral. Consultant acknowledges that the timing and manner of payment of all amounts due to it hereunder, whether in the nature of fees, reimbursement of expenses, or otherwise, may be subject to such procedures as the Court shall establish.

## AGREEMENT FOR SERVICES

16.   Insurance/Risk of Loss.

   A.   Each of the Company and Consultant shall maintain (at each party's respective expense) comprehensive liability insurance covering injuries to persons and property in or in connection with the Stores, in such amounts as are reasonable and consistent with its ordinary practices, for bodily injury, personal injury and/or property damage. Each party shall use commercially reasonable efforts to have: (a) the other party named as an additional insured on all such insurance of the other party; (b) all such insurance be non-cancelable and non-changeable except upon 30 days' prior written notice to the other party; and (c) certificates of all such insurance delivered to the other party as soon as practicable following the execution of this Agreement.

   B.   Notwithstanding any other provision of this Agreement, the Company and Consultant agree: (i) that Consultant shall not be deemed to be in possession or control of the Stores, the Properties or any assets located therein or associated therewith, or of the Company's employees, and that Consultant does not assume any of the Company's obligations or liabilities with respect to such Stores, Properties, assets, or employees; and (ii) the Company shall bear all responsibility for liability claims (product liability and otherwise) of customers, employees and other persons arising from events occurring at the Stores and Properties, and merchandise sold in the Stores, before, during and after the Term, except to the extent any such claim arises from the gross negligence, willful misconduct, fraud or unlawful acts of Consultant.

17.   Indemnification.

   A.   Consultant shall indemnify and hold the Company and its affiliates, and their respective officers, directors, employees, consultants, and independent contractors (collectively, **"Company Indemnified Parties"**) harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

      (i)   Consultant's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

      (ii)   any harassment or any other unlawful, tortious or otherwise actionable treatment of any employees or agents of the Company by Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives; or

      (iii)   the gross negligence, willful misconduct, fraud or unlawful acts of Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives.

   B.   The Company shall indemnify and hold Consultant, its affiliates and their respective officers, directors, employees, consultants, and independent contractors (collectively, **"Consultant Indemnified Parties"**) harmless from and against all claims, demands, penalties, losses, liability or damage, including, without limitation, reasonable attorneys' fees and expenses, directly or indirectly asserted against, resulting from or related to:

      (i)   The Company's material breach of or failure to comply with any of its agreements, covenants, representations or warranties contained herein or in any written agreement entered into in connection herewith;

      (ii)   any claims by any party engaged by the Company as an employee or independent

## AGREEMENT FOR SERVICES

contractor arising out of such engagement, except where due to the negligence, willful misconduct, fraud or unlawful acts of Consultant, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives;

(iii)   any consumer warranty or products liability claims relating to any inventory or furniture, fixture, and equipment asset; and/or

(iv)   the gross negligence, willful misconduct, fraud or unlawful acts of the Company, its affiliates or their respective officers, directors, employees, agents, independent contractors or representatives.

18.   Waivers and Amendments.  Waiver by either party of any default by the other party shall not be deemed a waiver of any other default.  No provision of this Agreement shall be deemed waived, amended, or modified by either party, unless it is in writing and signed by both parties.

19.   Severability.  If any provision, or any portion of any provision, contained in this Agreement is held unenforceable, then it shall, to that extent alone, be deemed omitted and this Agreement shall be construed as if such unenforceable provision had never been contained herein.

20.   Survival.  The terms, conditions, indemnities and warranties contained in this Agreement that are intended to survive the expiration or termination of this Agreement shall survive.

21.   Entire Agreement.  This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof.  All prior agreements, representations, statements, negotiations, understandings, and undertakings are superseded by this Agreement.

22.   Counterpart Execution/Facsimile and Electronic Signatures.  This Agreement may be executed in multiple counterparts, each of which shall be deemed to be an original and all of which together shall constitute one document.  Facsimile and electronic signatures on this Agreement and any document contemplated hereby shall be deemed to be original signatures.  The persons signing this Agreement on behalf of Company and Consultant represent that they have the authority to enter into this Agreement and can bind Company and Consultant.

23.   Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

[Signature page follows.]

# AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of the Effective Date.

COMPANY:  FRESH & EASY NEIGHBORHOOD MARKET INC.

By: _____
Name: _Mary M. Kasper_
Title: _Vice President, General Counsel_
        _& Secretary_

CONSULTANT:  GORDON BROTHERS GROUP, LLC

By: _____
Name: _____
Title: _____

TIGER CAPITAL

By: _____
Name: _____
Title: _____

**Schedules**

Schedule A      Properties
Schedule A-1  Leased Properties
Schedule A-2  Claim Reduction Properties
Schedule A-3 Owned Properties

Schedule B      Real Estate Compensation
Schedule B-1  Original Prospects

## AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their respective duly authorized representatives effective as of the Effective Date.

COMPANY:                    FRESH & EASY NEIGHBORHOOD MARKET INC.

By: _____
Name: _____
Title: _____

CONSULTANT:                GORDON BROTHERS GROUP, LLC

By: _Mark T Dufton_____
Name: _Mark T Dufton_____
Title: _Chief Executive Officer_____
_DJ M Real Estate, A Gordon Brothers Group Co._

TIGER CAPITAL GROUP, LLC

By: _Daniel McCaul_____
Name: _Daniel M. Kane_____
Title: _Managing Member_____

## Schedules

Schedule A      Properties
Schedule A-1  Leased Properties
Schedule A-2  Claim Reduction Properties
Schedule A-3  Owned Properties

Schedule B      Real Estate Compensation
Schedule B-1  Original Prospects

## SCHEDULE A

## PROPERTIES

The Properties consist of:

(a) 146 store locations, which are comprised of:

   (i)  93 leased Properties (see Schedule A-1) (of which 45 have been identified as the initial
        Properties for which the Consultant is to seek to negotiate reductions in claims and are
        listed for ease of reference on Schedule A-2); and

   (ii)  53 owned Properties (see Schedule A-3);

(b) the distribution center located in Stockton, California; and

(c) the kitchen facility located in Stockton, California.

## SCHEDULE A-1

## LEASED PROPERTIES

|  | Name | City | Region |
|---|---|---|---|
| 1. | Brown Rd & Recker Rd | Mesa | Phoenix |
| 2. | 42nd & Jackson | Indio | Riverside |
| 3. | Valley & Ash | Escondido | San Diego |
| 4. | Greenfield & Warner | Gilbert | Phoenix |
| 5. | Avondale Blvd. & Van Buren St. | Avondale | Phoenix |
| 6. | Arizona & Chandler Hts | Chandler | Phoenix |
| 7. | 7th Street & Thunderbird Rd | Phoenix | Phoenix |
| 8. | Gantzel & Ocotillo | Queen Creek | Phoenix |
| 9. | Tulare St & R St | Fresno | Central Valley |
| 10. | Mack & Franklin | Sacramento | Sacramento |
| 11. | 210 Fwy & Riverside | Rialto | San Bernardino |
| 12. | Buena Vista Rd & White Ln | Bakersfield | Central Valley |
| 13. | Buffalo Drive & Sahara Ave | Las Vegas | Las Vegas |
| 14. | Highway 46 & Griffith Ave | Wasco | Central Valley |
| 15. | Stanford Ranch & Sunset | Rocklin | Sacramento |
| 16. | Coffee Rd & Hageman Rd | Bakersfield | Central Valley |
| 17. | Fred Waring Dr & Jefferson St | La Quinta | Riverside |
| 18. | Haven Ave & Town Center Dr | Rancho Cucamonga | San Bernardino |
| 19. | Boulder Hwy & Russell Rd | Las Vegas | Las Vegas |
| 20. | Herndon Ave & Milburn Ave | Fresno | Central Valley |
| 21. | J St & Cross Ave | Tulare | Central Valley |
| 22. | Harding Way & Grant St | Stockton | Central Valley |
| 23. | Sunrise & Coloma | Rancho Cordova | Sacramento |

| | Name | City | Region |
|---|---|---|---|
| 24. | Watt Ave & El Camino Ave | Sacramento | Sacramento |
| 25. | Tulare Ave & Laspina St | Tulare | Central Valley |
| 26. | Whitmore Ave & Crows Landing Rd | Modesto | Central Valley |
| 27. | Academy Ave & 7th St | Sanger | Central Valley |
| 28. | Hacienda Ave & Palm Dr | Desert Hot Springs | Riverside |
| 29. | Rittenhouse Rd & Ocotillo Rd | Queen Creek | Phoenix |
| 30. | Cleveland Ave & Schnoor Ave | Madera | Central Valley |
| 31. | Florida Avenue & Lyon Avenue | Hemet | Riverside |
| 32. | Lincoln & Western | Anaheim | Orange County |
| 33. | Warm Springs & Eastern | Las Vegas | Las Vegas |
| 34. | Main St & Ellsworth | Mesa | Phoenix |
| 35. | Beach Bvd & Terry Dr | Huntington Beach | Orange County |
| 36. | Ann & Decatur | Las Vegas | Las Vegas |
| 37. | Dysart Rd & Thomas Rd | Avondale | Phoenix |
| 38. | Perris & Alessandro | Moreno Valley | Riverside |
| 39. | 35th Ave & Greenway Rd | Phoenix | Phoenix |
| 40. | Foothill & San Antonio | Upland | San Bernardino |
| 41. | Monterey Ave & Highway 111 | Palm Desert | Riverside |
| 42. | 59th Ave & Olive Ave | Glendale | Phoenix |
| 43. | Gilbert Rd & Southern Ave | Mesa | Phoenix |
| 44. | Main & Topaz | Hesperia | San Bernardino |
| 45. | Cecil Ave & High St | Delano | Central Valley |
| 46. | Horizon Ridge & Stephanie | Henderson | Las Vegas |
| 47. | Shaw Ave & Willow Ave | Clovis | Central Valley |
| 48. | 19th Avenue & Greenway Rd | Phoenix | Phoenix |
| 49. | Northgate & San Juan Ave | Sacramento | Sacramento |

| | Name | City | Region |
|---|---|---|---|
| 50. | Tropicana Ave & Eastern Ave | Las Vegas | Las Vegas |
| 51. | Harbor Blvd & Edinger Ave | Fountain Valley | Orange County |
| 52. | 43rd Ave. & Bell Rd. | Glendale | Phoenix |
| 53. | Gilbert Rd. & Guadalupe Rd. | Gilbert | Phoenix |
| 54. | Sahara Ave & Decatur Blvd | Las Vegas | Las Vegas |
| 55. | Natoma St & Blue Ravine | Folsom | Sacramento |
| 56. | Greenback & Madison | Folsom | Sacramento |
| 57. | Stewart & Nellis | Las Vegas | Las Vegas |
| 58. | 1st St & Bullard Ave | Fresno | Central Valley |
| 59. | Highland & Del Rosa | San Bernadino City | San Bernardino |
| 60. | Alondra Ave & Downey Ave | Paramount | Los Angeles |
| 61. | Saratoga Ave & Payne Ave | San Jose | San Francisco |
| 62. | Almaden & Curtner | San Jose | San Francisco |
| 63. | Lincoln & Sterling | Lincoln | Sacramento |
| 64. | Calle Tampico & Desert Club Dr | La Quinta | Riverside |
| 65. | Vegas Dr & Jones Blvd | Las Vegas | Las Vegas |
| 66. | Lake Mead Blvd & Hollywood Blvd | Las Vegas | Las Vegas |
| 67. | Desert Inn Rd & Pecos McLeod Dr | Las Vegas | Las Vegas |
| 68. | Eastern Ave & Fremont St | Las Vegas | Las Vegas |
| 69. | Del Paso Rd & Commerce Way | Sacramento | Sacramento |
| 70. | Francisquito & Puente | Baldwin Park | Los Angeles |
| 71. | 35th Ave & Camelback Rd | Phoenix | Phoenix |
| 72. | McCarran Blvd & Prater Way | Sparks | Reno |
| 73. | Oakdale Rd & Lancey Dr | Modesto | Central Valley |
| 74. | Mowry & Blacow | Fremont | San Francisco |
| 75. | Artesia Blvd & Carmenita Rd | Cerritos | Los Angeles |

| | Name | City | Region |
|---|---|---|---|
| 76. | Cooper Rd. & Warner Rd. | Gilbert | Phoenix |
| 77. | 51st Ave. & Glendale Ave. | Glendale | Phoenix |
| 78. | Ball Road & Walker Street | Cypress | Orange County |
| 79. | Riverside Dr & Archibald Ave | Ontario | San Bernardino |
| 80. | Coffee Rd & Sylvan Ave | Modesto | Central Valley |
| 81. | Hatch Rd & Herndon Ave | Ceres | Central Valley |
| 82. | Heacock St & Ironwood Ave | Moreno Valley | Riverside |
| 83. | Douglas Blvd & Auburn-Folsom Blvd | Granite Bay | Sacramento |
| 84. | Fremont Ave & Mary Ave | Sunnyvale | San Francisco |
| 85. | Euclid St & Broadway | Anaheim | Orange County |
| 86. | Marconi Ave & Walnut Ave | Sacramento | Sacramento |
| 87. | 2nd St & Madison Ave | El Cajon | San Diego |
| 88. | Mission Gorge & Cuyamaca | Santee | San Diego |
| 89. | Tavern Rd & Alpine Blvd | Alpine | San Diego |
| 90. | Camino de la Reina & Camino del Este | San Diego | San Diego |
| 91. | Wood Ranch Pky & Country Club Dr | Simi Valley | Ventura County |
| 92. | Olivera Rd & Port Chicago Hwy | Concord | San Francisco |
| 93. | Crenshaw Blvd & Jefferson Blvd | Los Angeles | Los Angeles |

## SCHEDULE A-2

### CLAIM REDUCTION PROPERTIES

|  | Name | City | Region |
|---|---|---|---|
| 1. | Brown Rd & Recker Rd | Mesa | Phoenix |
| 2. | 42nd & Jackson | Indio | Riverside |
| 3. | Ann & Decatur | Las Vegas | Las Vegas |
| 4. | Dysart Rd & Thomas Rd | Avondale | Phoenix |
| 5. | Valley & Ash | Escondido | San Diego |
| 6. | 35th Ave & Greenway Rd | Phoenix | Phoenix |
| 7. | Monterey Ave & Highway 111 | Palm Desert | Riverside |
| 8. | Greenfield & Warner | Gilbert | Phoenix |
| 9. | Avondale Blvd. & Van Buren St. | Avondale | Phoenix |
| 10. | Arizona & Chandler Hts | Chandler | Phoenix |
| 11. | 7th Street & Thunderbird Rd | Phoenix | Phoenix |
| 12. | Gantzel & Ocotillo | Queen Creek | Phoenix |
| 13. | Stanford Ranch & Sunset | Rocklin | Sacramento |
| 14. | Saratoga Ave & Payne Ave | San Jose | San Francisco |
| 15. | Fred Waring Dr & Jefferson St | La Quinta | Riverside |
| 16. | Lincoln & Sterling | Lincoln | Sacramento |
| 17. | Calle Tampico & Desert Club Dr | La Quinta | Riverside |
| 18. | Sunrise & Coloma | Rancho Cordova | Sacramento |
| 19. | Watt Ave & El Camino Ave | Sacramento | Sacramento |
| 20. | Hacienda Ave & Palm Dr | Desert Hot Springs | Riverside |
| 21. | Rittenhouse Rd & Ocotillo Rd | Queen Creek | Phoenix |
| 22. | Mission Gorge & Cuyamaca | Santee | San Diego |
| 23. | Beach Bvd & Terry Dr | Huntington Beach | Orange County |

|      | Name | City | Region |
|------|------|------|--------|
| 24.  | Main & Topaz | Hesperia | San Bernardino |
| 25.  | Cecil Ave & High St | Delano | Central Valley |
| 26.  | Horizon Ridge & Stephanie | Henderson | Las Vegas |
| 27.  | Shaw Ave & Willow Ave | Clovis | Central Valley |
| 28.  | Tulare St & R St | Fresno | Central Valley |
| 29.  | Highland & Del Rosa | San Bernadino City | San Bernardino |
| 30.  | 210 Fwy & Riverside | Rialto | San Bernardino |
| 31.  | Alondra Ave & Downey Ave | Paramount | Los Angeles |
| 32.  | Buena Vista Rd & White Ln | Bakersfield | Central Valley |
| 33.  | Buffalo Drive & Sahara Ave | Las Vegas | Las Vegas |
| 34.  | Highway 46 & Griffith Ave | Wasco | Central Valley |
| 35.  | Coffee Rd & Hageman Rd | Bakersfield | Central Valley |
| 36.  | Haven Ave & Town Center Dr | Rancho Cucamonga | San Bernardino |
| 37.  | Boulder Hwy & Russell Rd | Las Vegas | Las Vegas |
| 38.  | Herndon Ave & Milburn Ave | Fresno | Central Valley |
| 39.  | J St & Cross Ave | Tulare | Central Valley |
| 40.  | Oakdale Rd & Lancey Dr | Modesto | Central Valley |
| 41.  | Harding Way & Grant St | Stockton | Central Valley |
| 42.  | Tulare Ave & Laspina St | Tulare | Central Valley |
| 43.  | Whitmore Ave & Crows Landing Rd | Modesto | Central Valley |
| 44.  | Academy Ave & 7th St | Sanger | Central Valley |
| 45.  | Cleveland Ave & Schnoor Ave | Madera | Central Valley |

### SCHEDULE A-3

### OWNED PROPERTIES

|     | Name | City | Region |
| --- | --- | --- | --- |
| 1. | Alma School Road & University Drive | Mesa | Phoenix |
| 2. | 32nd St. & Greenway Rd | Phoenix | Phoenix |
| 3. | Sossaman Rd. & Southern Ave | Mesa | Phoenix |
| 4. | Stapley & McKellips | Mesa | Phoenix |
| 5. | Dysart Rd. & Greenway Rd | El Mirage | Phoenix |
| 6. | Frederick & Cottonwood | Moreno Valley | Riverside |
| 7. | 50th & Van Buren | Coachella | Riverside |
| 8. | Lake Pleasant Pkwy & Jomax Rd | Peoria | Phoenix |
| 9. | Bradshaw Rd & Old Placerville Rd | Sacramento | Sacramento |
| 10. | Washington St & Wildcat Dr | Palm Desert | Riverside |
| 11. | Mountain View & Redlands | Loma Linda | San Bernardino |
| 12. | 91st Ave & Northern Ave | Peoria | Phoenix |
| 13. | Pecos Ridge Pkwy & Eastern Ave | Henderson | Las Vegas |
| 14. | H St & Planz Rd | Bakersfield | Central Valley |
| 15. | Van Buren Blvd & Colorado Ave | Riverside | Riverside |
| 16. | Las Vegas Blvd & Lake Mead Blvd | North Las Vegas | Las Vegas |
| 17. | Las Vegas Blvd & Pecos Rd | Las Vegas | Las Vegas |
| 18. | Cotton Ln. & Greenway Rd | Surprise | Phoenix |
| 19. | 10th Ave & Fargo Ave | Hanford | Central Valley |
| 20. | Ashlan Ave & Cornelia Ave | Fresno | Central Valley |
| 21. | Shaw Ave & Fowler Ave | Clovis | Central Valley |
| 22. | Oakwood & Springs | Vallejo | San Francisco |
| 23. | Laurel Rd & O'Hara Ave | Oakley | San Francisco |

| | Name | City | Region |
|---|---|---|---|
| 24. | Cedar Ave & Shields Ave | Fresno | Central Valley |
| 25. | Pyramid Way & Eagle Canyon Dr | Reno | Reno |
| 26. | 34th St & Broadway | Sacramento | Sacramento |
| 27. | McCarran Blvd & Northtown Lane | Reno | Reno |
| 28. | Elk Grove Florin & Calvine | Elk Grove | Sacramento |
| 29. | Twin Cities Rd & Carillon Rd | Galt | Sacramento |
| 30. | Meadowview Rd & Freeport Blvd | Sacramento | Sacramento |
| 31. | Los Altos Pkwy & Sparks Blvd | Sparks | Reno |
| 32. | 48th St & Carefree Hwy | Cave Creek | Phoenix |
| 33. | 99th Ave & Lower Buckeye Rd | Phoenix | Phoenix |
| 34. | Greenway Rd & Tatum Blvd | Phoenix | Phoenix |
| 35. | Camelback Rd & 83rd Ave | Phoenix | Phoenix |
| 36. | Pinal & McCartney | Casa Grande | Phoenix |
| 37. | Craig Rd & Allen Ln | North Las Vegas | Las Vegas |
| 38. | Evergreen St & El Camino Ave | Sacramento | Sacramento |
| 39. | H De La Rosa Sr St & Nestles Rd | Soledad | San Francisco |
| 40. | Hwy 53 & Dam Rd | Clearlake | San Francisco |
| 41. | 35th Ave & Deer Valley Rd | Phoenix | Phoenix |
| 42. | Miller Rd & Southern Ave | Buckeye | Phoenix |
| 43. | Ventura & Gonzales | Oxnard | Ventura County |
| 44. | Pacific Ave & Benjamin Holt Dr | Stockton | Central Valley |
| 45. | CA-165 & CA-152 | Los Banos | Central Valley |
| 46. | 3rd St & Carroll Ave | San Francisco | San Francisco |
| 47. | Blue Diamond & Durango | Clark County | Las Vegas |
| 48. | Missouri Flat Rd & Forni Rd | Placerville | Sacramento |
| 49. | Long Beach Blvd & Pluma Street | Lynwood | Los Angeles |

|  | Name | City | Region |
|---|---|---|---|
| 50. | Del Monte Ave & Palo Verde Ave | Monterey | San Francisco |
| 51. | Cotton Ln & Yuma Rd | Goodyear | Phoenix |
| 52. | Copper Ave & Maple Ave | Fresno | Central Valley |
| 53. | Hwy 49 & Hwy 104 | Sutter Creek | Sacramento |

### SCHEDULE B
### REAL ESTATE COMPENSATION

**Lease Terminations, Assignments and Subleases.**

(i) In connection with the lease of (i) any Property listed on Schedule A-2 and (ii) any other Property as to which Company has directed Consultant to conduct claim reduction negotiations, for each such lease which is terminated, Consultant shall earn and be paid a fee ("**Claim Reduction Fee**") in the dollar amount equal to 2.0% of the amount by which the Termination Cost, as defined below, for the applicable lease, is less than the Threshold Amount, as defined below, for that lease. "**Termination Cost**" for a lease termination, assignment or sublease means the amount of consideration paid to a landlord to effect a lease termination; assignment or sublease. "**Threshold Amount**" means the full amount of a claim calculated, as of the effective date of the lease termination, pursuant to Section 502(b)(6) of the United States Bankruptcy Code, that the landlord would have had with regard to the lease if the lease had been rejected as of the lease termination date in a case under the Bankruptcy Code, whether or not the Company is in fact a debtor in a case under the Bankruptcy Code at that time.

(ii) For each lease of a Property that is listed on Schedule A-1 that is assigned or subleased, Consultant shall earn and be paid a fee in the dollar amount equal to the sum of (x) 2.0% of the Gross Proceeds, as defined below, paid to Company to effect the assignment or sublease, plus (y) a Claim Reduction Fee, as defined above. "**Gross Proceeds**" means the amount of all consideration paid to or on behalf of the Company to effect the assignment or sublease. For assignments and sublease transactions, Termination Cost, if any, will be reduced by the amount of rent or other lease charges scheduled to be paid by the assignee or subtenant.

(iii) For each closed sale of an owned Property, except the Stockton, CA distribution center ("**Stockton DC**") and the Stockton, CA kitchen facility ("**Stockton Kitchen**"), Consultant shall earn and be paid a fee in the dollar amount equal to 3.0% of the gross purchase price. As to the Stockton DC and the Stockton Kitchen, Company has advised Consultant that Company intends to enter into a "stalking horse" agreement with one of the parties listed on Schedule B-1 or any of its affiliates (the "Original Prospects"). Consultant shall prepare and implement a marketing program to obtain the highest and best bid against the stalking horse bidder, subject, if applicable, to Court-approved procedures in the Bankruptcy Case. If the Stockton DC sale closes, then Consultant shall earn and be paid a fee in the dollar amount equal to either (i) if one of the Original Prospects is the winning bidder, 0.75% of the gross purchase price; or (ii) if the winning bidder is not one of the Original Prospects, 0.75% of the gross purchase price for the first $50.0 million of gross purchase price plus 2.0% of any additional gross purchase price. If the Stockton Kitchen sale closes, then Consultant shall earn and be paid a fee in the dollar amount equal to either (i) if one of the Original Prospects is the winning bidder, 0.75% of the gross purchase price; or (ii) if the winning bidder is not one of the Original Prospects, 0.75% of the gross purchase price for the first $7.0 million of gross purchase price plus 2.0% of any additional gross purchase price.

**Payment of Fees.** Fees shall be earned as set forth above. Fees for owned Property transactions shall be payable at closing and for leased Property transactions shall be payable within ten business days after receipt         of         an         invoice         from         Consultant         therefore.

**SCHEDULE B-1**
**ORIGINAL PROSPECTS**

1.    KTR Partners

2.    Panattoni Development

3.    Hillwood Enterprises

4.    Pitco Foods

5.    Ares Management

6.    Medline Industries, Inc.

7.    Fortress Investment Group

8.    TPG Capital