## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-12569 (KJC) |
| MARKET INC., *et al.*,[1] | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

### DEBTORS' APPLICATION FOR AN ORDER (I) AUTHORIZING THEM TO RETAIN (A) ALVAREZ & MARSAL NORTH AMERICA, LLC AS FINANCIAL ADVISORS AND (B) ALVAREZ & MARSAL SECURITIES, LLC AS INVESTMENT BANKERS *NUNC PRO TUNC* TO THE PETITION DATE AND (II) WAIVING CERTAIN REPORTING REQUIREMENTS PURSUANT TO LOCAL RULE 2016-2(d)

The above-captioned debtors (collectively, the "Debtors") hereby file this

application (the "Application") for an order pursuant to sections 327(a) and 328(a) of title 11 of

the United States Code (the "Bankruptcy Code"), Rules 2014(a) and 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2014-1 and 2016-2 of the Local

Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"):  (i) authorizing the employment and retention of

(a) Alvarez & Marsal North America, LLC ("A&M-NA") to serve as financial advisors and

(b) Alvarez & Marsal Securities, LLC ("A&M-S" together with A&M-NA and employees of

A&M-NA's professional service provider affiliates, all of which are wholly-owned by A&M-

NA's parent company and employees, "A&M") to serve as investment banker to the Debtors

nunc pro tunc to September 30, 2013 (the "Petition Date") and in accordance with the terms and

conditions set forth in that certain engagement letter dated as of September 16, 2013 (the

---

[1] The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

"Engagement Letter"),[2] a copy of which is attached hereto as Exhibit A; (ii) approving the terms of A&M's employment and retention, including the fee and expense structure and the indemnification, contribution, reimbursement and related provisions set forth in the Engagement Letter; (iii) waiving certain informational requirements of Local Rule 2016-2(d) and (iv) granting such other and further relief as is just and proper.  In support of this Application, the Debtors submit the Declaration of Dennis Stogsdill, Managing Director of A&M-NA (the "Stogsdill Declaration"), which is attached hereto as Exhibit B and incorporated herein and the Declaration of Marc Liebman, Managing Director of A&M-S (the "Liebman Declaration"), which is attached hereto as Exhibit C and incorporated herein; and further respectfully state as follows:

## Background

1.      On the Petition Date, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code.[3]  The Debtors chapter 11 cases are consolidated for procedural purposes only and administered jointly.

2.      Founded in 2006 as wholly-owned subsidiaries of Tesco PLC ("Tesco"), the Debtors operate a chain of Fresh & Easy grocery stores offering high-quality, wholesome, fresh prepared and ready-to-eat products at affordable prices.  The Debtors currently operate 167 stores located in California, Arizona and Nevada.  In addition to their stores portfolio, the Debtors operate a state of the art production facility in Riverside, California (the "Campus") including meat and produce facilities and a kitchen, each housed in its own building, providing Fresh & Easy-branded fresh food products.  In close proximity to the Campus is one of the

---

[2]      Any references to, or summaries of, the Engagement Letter in this Application are qualified by the express terms of the Engagement Letter, which shall govern if there is any conflict between the Engagement Letter and such summaries or references herein.  Additionally, any initially capitalized terms used in this Application and not otherwise defined herein have the meanings ascribed to them in the Engagement Letter.

[3]      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

NYI-4541225v8
RLF1 9443522v.1

Debtors' two distribution centers, with the other inactive distribution center located in Stockton, California.  For the twelve months ending February 24, 2013, the Debtors generated approximately $1.1 billion in revenue.

3.    The Debtors have commenced these chapter 11 cases to effectuate a sale of a substantial portion of their assets on a going concern basis to a stalking horse bidder, YFE Holdings, Inc. (the "Proposed Buyer"), a company affiliated with The Yucaipa Companies, LLC, subject to any higher and better offers received in connection with a proposed sale process.  The Debtors intend to liquidate all other assets not included in the proposed sale.  The Debtors believe the proposed sale and the liquidation of the remaining portion of the Debtors' assets represents the best strategy to maximize value for the Debtors' various stakeholders.

### Retention of A&M

4.    In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced financial advisors and investment bankers will substantially enhance their attempts to maximize the value of their estates.  A&M is well qualified to provide these services in light of its extensive knowledge and expertise with respect to chapter 11 proceedings and unique knowledge of assisting the Debtors in preparing for the commencement of these bankruptcy cases.

5.    A&M specializes in interim management, crisis management, turnaround consulting, operational due diligence, creditor advisory services, distressed investment banking and financial and operational restructuring.  A&M's debtor advisory services have included a wide range of activities targeted at stabilizing and improving a company's financial position, including developing or validating forecasts, business plans and related assessments of a business's strategic position; monitoring and managing cash, cash flow and supplier relationships;

-3-

assessing and recommending cost reduction strategies; designing and negotiating financial restructuring packages; and preparing and marketing companies and their assets.

6.      In addition, A&M is familiar with the Debtors' businesses, financial affairs, and capital structure.  Since the firm's initial engagement on July, 24, 2013, A&M personnel providing services to the Debtors (the "A&M Professionals") have worked closely with the Debtors' management and other professionals in assisting with the myriad requirements of these chapter 11 cases.  Consequently, the Debtors believe that A&M has developed significant relevant experience and expertise regarding the Debtors and the unique circumstances of these cases.  A&M has been involved in the negotiation of the asset purchase agreement (the "Stalking Horse APA") to sell a substantial portion of the Debtors' assets, which provides a path for the Debtors to execute an orderly sale process pursuant to section 363 of the Bankruptcy Code. Additionally, A&M has assisted with the overall preparation of the filing materials in these chapter 11 cases.  For these reasons, A&M is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of these cases.  Accordingly, the Debtors submit that the retention of A&M on the terms and conditions set forth herein is necessary and appropriate, is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

7.      A&M has served as financial advisors and / or investment bankers in numerous other cases, including: In re Conexant Sys., Inc., No. 13-10367 (MFW) (Bankr. D. Del. Apr. 19, 2013); In re A123 Sys., Inc., No. 12-12859 (KJC) (Bankr. D. Del. Nov. 8, 2012); In re Grubb & Ellis Company, No. 12-10685 (MG) (Bankr. S.D.N.Y. Mar. 16, 2012); In re William Lyon Homes, No. 11-14019 (CSS) (Bankr. D. Del. Feb. 3, 2012); In re Citadel Broadcasting Corp., No 09-17442 (BRL) (Bankr. S.D.N.Y. Feb. 3, 2010); In re Lear Corporation,

NYI-4541225v8
RLF1 9443522v.1

No. 09-14326 (ALG) (Bankr. S.D.N.Y. July 31, 2009); In re Arclin U.S. Holdings, Inc., No. 09-

12628 (KJC) (Bankr. D. Del. Sept. 8, 2009); In re Eurofresh, Inc., No. 09-07970 (CGC) (Bankr.

D. Ariz. June 8, 2009); In re Leiner Health Products, Inc., No. 08-10446 (KJC) (Bankr. D. Del.

Apr. 8, 2008); In re Nellson Nutraceutical, Inc., No. 06-10072 (CSS) (Bankr. D. Del. May 23,

3007); and In re Amerco, a Nevada Corporation., No. 03-52103 (GWZ) (Bankr. D. Nevada July

16, 2003).

8.     Denial of the relief requested herein will deprive the Debtors of the

assistance of A&M's uniquely qualified financial and investment banking advisors.  Given the

extensive prepetition services provided by A&M to the Debtors, a denial of A&M's employment

would unjustly disadvantage the Debtors and all parties in interest, as the Debtors would not be

able to utilize A&M's extensive understanding of the Debtors' operations.  If the Debtors were

forced to engage new financial and investment banking advisors, such change would result in

significant and costly burdens to the Debtors' estates which would further devalue the Debtors'

assets.

***Services To Be Performed by A&M***

9.     The parties have entered into the Engagement Letter, the terms of which

shall govern the Debtors' retention of A&M except as explicitly set forth herein or in any order

granting this Application.

10.     A&M-NA and A&M-S will work closely with each other to prevent any

duplication of efforts in the course of advising the Debtors.

11.     Among other things, A&M will provide assistance to the Debtors to:

(i) manage the overall restructuring process; (ii) develop the ongoing business and financial plan;

(iii) manage the sale process pursuant to section 363 of the Bankruptcy Code; and (iv) support

NYI-4541225v8
RLF1 9443522v.1

the restructuring negotiations among the Debtors and their creditors with respect to an overall exit strategy for these chapter 11 cases.

12.    A&M-NA will provide such restructuring support services as A&M and the Debtors shall deem appropriate and feasible in order to manage and advise the Debtors in the course of these chapter 11 cases, including, but not limited to (the "<u>Financial Advisory Services</u>"):

    a.    performing a financial review of the Debtors at the direction of the Chief Executive Officer ("<u>CEO</u>"), Chief Financial Officer ("<u>CFO</u>") or other officers of the Debtors, as directed by the CEO or CFO;

    b.    assisting in the development and implementation of asset liquidation;

    c.    assisting the CEO and other of the Debtors' engaged professionals in developing possible restructuring plans or strategic alternatives for maximizing the Debtors' enterprise value, which will be reviewed by Debtors' board of directors (the "<u>Board</u>");

    d.    assisting in the development and management of a cash flow forecast;

    e.    assisting with various activities throughout the chapter 11 cases, including but not limited to:  (i) identification of executory contracts and leases; (ii) analysis of creditor type, entity and individual claim, including assistance with development of databases, as necessary, to track such claims; and (iii) preparation of information and analysis necessary for the confirmation of a plan of reorganization, including information contained in the disclosure statement;

    f.    assisting with the management of disposition of real estate assets, including, liaising with 3rd-party service providers for the disposition of real estate assets;

    g.    advising in connection with the development and implementation of key employee compensation and other critical employee benefit programs; and

    h.    assisting the Debtors' management team and counsel with the coordination of resources related to the Debtors' ongoing reorganization effort;

    i.    performing such other services requested by the Board, or in cooperation with other of the Debtors' personnel as authorized by the Board, CEO or CFO and agreed to by A&M, that are not duplicative of services provided by other professionals in this proceeding.

13.     A&M-S will provide such investment banking services as A&M-S and the Debtors deem appropriate and feasible in order to assist the Debtors in the course of these chapter 11 cases, including, but not limited to (the "Investment Banking Services"):

     a.    assisting the Debtors' in the management and execution of a Sale Transaction,[4] including preparing informational materials for distribution to potential purchasers, identifying and soliciting interest among prospective purchasers, evaluating proposals received for prospective purchasers, managing the Sale Transaction process and assisting in negotiating the financial terms and structure of any Sale Transaction;

     b.    participating in hearings before the Court with respect to matters upon which A&M-S has provided advice, including coordinating with the Debtors' counsel with respect to testimony in connection therewith, as necessary or advisable; and

     c.    performing other activities as approved by the Debtors, the Board, CEO or CFO and agreed to by A&M-S relating to the Investment Banking Services.

### A&M's Disinterestedness

14.     To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Stogsdill Declaration and the Liebman Declaration (collectively, the "A&M Declarations"), annexed hereto as Exhibit B and Exhibit C, respectively, A&M:  (i) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; (ii) does not hold any interest adverse to the Debtors' estates; and (iii) believes it is a "disinterested person" as defined by section 101(14) of the Bankruptcy Code.

---

[4]     For purposes of the Investment Banking Services, the term "Sale Transaction" is defined to include (whether in one or a series of transactions) any merger, sale or other transfer, directly or indirectly and whether in one or a series of transactions, of all or a significant portion of the assets or securities of the Debtors or any extraordinary corporate transaction involving a change in control of the Debtors, regardless of the form or structure of such transaction, or any other form of disposition which results in the effective disposition of all or a substantial amount of business, operations or assets of the Debtors or any of its businesses, subsidiaries or affiliates.  For the avoidance of doubt, a Sale Transaction will include a sale under section 363 of the Bankruptcy Code or a plan of reorganization or similar transaction.

NYI-4541225v8
RLF1 9443522v.1

15.     Accordingly, the Debtors believe that A&M is "disinterested" as such term is defined in section 101(14) of the Bankruptcy Code.

16.     In addition, as set forth in the A&M Declarations, if any new material facts or relationships are discovered or arise, A&M will provide the Court with a supplemental declaration.

## Terms of Retention

17.     Subject to approval by the Court, the Debtors propose to employ and retain A&M to serve as the Debtors' financial advisor and investment banker on the terms and conditions set forth in the Engagement Letter.

### *Compensation and Expenses*

18.     In accordance with the terms of the Engagement Letter, A&M will be paid as follows (the "Fee Structure"):

    a.    Financial Advisory Services:

        i.    Monthly Fee:  A&M-NA will be paid based on certain related A&M Professionals' customary hourly billing rates which shall be subject to the following ranges:

| | |
|---|---|
| Managing Directors | $675-875 |
| Directors | $475-675 |
| Analyst/Associates | $275-475 |

In addition, Dennis Stogsdill will serve as overall engagement leader of the Financial Advisory Services and for his services A&M-NA will be paid at a fixed rate of $75,000 per month.

        ii.    Such rates and ranges shall be subject to adjustment annually at such time as A&M adjusts its rates generally.

        iii.    Completion Fee:  In addition, A&M-NA will be entitled to incentive compensation in the amount of $1,500,000 (the "Completion Fee") payable upon the consummation of a chapter 11 plan of reorganization.

b.    <u>Investment Banking Services</u>:

    i.    <u>Monthly Fee</u>:  A&M-S will be paid a monthly fee at the rate of $150,000 per month (the "<u>Monthly Fee</u>").  A&M-S agrees to credit its Monthly Fees paid against any Sale Transaction Fee (as described in subpart (ii) below) based on the following parameters:[5]

        1.    No Potential Bidder(s) and no Qualified Bid(s):  100% of all Monthly Fees will be credited;

        2.    At least one Potential Bidder and no Qualified Bid(s):  50% of all Monthly Fees will be credited; and

        3.    At least one Potential Bidder and at least one Qualified Bid: 0% of all Monthly Fees will be credited.

    ii.    <u>Sale Transaction Fee</u>:  In addition, A&M-S will receive a transaction fee in the amount of $1,250,000; plus 5% of any Aggregate Consideration (as defined in the Engagement Letter) above the initial bid under the Stalking Horse APA (the "<u>Sale Transaction Fee</u>") upon the consummation of a Sale Transaction and subject to the crediting mechanism described above in subpart (b)(i).

    iii.    <u>Termination Fee</u>:  In the event that the Debtors elects not to go forward with the Sale Transaction or the Debtors (or their creditors) elect to pursue a plan of reorganization or similar transaction (that is not a Sale Transaction), A&M-S will receive a termination fee of $500,000 plus all Monthly Fees earned as of the date A&M-S is notified in writing of the Debtors' decision (the "<u>Termination Fee</u>").

c.    <u>Expenses</u>:  In addition, A&M will be reimbursed for the reasonable out-of-pocket expenses of the A&M Professionals incurred in connection with this assignment, such as travel, lodging, third party duplications, messenger and telephone charges.  All fees and expenses due to A&M will be billed in accordance with any interim compensation orders entered by this Court, and the relevant sections of the Bankruptcy Code, Bankruptcy Rules and local rules of this Court.

---

[5]    The term Potential Bidder and Qualified Bid have the meaning ascribed to them in the Debtors' Motion for (I) an Order (A) Establishing Bid Procedures for the Sale of a Substantial Portion of the Debtors Assets, (B) Approving Stalking Horse APA and Bidding Protections, and (C) Granting Certain Related Relief and (II) an Order (A) Approving the Sale of a Substantial Portion of the Debtors Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Certain Related Relief [Docket No. 34] (the "<u>Bidding Procedures Motion</u>"); for the avoidance of doubt, the non-debtor party to the Stalking Horse APA shall not be considered under these parameters as a Potential Bidder or a Qualified Bid.

NYI-4541225v8
RLF1 9443522v.1

*Indemnification Provisions*

19.     As a material part of the consideration for which the A&M Professionals have agreed to provide the services described herein, the Debtors have agreed to the indemnification provisions in paragraph 11 of the Engagement Letter and in the attached indemnification and limitation on liability agreement (the "Indemnification Provisions"). Notwithstanding the foregoing, the Debtors and A&M have agreed to modify such provisions as follows, during the pendency of these Chapter 11 cases:

     a.     A&M shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Letter for services, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court;

     b.     The Debtors shall have no obligation to indemnify A&M, or provide contribution or reimbursement to A&M, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from A&M's gross negligence, willful misconduct, breach of fiduciary duty, if any, bad faith or self-dealing; (ii) for a contractual dispute in which the Debtors allege the breach of A&M contractual obligations unless the Court determines that indemnification, contribution or reimbursement would be permissible pursuant to In re United Artists Theatre Company, et al., 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to A&M's gross negligence, willful misconduct, breach of fiduciary duty, or bad faith or self-dealing but determined by this Court, after notice and a hearing to be a claim or expense for which A&M should not receive indemnity, contribution or reimbursement under the terms of the Engagement Letter as modified by this Order; and

     c.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these chapter 11 cases (that order having become a final order no longer subject to appeal), and (ii) the entry of an order closing these chapter 11 cases, A&M believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Letter (as modified by this Application), including without limitation the advancement of defense costs, A&M must file an application therefore in this Court, and the Debtors may not pay any such amounts to A&M before the entry of an order by this Court approving the payment.  This subparagraph (c) is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and

-10-

expenses by A&M for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify A&M.  All parties in interest shall retain the right to object to any demand by A&M for indemnification, contribution or reimbursement.

20.     The Debtors and A&M believe that the indemnification provisions contained in the annex to the Engagement Letter, as modified by the Order, are customary and reasonable for financial advisory and investment banking engagements, both in and out-of-court, and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.  See, e.g., In re Blitz U.S.A., Inc., 11-13603 (PJW) (Bankr. D. Del. July 10, 2012) (authorizing indemnification of SSG Capital Advisors, LLC by debtors); In re Chef Solutions Holdings, LLC, Case No. 11-13139 (KG) (Bankr. D. Del. Oct. 26, 2011) (authorizing indemnification of Piper Jaffray & Co. by debtors); In re Magic Brands, LLC, Case No. 10-11310 (BLS) (Bankr. D. Del. June 8, 2010); (authorizing indemnification of FTI Consulting, Inc. by debtors); In re Regent Commc'ns, Inc., Case No. 10-10632 (KG) (Bankr. D. Del. Mar. 22, 2010) (authorizing indemnification of Oppenheimer & Co. Inc., by debtors); In re Tropicana Entm't, LLC, Case No. 08-10856 (KJC) (Bankr. D. Del. May 30, 2008) (authorizing indemnification of Lazard Freres & Co. by debtors).

21.     The terms and conditions of the Engagement Letter were negotiated by the Debtors and A&M at arm's-length and in good faith.  The Debtors respectfully submit that the indemnification, contribution, exculpation, reimbursement and other provisions contained in the annex to the Engagement Letter, viewed in conjunction with the other terms of A&M's proposed retention, and as modified in the proposed order attached hereto as Exhibit D, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require A&M's services to maximize the value of the Debtors' estates for all parties in interest. To deny the relief requested herein will deprive the Debtors of the assistance of uniquely

-11-

qualified financial advisors and investment bankers and would affect an unjust disadvantage to the Debtors and all parties in interest. Accordingly, as part of this Application, the Debtors respectfully request that the Court approve the Engagement Letter.

## Allowance of Fees and Expenses

22.     The Debtors understand that A&M-NA and A&M-S intend to apply to the Court for allowance of compensation and reimbursement of expenses for their financial advisory and investment banking services. A&M-NA intends to file monthly, interim and final fee applications, in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules, guidelines established by the Office of the United States Trustee for the District of Delaware and any other such procedures as may be fixed by order of this Court, while A&M-S intends to file only interim and final fee applications; provided, however, for the avoidance of doubt, except with respect to the Court and the U.S. Trustee, A&M-S's fees and expenses will not be subject to review under section 330 of the Bankruptcy Code (but rather under section 328(a) of the Bankruptcy Code).

23.     A&M-S's compensation will be calculated and paid based on the Sale Transaction Fee and Monthly Fee and is not based upon the amount of time spent providing investment banking services to the Debtors. Accordingly, the Debtors request that A&M-S not be required to file time records in accordance with time-keeping requirements of Local Rule 2016-2(d) and the guidelines of the United States Trustee for the District of Delaware (the "U.S. Trustee Guidelines"). A&M-S will maintain records, in summary format, of services rendered for the Debtors, including summary descriptions of those services, the approximate time

expended in providing those services in half hour increments[6] and the indentify of the individuals who provided those services.  A&M-S will present such records to the Court in its interim and final fee applications.  To the extent that A&M-S would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Guidelines or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive such requirements.

24.     A&M will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  A&M's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter and any procedures established by the Court, pursuant to an Interim Compensation Order or otherwise.

## Payments Prior to the Petition Date

25.     In the 90 days immediately preceding the Petition Date, A&M received retainers and fee payments totaling $2,478,786.00 and expense reimbursement payments totaling $76,617.32 in the aggregate for services performed for the Debtors.  These amounts include $3,767 on account of estimated expenses incurred prior to the Petition Date but unprocessed as of the Petition Date.  Any overage in connection with these estimated amounts will be applied against future fees and expenses approved.  The unapplied residual retainer, which is estimated to total approximately $500,000, will not be segregated by A&M in a separate account, and will be held until the end of these chapter 11 cases and apply to A&M's approved fees and the conclusion of these proceedings.  As of the Petition Date, the Debtors did not owe A&M for any fees or expenses incurred prior to the Petition Date.

---

[6]      A&M-NA will be keeping time records in accordance with time-keeping requirements of Local Rule 2016-2(d) and the guidelines of the United States Trustee for the District of Delaware and will maintain records of services rendered for the Debtors in tenth of an hour (0.10) increments.

-13-

26.     Given the numerous issues that the A&M may be required to address in the performance of their services, A&M's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for such services for engagements of this nature in an out-of-court context, as well as in a chapter 11 context, the Debtors submit that the Fee Structure set forth herein is reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

27.     The Debtors submit that the Fee Structure and the Indemnification Provisions are reasonable terms and conditions of employment and should be approved under Section 328(a) of the Bankruptcy Code.  The Fee Structure and the Indemnification Provisions are reasonable in light of, among other things, (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context and (c) A&M's substantial experience with respect to financial advisory and investment banking services.  The Fee Structure and the Indemnification Provisions appropriately reflect (i) the nature and scope of services to be performed by A&M in these chapter 11 cases and (ii) the fee structures and indemnification provisions typically utilized by A&M and other leading financial advisory and investment banking firms.  In particular, the Debtors believe that the proposed Fee Structure creates a proper balance between fixed, monthly, and contingency fees based on the successful consummation of relevant transactions.

### Legal Basis for Relief Requested

28.     Section 327(a) of the Bankruptcy Code empowers the debtor, with the Court's approval, to employ professionals "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the

trustee's duties under this title."  11 U.S.C. § 327(a).  Section 101(14) of the Bankruptcy Code

defines a "disinterested person" as a person that:

> a.      is not a creditor, an equity security holder, or an insider;
>
> b.      is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
>
> c.      does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

29.      Further, section 1107(b) of the Bankruptcy Code provides that "a person is

not disqualified for employment under section 327 of this title by a debtor in possession solely

because of such person's employment by or representation of the debtor before the

commencement of the case."  11 U.S.C. § 1107(b).  A&M's prepetition relationship with Debtors

is therefore not an impediment to A&M's retention as Debtors' postpetition financial advisor and

investment banker.

30.      Section 328(a) of the Bankruptcy Code authorizes the employment of a

professional person "on any reasonable terms and conditions of employment, including on a

retainer . . ."  11 U.S.C. § 328(a).  The Debtors submit that the terms and conditions of A&M's

retention as described herein, including the proposed compensation and indemnification terms,

are reasonable and in keeping with the terms and conditions typical for engagements of this size

and character.  Since the Debtors will require substantial assistance with the wind-down process,

it is reasonable for the Debtors to seek to employ and retain A&M-NA to serve as its financial

advisor and A&M-S to serve as its investment banker on the terms and conditions set forth

herein.

31.     The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by A&M, (ii) A&M's substantial experience with respect to financial advisory and investment banking services and (iii) the fee structures typically utilized by A&M and other leading financial advisors and investment bankers in the industry.

## Consent to Jurisdiction

32.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## Notice

33.     Notice of this Application shall be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the parties included on the Debtors' consolidated list of twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (iii) counsel to the Proposed Buyer; (iv) counsel to Tesco PLC; and (v) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  Due to the nature of the relief requested herein, the Debtors respectfully submit that no further notice of this Application is necessary.

## No Prior Request

34.     No previous request for relief sought herein has been made to this Court or any other court.

NYI-4541225v8
RLF1 9443522v.1

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit D:  (i) granting the relief sought herein; and (ii) granting to the Debtors such other and further relief as the Court may deem proper.

Dated:   October 3, 2013                    Respectfully submitted,
         Wilmington, Delaware

_____

Chief Financial Officer of the Debtors