**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| FRESH & EASY NEIGHBORHOOD | : | Case No. 13-12569 (KJC) |
| MARKET INC., *et al.,* | : | |
| | : | Jointly Administered |
| Debtors. | : | |
| | : | **Hearing Date: November 21, 2013 at 2:00 p.m. (ET)** |
| | : | **Obj. Deadline: November 11, 2013 at 4:00 p.m. (ET)** |
| | : | **Re: D.I. 34** |

**OBJECTION TO PROPOSED:  (1) TERMS OF ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASE OF REAL PROPERTY (STORE SITE 1342); (2) ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER LEASE; AND (3) ELIMINATION OF USE RESTRICTIONS FROM LEASE, IN CONNECTION WITH DEBTORS' MOTION TO APPROVE SALE OF SUBSTANTIAL PORTION OF THE DEBTORS' ASSETS**

Harbor Mesa LLC ("Harbor Mesa") through its undersigned counsel, hereby objects to the assumption and assignment of its lease with Fresh & Easy Neighborhood Market Inc. ("Debtor") on the terms proposed by the Debtor (*see* Docket Nos. 34, 186, 198, 205).  Harbor Mesa objects to assumption and assignment to the extent that the proposed Asset Purchase Agreement attempts to limit the buyer's liabilities under the lease in contravention of Bankruptcy Code section 365.  Moreover, Debtor has not provided Harbor Mesa with adequate assurance of future performance by the proposed assignee.  Finally, Harbor Mesa's lease with Debtor is a lease of real property in a shopping center and contains important use restrictions that must be preserved.

## BACKGROUND

### The Harbor Mesa Lease

1.      Harbor Mesa, as landlord, and Debtor, as tenant, are parties to that certain Ground Lease Agreement entered into on or about August 19, 2010, with respect to certain real property located at 3151 Harbor Blvd., Costa Mesa, California (the "Premises").  The Ground Lease

Agreement has been amended by that certain First Amendment to Ground Lease dated as of November 12, 2010, Second Amendment to Ground Lease dated as of December 13, 2010, Third Amendment to Ground Lease dated as of January 18, 2011, Fourth Amendment to Ground Lease dated as of March 21, 2011, and Fifth Amendment to Ground Lease dated as of April 18, 2011. The Ground Lease Agreement, together with all amendments, is referred to herein as the "Lease".

2.      The Premises are part of the so-called Harbor Mesa Shopping Center that was completed in 2012.  The Debtor is the anchor tenant for the Harbor Mesa Shopping Center, which also includes a McDonalds, ChickFil-A, El Pollo Loco, and two multi-tenant retail buildings including NuVision Federal Credit Union, National Urgent Care Center, Flame Broiler and other tenants, with shared parking areas.

3.      Section 22.1 of the Lease provides, in pertinent part:
**Assignment**.  Tenant shall have the right to assign this Lease . . . to any Person for any lawful retail purchases as set forth in Section 14.2 above, with Landlord's consent, which consent shall not be unreasonably withheld, conditioned or delay, provided that (a) any assignee shall, in writing, assume and agree to keep, observe and perform all of Tenant's agreements, conditions, covenants and terms pursuant to this Lease and shall be and become liable for the nonperformance thereof accruing from the date of such assignment . . . . "

Harbor Mesa Lease, § 22.1.  A true and correct copy of the Lease is attached hereto as Exhibit "A."

**The Debtor's Bankruptcy Proceedings**

4.      On September 30, 2013, the Debtor and its affiliated debtor (collectively, "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On that same day, Debtors jointly filed their Debtors' Motion for (I) an Order (A) Establishing Bid Procedures for the Sale of a Substantial Portion of the Debtors' Assets, (B) Approving Stalking

Horse APA and Bidding Protections, and (C) Granting Certain Related Relief; and (II) an Order (A) Approving the Sale of a Substantial Portion of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Other Interests, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases Related Thereto, and (C) Granting Certain Related Relief (Doc 34, the "Sale Motion").  Exhibit B to the Sale Motion is the proposed Asset Purchase Agreement ("APA") with YFE Holdings, Inc. (the "Stalking Horse Bidder").

5.      On October 24, 2013, this Court entered its Order (I) Approving Procedures in Connection with the Sale of a Substantial Portion of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Enter Into a Stalking Horse APA in Connection Therewith, (III) Authorizing the Payment of Stalking Horse Protections, (IV) Setting Bid Deadline, Auction and Sale Approval Hearing Dates, (V) Establishing Notice Procedures and Approving Forms of Notice, and (VI) Approving Procedures Related to Assumption and Assignment of Executory Contracts and Unexpired Leases (Doc 186, the "Procedures Order").

6.      Pursuant to the Procedures Order, on October 28, 2013, the Debtors filed their Notice of Sale and Solicitation of Bids to Purchase a Substantial Portion of the Debtors' Assets, Terms and Conditions of Bidding Procedures and Assumption and Assignment of Executory Contracts and Unexpired Leases (Doc 198, the "Procedures Notice").  The Procedures Notice attached a Contract and Cure Schedule to provide notice to non-debtor counterparties of the proposed assumption and assignment of their contracts and leases, and the Debtors' proposed cure costs ("Contract and Cure Schedule").  The Contract and Cure Schedule, however, does not appear to list any of the Debtors' unexpired leases of non-residential real property to be assumed and assigned as part of the proposed sale.  The Procedures Notice indicates that the deadline to

file any objections to the Sale Motion, including any Cure Objection, Adequate Assurance Objection or Use Restriction Objection is November 11, 2013, at 4:00 p.m.

7.    Also on October 28, 2013, the Debtors filed their Notice of Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Proposed Sale of a Substantial Portion of the Debtors' Assets (Doc 199, the "Personalized Notice").

8.    On October 29, 2013, the Debtors filed their Notice of Filing of Supplemental Contract and Cure Schedule (Doc 205, the "Supplemental Notice").  The Supplemental Notice attaches a Supplemental Contract and Cure Schedule.  The Supplemental Contract and Cure Schedule (at p. 5) lists Real Property Lease for Store Site 1342, as a lease to be assumed and assigned.  This is the Debtor's Lease with Harbor Mesa.

## ARGUMENT

### The Bankruptcy Code's Requirements for Assumption and Assignment of Leases

9.    The Bankruptcy Code allows for the assumption and assignment of unexpired leases, but provides very specific protections to the landlord whose lease is being assumed and assigned without its consent.  The protections provided are specifically designed to ensure that, while the debtor may be assuming and assigning the lease to a third party, all the obligations under the lease will be performed.  The intent of Congress to protect a landlord's rights in the assumption and assignment context is reflected throughout Bankruptcy Code section 365 as well as the relevant case law interpreting this section.  Section 365 sets forth the standards the Debtors must satisfy before the Court may approve the assumption and assignment of an unexpired lease. It is axiomatic that a lease may only be assumed *cum onere*, subject to all of its obligations.

Under Bankruptcy Code section 365(f)(2), a trustee or debtor in possession may only assign an executory contract or lease if:

(A)    the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B)    adequate assurance of future performance by the assignee of such contract or lease is provided.

11 U.S.C. § 365(f)(2).

Here, the proposed assignment fails to satisfy the requirements of section 365 for three principal reasons. First, the assumption of liabilities under the Lease by the Stalking Horse Bidder appears to be limited, rather than encompassing all unperformed Lease obligations, as required by section 365. Second, the Debtors have failed to provide any real assurance of future performance under the Lease. Third, the Debtors' proposed blanket elimination of use restrictions under the Lease violates Section 365, in particular the shopping center lease provisions.

### Harbor Mesa Is Entitled to Shopping Center Lease Protections of the Code

10.    The Lease is a lease of "real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3d Cir. 1990); In re Sun TV and Appliances, Inc., 234 B.R. 356, 360 (Bankr. D. Del. 1999). As a result, Harbor Mesa is entitled to the protections afforded shopping center landlords under Bankruptcy Code section 365(b)(3). "Shopping center landlords, even more than non-debtor parties to executory contracts and executory leases, receive 'extraordinary protection' under the Code." In re Rickel Home Centers, Inc., 209 F.3d 291, 298 (3d Cir. 2000).

**Debtors Bear the Evidentiary Burden to Show that All Requirements for Assumption and Assignment Have Been Met**

11.     The Debtors bear the burden to show that all requirements for assumption and assignment of a lease have been met. In re Rachels Industries, Inc., 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); In re Memphis-Fridays Associates, 88 B.R. 830, 840-841 (Bankr. W.D. Tenn. 1988); see also Sea Harvest Corp. v. Riviera Land Co., 868 F.2d 1077, 1079 (9th Cir. 1989); Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1309-1310 (5th Cir. 1985); In re Airlift International Inc., 761 F.2d 1503, 1508 (11th Cir. 1985).

**By Taking an Assignment of the Lease, the Stalking Horse Bidder Is Required to Perform All Obligations Thereunder**

12.     The Lease is an "Assumed Lease" under the APA. APA, § 1.01(a)(ii). The APA provides that, effective as of the Closing Date, the Stalking Horse Bidder assumes all obligations arising under Assumed Leases. APA, § 1.02(a)(ii). This provision would be consistent with applicable law. Bankruptcy Code section 365(b)(3)(C) provides that the assumption and assignment of a shopping center lease "is subject to all the provisions thereof..." The APA excludes from the Stalking Horse Bidder's assumed liabilities, however, the "non-current portion of any Indebtedness". APA, § 1.02(b)(iv). The APA defines Indebtedness as including obligations as lessee under a lease. APA, p. 83. The APA also limits the Assumed Liabilites to those "incurred since May 31, 2013". APA, § 1.02(a)(i).

13.     Thus, the APA purports to bifurcate Assumed Liabilities (including those under the Lease) as of the closing of the sale. These provision of the APA could be construed as a disavowal of the Stalking Horse Bidder's future performance of certain obligations under the Lease in direct violation of Section 365. It is critically important to Harbor Mesa and other parties in its position to be perfectly clear about the scope of the Assumed Liabilities, because

the proposed order approving the sale provides for releases of the Stalking Horse Bidder and an injunction against pursuit of any Excluded Liabilities against it.  Sale Motion, Exh. B, ¶¶ U, 23, 25, 26, 29, 40.

14.    Here, the Lease provides that the Debtor is obligated to reimburse Harbor Mesa for certain real estate taxes, insurance, and common area charges (as defined in the Lease, "Other Charges").  Lease, §§ 6-8.  Estimated Other Charges are payable in monthly installments, subject to reconciliation after the end of each calendar year, based on the actual amount of Other Charges incurred by Harbor Mesa.  Lease, § 8.  Other Charges (in particular, real estate taxes) are generally billed in arrears.  Since year-end Other Charges for 2013 generally will not be billed until 2014, there is no pending default with respect to these obligations as of the cure date or the Closing Date.

15.    The Lease also provides that the Tenant must indemnify the Landlord against certain claims arising from Tenant's operation and use of the Premises (e.g., personal injury, damage of property, environmental claims).  Lease, §§ 18, 20.1(b).  It is possible that such claims may exist now, without yet having been asserted against Harbor Mesa.

16.    Harbor Mesa cannot specifically assert a cure demand with respect to all of the Debtors' Operating Expense reimbursement and indemnification obligations under the Lease.  This inability to fix a present "cure amount" against the Debtor for these obligations is critical, because the effect of assignment of the Lease would be to relieve the Debtor's estate of all liability under the Lease pursuant to section 365(k).  In re Washington Capital Aviation & Leasing, 156 B.R. 167, 175, n. 3 (Bankr. E.D. Va. 1993).  Accordingly, the Code does not authorize the Debtors to assume and assign only certain obligations under the Lease, without others.  To the contrary, Bankruptcy Code section 365(f) requires a debtor to assume (and

assign) a contract subject to all its benefits and burdens.  See, e.g., In re Fleming Companies, Inc., 499 F.3d 300, 308 (3rd Cir. 2007).  Moreover, adequate assurance of future performance under an assigned lease includes assurance of performance of all lease terms.

17.    The Court should reject the attempt to bifurcate liabilities under the Lease and cut them off at both ends (assignor, through 365(k), and assignee by operation of the proposed Order).  Harbor Mesa could be left in the lurch for substantial unreimbursed expenses or liabilities that the Lease requires that the Tenant bear.  In order to comply with section 365(f) and provide adequate assurance of future performance of these types of carry-over obligations, then, either the Debtors must establish an adequate reserve from the sale proceeds or the Stalking Horse Bidder must assume full responsibility for such as yet unbilled obligations.  Short of that, the Stalking Horse Bidder does not meet the requirement of section 365(b)(3)(C) to assume the Lease, *cum onere*, and Harbor Mesa does not have adequate assurance of enforcement of all material terms of the Lease.  See, In re Fleming Companies, Inc., 499 F.3d 300 (3d Cir. 2007).

18.    Even to the extent that the APA's language that purportedly limits assumption of obligations and liabilities under the Lease is given any effect, bankruptcy courts recognize that the effect is limited, and impose upon assignees all obligations that exist but are not yet to be performed as of the assignment date.  See, e.g., Orix PLC Houston Venture v. Victor (In re Jillian's Entm't Holdings), 372 B.R. 342, 348-49 (Bankr. W.D. Ky. 2007); see also, American Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76 (3d Cir. 1999). Consequently, the effect of an assignment of the Lease under Bankruptcy Code section 365(f) is that the Stalking Horse Bidder will be obligated to perform all unperformed obligations under the Lease, regardless of the Closing Date assigned by the parties.

**The Debtors Have Failed to Provide Adequate Assurance of Future Performance by the Stalking Horse Bidder under the Lease**

19.     No evidence in support of the Stalking Horse Bidder's assurance of future performance under the Lease is offered with the Sale Motion:  no pro forma projections of operations or financial statements indicating its capitalization, which a commercial landlord should reasonably expect to receive for consideration by a new tenant.  Instead, Debtors propose that "to the extent necessary" Debtors will present evidence of the financial credibility of the and willingness and ability to perform of the winning bidder at the Sale Hearing.  Sale Motion, ¶ 44.  Notwithstanding Debtors' failure to present evidence of adequate assurance of future performance with the Sale Motion, non-debtor counterparties to Assumed Contracts are required to file written Adequate Assurance Objections by November 11 or two business days after receipt of adequate assurance information (which is rather impractical if there is any back and forth over the information provided or requested).  Procedures Notice, ¶ 9.  Harbor Mesa objects based on the failure to present evidence with the Sale Motion, and reserves its rights to supplement this objection after receiving adequate assurance information.

20.     As set forth above, the Bankruptcy Code requires that the Debtors provide Harbor Mesa with adequate assurance of future performance under the Lease as a condition to any assignment.  While adequate assurance of future performance is not defined in the Bankruptcy Code, several courts have looked to the legislative history for guidance and have concluded that "the term was intended to be given a practical, pragmatic construction in light of the facts of each case."  In re Natco Industries, Inc., 54 B.R. 436, 440-441 (Bankr. S.D.N.Y. 1985); see also, William J. Norton, 2 Norton Bankr. L. & Prac. 2d § 39:31 (2013) (Adequate assurance of future performance involves a factual inquiry guided by commercial terms and a pragmatic analysis of the facts).  The emphasis is on protection of the lessor, and the intention "is to afford landlord

with a measure of protection from having to be saddled with a debtor that may continue to default and return to bankruptcy." Natco Indus., at 441. This requires more than merely finding a willing assignee – adequate assurance requires a foundation that is nonspeculative and sufficiently substantive so as to assure that a landlord will receive the bargained-for performance. In re World Skating Center, Inc., 100 B.R. 147, 148-149 (Bankr. D. Ct. 1989). By implication, Bankruptcy Code section 365 operates to remove doubts entertained by a lessor concerning the status of his lease with the bankruptcy estate. See In re Standard Furniture Co., 3 B.R. 527, 530 (Bankr. S.D. Cal. 1980). Adequate assurance is especially important because Bankruptcy Code section 365(k) absolves the bankruptcy estate from liability under an assigned lease, a departure from state law.

22. In Sea Harvest, the Ninth Circuit Court of Appeals rejected the debtor's bald statement that it "recognizes the ongoing obligation to maintain such Leases and pay all obligations with regard thereto," stating that Sea Harvest's empty declaration does not provide the compensation and assurances required by section 365(b)(1)." Sea Harvest, supra, 868 F.2d at 1080; see also In re Washington Capital Aviation & Leasing, 156 B.R. at 173 (while an absolute guarantee is not required, more than speculative plans are needed). Indeed, courts have required a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. See, e.g., Matter of Haute Cuisine, Inc., 58 B.R. 390, 393-394 (Bankr. M.D. Fla. 1986); In the Matter of CM Systems, Inc., 64 B.R. 363, 364-365 (Bankr. M.D. Fla. 1986).

22. It is well-established that "[t]he Bankruptcy Code imposes heightened restrictions on the assumption and assignment of leases of shopping centers." In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3d Cir. 1990). Bankruptcy Code section 365(b)(3), added as part of the

so-called 1984 "Shopping Center Amendments" to the Bankruptcy Code, provides that adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance:

(A)     of the source of rent and other consideration due under such lease, and in the case of an assignment, *that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease*;

(B)     that any percentage rent due under such lease will not decline substantially;

(C)     that *assumption or assignment of such lease is subject to all the provisions thereof, including* (but not limited to) provisions such as a radius, location, *use, or exclusivity provision*, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D)     that assumption or assignment of such lease will *not disrupt any tenant mix or balance* in such shopping center.

(Emphasis added.)

23.     It has been held that the best form of adequate assurance of future performance is advance rent or a deposit.  In re Hub of Military Circle, Inc., supra, 19 B.R. 460, 461 (Bankr. E.D. Va. 1982).  However, it may also include "sufficient financial backing, escrow deposits or other forms of security or guaranty", In re Gold Standard at Penn, Inc., 75 B.R. 669, 674 (Bankr. E.D. Pa. 1987), sound financial statements and a substantial net worth, In re Taylor Manufacturing, Inc., 6 B.R. 370, 372 (Bankr. N.D. Ga. 1980), projected sales proceeds sufficient for and earmarked for payment of rent, Buchakian v. Musikahn Corp., 69 B.R. 55, 56 (E.D.N.Y. 1986), and a substantial cash reserve, a favorable market outlook and the history of prompt

{05077140.DOC.}                                          11

payment, Seacoast Products, Inc. v. Spring Valley Farms, Inc., 34 B.R. 379, 381 (M.D.N.C. 1983).

24.     The Debtors provide absolutely no evidence with the Sale Motion to support the Stalking Horse Bidder's ability to perform on a go-forward basis. Consequently, there is no basis for any finding by the Court determining adequate assurance of future performance under the Lease. Without such evidence, the Court may require a credit enhancement (increased security deposit, letter of credit, guaranty, etc.) to provide adequate assurance as a condition of assignment. See, 3 Collier on Bankruptcy ¶ 365.09[1], p. 365-74 to 75 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (security deposit posted under section 365(l) may serve as adequate assurance of future performance).

25.     Harbor Mesa is attempting to work with the Debtors and the Stalking Horse Bidder to obtain evidence of future performance by the Stalking Horse Bidder under the Lease. As required by the Procedures Notice, however, Harbor Mesa objects to the provision of adequate assurance of future performance in the Sale Motion. Harbor Mesa further objects to the extreme and burdensome limitation of its rights to review evidence and examine witnesses on the adequate assurance issue. If necessary, Harbor Mesa requests the setting of a final hearing with respect to assignment of the Lease, with a briefing and discovery schedule established.

### Elimination of the Use Restrictions in the Lease Would Violate the Code's Protection of Harbor Mesa as a Shopping Center Landlord

26.     The Procedures Notice states that the Debtors are seeking an order finding that use restrictions in any lease will be inapplicable and not binding on the Successful Bidder, to the extent that they would prohibit use of a business consistent with the operation of a grocery store or similar business. Although the Debtor currently operates a grocery store at the Premises, the Lease contains certain use restrictions that were carefully tailored to maintain a balance among

{05077140.DOC.}

12

the mix of tenants in the shopping center. Accordingly, Harbor Mesa objects to any modification of the Lease's use restrictions, which are commercially reasonable restrictions necessary to the operation of the Harbor Mesa Shopping Center and not a restriction on assignment of the Lease that would run afoul of section 365.

27.    Where the proposed assignment is contrary to restrictive use covenants, assumption and assignment of a shopping center lease is not permitted. In re Three A's Holdings, LLC, 364 B.R. 550, 560 (Bankr. D. Del. 2007). Bankruptcy Code section 365(b)(3)(D) requires that a debtor provide adequate assurance that the proposed assignment of a lease "will not disrupt any tenant mix or balance in [the] shopping center." See In re Sun TV and Appliances, Inc., 234 B.R. at 370 ("[S]ection 365(b)(3)(C) includes adherence to use provisions and preservation of tenant mix as necessary elements of 'adequate assurance' of future performance of a lease of real property in a shopping center.") In considering "tenant mix or balance," at least one court has found that "the word 'mix' implies that issues will focus on the inclusion or exclusion of a store in the array or mix of mall stores. The word 'balance' implies issues focusing on the *location and relationship of tenants in the mix of mall stores*." In re Federated Dept. Stores, Inc., 135 B.R. 941, 943 (Bankr. S.D. Ohio 1991) (emphasis added).

28.    Thus, it is well-established that the proposed assignee must take the Lease subject to existing use provisions. The Lease contains restrictive use provisions. generally prohibiting the tenant from duplicating certain identified uses of other tenants in the shopping center for which an exclusive has been granted. Lease, § 14, Exh. C. In particular, the Debtor is prohibited from violating the exclusive rights of McDonald's, Chick-Fil-A, and El Pollo Loco. Elimination of such use restrictions from the anchor tenant's Lease could have substantial adverse effects on the tenant mix and health of the shopping center going forward.

29.     No provision of the Code supports elimination of the use restrictions in the Lease, which are precisely the type of provisions that are protected by Section 365(b)(3).  If the use restrictions in the Lease are eliminated, the Debtors cannot provide the adequate assurance required by Bankruptcy Code section 365(b)(3)(D).

## CONCLUSION

For all of the foregoing reasons, Harbor Mesa objects to assumption and assignment of the Lease to the Stalking Horse Bidder on the terms proposed by the Debtors.  Any assignment of the Lease must be *cum onere*, with the Stalking Horse Bidder assuming all of the unperformed obligations under the Lease without condition or limitation.  The Debtors have not submitted any evidence of the Stalking Horse Bidder's financial ability to perform under the Lease, and absent such evidence should be required to provide some form of security for its performance.  Finally, the Lease may not be modified to allow the Stalking Horse Bidder to violate the use restrictions in the Lease that are protected by Section 365.

Dated:  November 11, 2013            CONNOLLY GALLAGHER LLP

Karen C. Bifferato (No. 3279)
Kelly M. Conlan (No. 4786)
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
Telephone:  (302) 757-7300
Facsimile:  (302) 757-7299
Email: kbifferato@connollygallagher.com
Email: kconlan@connollygallagher.com

-and-

{05077140.DOC.}                                   14

15

Michael S. Greger
A. Kenneth Hennesay, Jr.
Allen Matkins Leck Gamble
   Mallory & Natsis LLP
1900 Main Street, Fifth Floor
Irvine, CA 92614-7321
Telephone:  (949) 553-1313
Facsimile:  (949) 553-8354
Email:  mgreger@allenmatkins.com
Email:  khennesay@allenmatkins.com
*Attorneys for Harbor Mesa LLC*