## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| FRESH & EASY NEIGHBORHOOD MARKET INC., *et al.*,[1] | : | Case No. 13-12569 (KJC) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors, | : |  |
|  | : | **Re: Docket No. 34** |
|  | : |  |

## ORDER (I) APPROVING THE SALE OF
## A SUBSTANTIAL PORTION OF THE DEBTORS' ASSETS
## FREE AND CLEAR OF ALL NON-ASSUMED LIENS, CLAIMS,
## ENCUMBRANCES AND INTERESTS, (II) APPROVING THE ASSUMPTION
## AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF

Upon the motion [Docket No. 34] (the "Sale Motion")[2] dated September 30, 2013, of

Fresh & Easy Neighborhood Markets Inc. and Fresh & Easy Property Company LLC (the

"Debtors"), as debtors and debtors-in-possession pursuant to sections 105(a), 362, 363, 365, 503

and 507 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002,

6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

and Rule 6004-1 of the Local Rules for the United States Bankruptcy Court for the District of

Delaware (the "Local Rules") for, inter alia, (i) approval of procedures (the "Bidding

Procedures"), in connection with the sale of certain of the Debtors' assets as set forth in

section 1.01 of the Stalking Horse APA and the Properties (as such term is defined in the EM-50

PSA (as defined below)) (collectively, the "Acquired Assets") free and clear of all liens, claims

---

[1]     The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in parentheses):  Fresh & Easy Neighborhood Market Inc. (7028) and Fresh & Easy Property Company LLC (9636).  The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

[2]     Capitalized terms used, but not defined, herein have the meaning ascribed to them in the Sale Motion.  This order shall be deemed to incorporate any findings of fact and conclusions of law made on the record at the Sale Hearing (as defined herein) pursuant to Fed. R. Bankr. P. 7052.

(as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature except as expressly provided in the Stalking Horse APA (as defined below) (collectively, the "Liens"); (ii) authorization to enter into that certain Asset Purchase Agreement, dated as of September 10, 2013, for the sale of the Acquired Assets (the "Original Stalking Horse APA"), by and among the Debtors and YFE Holdings, Inc., a Delaware corporation (collectively with its designees and assignees as contemplated under the Stalking Horse APA, the "YFE Buyer") as amended pursuant to that certain Amendment to Asset Purchase Agreement, dated November 7, 2013, by and among the Debtors, YFE Buyer, and OA3, LLC, a California limited liability company ("OA3"), that certain Second Amendment to Asset Purchase Agreement, dated November 21, 2013, by and among the Debtors, YFE Buyer and OA3, and that certain Third Amendment to Asset Purchase Agreement, dated November 21, 2013, by and among the Debtors, YFE Buyer and OA3 (the Original Stalking Horse APA, as so amended, the "Stalking Horse APA"), and that certain Purchase and Sale Agreement and Joint Escrow Instructions, dated as of November 21, 2013 (the "EM-50 PSA"), by and between the Debtors and EM-50 UAV SLBCo LLC, a Delaware limited liability company ("EM-50 Buyer"; YFE Buyer and EM-50 Buyer are referred to herein each individually and collectively as "Buyer") pursuant to which EM-50 Buyer is purchasing the Properties (as defined in the EM-50 PSA) pursuant to the Stalking Horse APA, and consummate the transactions contemplated by the Stalking Horse APA and the EM-50 PSA (collectively, the "Transactions"), and (iii) approval of the assumption and assignment of certain executory contracts and unexpired leases (such executory contracts and unexpired leases that are proposed to be assumed and assigned pursuant to the Stalking Horse APA and set forth on Annex A attached hereto, the "Assumed Contracts and Leases")[3]; after holding a hearing on October 24,

---

[3]     The Debtors may seek to include additional contracts or leases on the list of Assumed Contracts and Leases

2013 (the "Bidding Procedures Hearing") the Bankruptcy Court having entered an order dated

October 24, 2013 (the "Bidding Procedures Order") [Docket No. 186], authorizing the Debtors to

solicit and consider offers for the Bid Assets (as defined therein) and conduct an auction

("Auction") in accordance with the terms and conditions of the Bidding Procedures and

approving, inter alia, (i) the Bidding Procedures; (ii) the form and manner of notice of the

Auction and Sale Hearing (defined below); and (iii) the manner in which the notice of the

assignment and proposed cure amounts of the Assumed Contracts and Leases (the "Notice of

Assignment and Cure") would be provided and the procedures related to the assignment of the

Assumed Contracts and Leases to the YFE Buyer; and the Bankruptcy Court having conducted a

hearing on the Sale Motion on November 22, 2013 (the "Sale Hearing"); and all parties in

interest having been heard, or having had the opportunity to be heard, regarding the Stalking

Horse APA and the EM-50 PSA; and the Bankruptcy Court having reviewed and considered the

Sale Motion, and the arguments of counsel made, and the evidence adduced, at the Bidding

Procedures Hearing and the Sale Hearing; and upon the record of the Bidding Procedures

Hearing and the Sale Hearing, the Declaration of James Dibbo in Support of the First-Day

Pleadings [Docket No. 3], the Declaration of Marc Liebman in Support of the Sale Motion

[Docket No. 34, Exh. C], the Declaration of Mary Kasper in Support of the Sale Motion [Docket

No. 174], the Supplemental Declaration of Marc Liebman in Support of the Sale Motion [Docket

No. 358] and these chapter 11 cases and proceedings, and after due deliberation thereon, and

good cause appearing therefor;

---

pursuant to paragraph 40 of this Order.

NYI-4552483v11
RLF1 9624613v.1

**IT IS HEREBY FOUND AND DETERMINED THAT:**[4]

A.      **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction over the Sale

Motion and the Transactions pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core

proceeding pursuant to 28 U.S.C. § 157(b).  Venue in this district is proper under 28 U.S.C. §§

1408 and 1409.

B.      **Statutory Predicates**.  The statutory predicates for the relief requested in the Sale

Motion are Bankruptcy Code sections 105, 362, 363 and 365, Bankruptcy Rules 2002, 6004,

6006 and 9014, and Local Rule 6004-1.

C.      **Notice**.  Proper, timely, adequate, and sufficient notice of the Sale Motion,

including, without limitation, the Sale, the Transactions, the assumption and assignment of the

Assumed Contracts and Leases, the Auction, the Sale Hearing, and of the entry of this Order

have been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code,

Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007, and Local Rule 6004-1, and in compliance

with the Bidding Procedures Order.  Such notice was good and sufficient and appropriate under

the particular circumstances.  No other or further notice of the Sale Motion, including, without

limitation, the Sale, the Transactions, the assumption and assignment of the Assumed Contracts

and Leases, the Auction, the Sale Hearing, or of the entry of this Order is necessary or shall be

required.

D.      A Notice of Assignment and Cure has been provided to each of the non-Debtor

counterparties to the Assumed Contracts and Leases identified on the list(s) the Debtors have

filed (including, without limitation, Schedules 1.01(a)(ii)(A), 1.01(a)(ii)(B) and 1.01(a)(iii) to the

Stalking Horse APA), all in accordance with and as provided by the Bidding Procedures Order.

---

[4]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as
findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

NYI-4552483v11
RLF1 9624613v.1

The service of the Notice of Assignment and Cure was sufficient under the circumstances and no further notice need be given in respect of assumption and assignment of the Assumed Contracts and Leases or establishing Cure Amounts (as defined below).  Non-Debtor parties to the Assumed Contracts and Leases have had an adequate opportunity to object to assumption and assignment of the Assumed Contracts and Leases and the associated Cure Amounts.

E.    **Opportunity to Object**.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

F.    **Title in the Acquired Assets**.  The Acquired Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

G.    **Business Justification**.  The Debtors have demonstrated a sufficient basis and compelling circumstances requiring them to enter into the Stalking Horse APA and the EM-50 PSA, assume and assign the Assumed Contracts and Leases, and sell the Acquired Assets.  Such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not limited to, the facts that (i) there is substantial risk of deterioration of the value of the Acquired Assets if the Sale is not consummated quickly; (ii) the Stalking Horse APA coupled with the EM-50 PSA constitute the highest or otherwise best offer for the Acquired Assets; and (iii) the Stalking Horse APA, EM-50 PSA and the Closing will present the best opportunity to realize the value of the Debtors on a going concern basis and to avoid decline and devaluation of the Debtors' businesses.  Entry of this Order and all provisions hereof is a necessary condition precedent to the Buyer consummating the Transactions.

NYI-4552483v11
RLF1 9624613v.1

H.     **Opportunity to Bid**. The Debtors and their professionals marketed the Acquired

Assets and conducted the marketing and sale process as set forth in the Sale Motion and in

accordance with the Bidding Procedures Order.  The Auction process set forth in the Bidding

Procedures Order and the Bidding Procedures afforded a full and fair opportunity for any entity

to make a higher or otherwise better offer to purchase the Acquired Assets.  Based upon the

record of these proceedings, all creditors and other parties in interest and all prospective

purchasers have been afforded a reasonable and fair opportunity to bid for the Acquired Assets.

I.      **Highest or Otherwise Best Offer**. The total consideration provided by the Buyer

for the Acquired Assets is the highest or otherwise best offer received by the Debtors.  The

Buyer is the successful bidder for the Acquired Assets in accordance with the Bidding

Procedures Order.  The Buyer has complied in all respects with the Bidding Procedures Order.

J.      **Good Faith Purchaser**. The Stalking Horse APA and the EM-50 PSA and the

Transactions contemplated thereby have been negotiated by the Debtors, Tesco PLC, YFE Buyer

and EM-50 Buyer (and their respective affiliates and representatives) in good faith, at arm's

length and without collusion or fraud.  The terms and conditions of the Stalking Horse APA, the

EM-50 PSA and the Transactions, including the total consideration to be realized by the Debtors

pursuant to the Stalking Horse APA and the EM-50 PSA, are fair and reasonable, and the

Transactions are in the best interest of the Debtors, their creditors and their estates.

K.     The YFE Buyer is a "good faith purchaser" entitled to the full benefits and

protections of section 363(m) of the Bankruptcy Code with respect to the sale and assignment of

the portion of the Acquired Assets that it is acquiring pursuant to the Transactions.  The EM-50

Buyer is a "good faith purchaser" entitled to the full benefits and protections of section 363(m) of

the Bankruptcy Code with respect to the sale and assignment of the portion of the Acquired

Assets that it is acquiring pursuant to the Transactions.

L.    The Stalking Horse APA and the EM-50 PSA were not controlled by an

agreement between potential or actual bidders within the meaning of Bankruptcy Code section

363(n).  The Debtors and the Buyer have not engaged in any conduct that would cause or permit

the Stalking Horse APA, the EM-50 PSA or the consummation of the Transactions to be

avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.  The

Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

M.    The Buyer will be acting in good faith in consummating the Transactions at any

time on or after entry of this Order, and cause has been shown as to why this Order should not be

subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d).  The Buyer is not an

"insider" as that term is defined in section 101(31) of the Bankruptcy Code.

N.    **Corporate Power and Authority**.  Subject to entry of this Order, the Debtors

have full corporate power and authority to execute and deliver the Stalking Horse APA, the EM-

50 PSA and the Transactions and to perform all of their respective obligations thereunder, and

the sale of the Acquired Assets and assignment of the Assumed Contracts and Leases has been

duly and validly authorized by all corporate authority necessary to consummate the Transactions.

No consents or approvals, other than as expressly provided for in the Stalking Horse APA, the

EM-50 PSA and the entry of this Order, are required by the Debtors to consummate the

Transactions.

O.    **Transfer and Sale of Assumed Liabilities**.  The transfer and sale of the

Assumed Liabilities pursuant to the terms of this Order is integral to the Stalking Horse APA and

is in the best interests of the Debtors, their estates and their creditors, and represents the

NYI-4552483v11
RLF1 9624613v.1

reasonable exercise of sound and prudent business judgment by the Debtors.  Accordingly, such

transfer and sale to YFE Buyer is reasonable, enhances the value of the Debtors' estates and does

not constitute unfair discrimination.  As between the Debtors and Buyer, nothing in this Order

shall enlarge or restrict any obligations of the Debtors or Buyer under the Stalking Horse APA

with respect to the Assumed Liabilities or under the EH-50 APA with respect to the assumed

liabilities.

        P.        **Assumption and Assignment in Best Interests**.  The assumption of the

Assumed Contracts and Leases by the Debtors and the assignment thereof to the YFE Buyer

pursuant to the terms of this Order is integral to the Stalking Horse APA and is in the best

interests of the Debtors, their estates and their creditors, and represents the reasonable exercise of

sound and prudent business judgment by the Debtors.  Accordingly, such assumption and

assignment is reasonable, enhances the value of the Debtors' estates and does not constitute

unfair discrimination.  No provision of any Assumed Contract or Lease that purports to prohibit,

restrict or condition the assignment of any such Assumed Contract or Lease in connection with

the Transactions contemplated under the Stalking Horse APA shall have any force or effect.

Pursuant to Section 365(f) of the Bankruptcy Code, the Assumed Contracts and Leases shall be

assigned and transferred to, and remain in full force and effect for the benefit of, the YFE Buyer

notwithstanding any provision of the Assumed Contracts and Leases or other restriction

prohibiting their assignment or transfer, provided, however, that to the extent any of the Leases

(other than the Leases of the Objectors (as defined below)) include, or are burdened by or subject

to, use restrictions, such use restrictions are inapplicable and not binding on the YFE Buyer only

to the extent that such use restriction would prohibit use of a business consistent with the

operation of a grocery store or similar business by the YFE Buyer and its designees, assignees or

NYI-4552483v11
RLF1 9624613v.1

successors in interest.  Solely with respect to the Assumed Leases for which the relevant objector filed an objection regarding use restrictions (collectively, the "Objectors"),[5] notwithstanding anything to the contrary herein, the YFE Buyer agrees to operate each of the Objectors' premises pursuant to the terms of the respective Assumed Leases (including, without limitation, any use restrictions); provided, that no provision that requires or limits the operation of the respective premises to a specific tenant or under a specific name shall be enforceable against the YFE Buyer (or its assignees or successors in interest).

Q.    **Cure/Adequate Assurance**.  The Debtors have met all of the requirements of Section 365(b) of the Bankruptcy Code for each of the Assumed Contracts and Leases.  The Debtors have provided adequate assurance of cure of any default existing prior to the Closing under any of the Assumed Contracts and Leases, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code, and provided adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof under any of the Assumed Contracts and Leases within the meaning of Bankruptcy Code section 365(b)(1)(B).  The YFE Buyer has provided adequate assurance of its future performance of and under the Assumed Contracts and Leases, within the meaning of Bankruptcy Code section 365(b)(1)(C) (including to the extent, if any, modified by section 365(b)(3)).  The non-Debtor parties to the Assumed Contracts and Leases were given notice and the opportunity to object to the Notice of Assumption and Cure and are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).

R.    **Free and Clear**.  The Debtors are the sole and lawful owners of the Acquired Assets.  The sale and assignment of the Acquired Assets to the applicable Buyer will be, as of the

---

[5]    A list of the Objectors is attached hereto as Annex B.

Closing, legal, valid and effective transfers of such assets, and each such transfers and assignments shall, at Closing, vest the applicable Buyer with all right, title and interest of the Debtors to the applicable Acquired Assets free and clear of all Liens and Excluded Liabilities (each as defined herein), with any such Liens or Excluded Liabilities to attach to the consideration to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as of the Closing. The YFE Buyer would not enter into the Stalking Horse APA to acquire its portion of the Acquired Assets and the EM-50 Buyer would not enter into the EM-50 PSA to acquire its portion of the Acquired Assets, if the sale of the Acquired Assets were not free and clear of all Liens and Excluded Liabilities, or if the Buyer would, or in the future could, be liable for any such Liens or Excluded Liabilities. A sale of the Acquired Assets other than one free and clear of all Liens and Excluded Liabilities would adversely impact the Debtors' estates, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale. Therefore, the Sale contemplated by the Stalking Horse APA and the EM-50 PSA is in the best interests of the Debtors, their estates and creditors, and all other parties in interest.

S.    **Satisfaction of 363(f) Standards**. The Debtors may sell and assign the Acquired Assets free and clear of all Liens, because, with respect to each creditor asserting a Lien, one or more of the standards set forth in Bankruptcy Code sections 363(f)(1)-(5) has been satisfied. Those holders of Liens who did not object or who withdrew their objections to the Sale, the Transactions or any Notice of Assignment and Cure are deemed to have consented to the Sale Motion and sale and assignment of the Acquired Assets to the Buyer pursuant to Bankruptcy Code section 363(f)(2). Those holders of Liens who did object fall within one or more of the other subsections of Bankruptcy Code section 363(f) and are adequately protected by having

-10-

their Liens, if any, attach to the proceeds of the Transactions ultimately attributable to the

Acquired Assets in which such holders allege a Lien, in the same order of priority, with the same

validity, force and effect that such holder had prior to the Transactions, and subject to any claims

and defenses the Debtors and their estates may possess with respect thereto.

        T.      **No Successor Liability**.  Each of the YFE Buyer and the EM-50 Buyer and their

respective affiliates, predecessors, successors, assigns, members, partners, principals, directors,

officers, and shareholders (or equivalent) shall have no obligations with respect to any liabilities

of the Debtors other than those liabilities, with respect to the YFE Buyer, expressly assumed

under or pursuant to the Stalking Horse APA (the "Assumed Liabilities"), and with respect to the

EM-50 Buyer, expressly assumed under or pursuant to the EM-50 PSA.

        U.      The Transactions contemplated under the Stalking Horse APA and EM-50 PSA

do not amount to a consolidation, merger or de facto merger of either Buyer with each other or

with the Debtors and/or the Debtors' estates, there is not substantial continuity between Buyer

and any of the Debtors, there is no common identity between the Debtors and the Buyer, there is

no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere

continuation of the Debtors or their estates, and the Buyer does not constitute a successor to the

Debtors or their estates.  Other than the Assumed Liabilities provided for in the Stalking Horse

APA with respect to the YFE Buyer and the assumed liabilities provided for in the EM-50 PSA

with respect to the EM-50 Buyer, each Buyer and its respective affiliates, predecessors,

successors, assigns, members, partners, directors, officers, principals and shareholders (or

equivalent) shall have no obligations with respect to (i) the Assumed Liabilities provided for in

the other Buyer's asset purchase agreement with the Debtors, or (ii) any liabilities of the Debtors

including, without limitation, all "claims" (as defined in section 101(5) of the Bankruptcy Code),

NYI-4552483v11
RLF1 9624613v.1

liens, liabilities, interests, rights and encumbrances, mortgages, restrictions, hypothecations,

indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security

interests, equity interests, conditional sale rights or other title retention agreements, pledges,

judgments, demands, rights of first refusal, consent rights, rights of offset, contract rights,

recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity

rights, exoneration rights, product liability claims, claims arising under PACA and PASA (each

as defined below), alter-ego claims, environmental rights and claims, labor rights and claims,

employment rights and claims, pension rights and claims, tax claims, regulatory violations,

decrees of any court or foreign or domestic governmental or quasi-governmental entity, charges

or any kind or nature, debts arising in any way in connection with any agreements, acts or

failures to act, reclamation rights and claims, obligation claims, demands, guaranties, option

rights or claims, and all other matters of any kind and nature, whether known or unknown,

choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or

unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent,

liquidated or unliquidated, matured or unmatured, material or non-material, disputed or

undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Cases

and whether imposed by agreement, understanding, law, rule, equity or otherwise (but, for the

avoidance of doubt, in each case prior to the Closing) (collectively, the "Excluded Liabilities"),

and upon consummation of the Transactions, each Buyer and its respective affiliates,

predecessors, successors, assigns, members, partners, directors, officers, principals and

shareholders (or equivalent) will be released and discharged from any and all of the Debtors'

claims, causes of action, obligations, liabilities, demands, losses, costs and expenses of any kind,

character or nature whatsoever, known or unknown, assented or unassented, fixed or contingent,

NYI-4552483v11
RLF1 9624613v.1

relating to the Transactions, and the sale of the Acquired Assets and assignment of the Assumed

Contracts and Leases except for liabilities and obligations under the Stalking Horse APA with

respect to the YFE Buyer and the EM-50 PSA with respect to the EM-50 Buyer. The

Bankruptcy Court finds that each Buyer would not have acquired the Acquired Assets but for the

foregoing protections against potential claims, including those based upon "successor liability"

theories.

     V.    **No Fraudulent Transfer**. The Transactions are not for the purpose of hindering,

delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United

States, any state, territory, possession or the District of Columbia. Neither the Debtors nor the

Buyer are or will be entering into the Transactions fraudulently.

     W.    **Fair Consideration**. The consideration constitutes reasonably equivalent value

and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer

Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code or any similar

state or federal law), and fair consideration under the Bankruptcy Code and under the laws of the

United States, any state, territory, possession or the District of Columbia. The Stalking Horse

APA and the EM-50 PSA represent fair and reasonable offers to purchase the Acquired Assets

and assume or acquire liabilities under the circumstances of the Debtors' cases. Approval of the

Stalking Horse APA and the EM-50 PSA and the consummation of the Transactions are in the

best interests of the Debtors, their estates, their creditors, and all other parties in interest.

     X.    **Compliance with Bankruptcy Code**. The consummation of the Transactions is

legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code,

including without limitation Bankruptcy Code sections 105(a), 363(b), 363(f), 363(m), 365(b)

and 365(f) and all of the applicable requirements of such sections have been or will be complied with in respect of the Transactions as of the Closing Date.

Y.    **Transactions Not a Sub Rosa Plan**.  The sale and assignment of the Acquired Assets and Assumed Liabilities outside of a plan of reorganization pursuant to the Stalking Horse APA and the EM-50 PSA neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtors.  The Transactions do not constitute a sub rosa chapter 11 plan.

Z.    **Time is of the Essence**.  Time is of the essence in consummating the Transactions.  In order to maximize the value of the Debtors' assets, it is essential that the sale and assignment of the Acquired Assets and the Assumed Contracts and Leases occur within the time constraints set forth in the Stalking Horse APA and the EM-50 PSA.  Specifically, the Transactions must be approved and consummated promptly in order to preserve the viability of the business subject to the Sale as a going concern, to maximize the value to the Debtors, their estates, their creditors, and all other parties in interest.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

The Transactions contemplated by the Stalking Horse APA and the EM-50 PSA are in the best interests of the Debtors and their estates, creditors, interest holders and all other parties in interest herein; and it is therefore,

**ORDERED, ADJUDGED AND DECREED THAT:**

1.    **Relief Granted**.  The relief requested in the Sale Motion is granted in its entirety.

2.    **Objections Overruled**.  All objections and responses to the Sale Motion, this Order or the relief granted herein that have not been overruled, withdrawn, waived, settled or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

-14-

3.      **Notice**. Notice of the Sale Motion, including without limitation, the transactions set forth in the Stalking Horse APA and the EM-50 PSA and the assumption and assignment of the Assumed Contracts and Leases, the Auction, the Sale Hearing and the Sale was fair and equitable under the circumstances and complied in all respects with section 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007 and Local Rule 6004-1.

4.      **Prior Findings of Fact and Conclusions of Law**. The Bankruptcy Court's findings of fact and conclusions of law in the Bidding Procedures Order, including the record of the Bidding Procedures Hearing, and the findings of fact recited above are incorporated herein by reference.

5.      **Approval**. The Stalking Horse APA, the EM-50 PSA and the Transactions are hereby approved and authorized in all respects, and the Debtors are hereby authorized and empowered and directed to enter into, and to perform their obligations under, the Stalking Horse APA and the EM-50 PSA and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the Stalking Horse APA and the EM-50 PSA.

6.      **Good Faith Buyer**. The YFE Buyer and the EM-50 Buyer are each good faith purchasers of their respective portions of the Acquired Assets and each is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code. Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the Stalking Horse APA or

-15-

the EM-50 PSA or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date), and notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment shall be governed in all respects by the original provisions of this Order, the Stalking Horse APA or the EM-50 PSA, as the case may be.

7.    **Section 363(n) of the Bankruptcy Code**.  The sales approved by this Order are not subject to avoidance or any recovery or damages pursuant to section 363(n) of the Bankruptcy Code.

8.    **Authorization of Performance by the Debtors**.  The Debtors are authorized to fully perform under, consummate, and implement the terms of the Stalking Horse APA and the EM-50 PSA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Stalking Horse APA, the EM-50 PSA, this Order, and the Transactions, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Acquired Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Stalking Horse APA or the EM-50 PSA, without any further corporate action or orders of the Bankruptcy Court.

9.    The Debtors are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments necessary or appropriate to effectuate the transactions contemplated by the Stalking Horse APA or the EM-50 PSA, any related agreements and this Order, including amended and restated certificates or articles of

-16-

incorporation and by-laws or certificates or articles of amendment, and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.

         10.     Each Buyer shall have no obligation to proceed with the Closing until all conditions precedent to their obligations to proceed have been met, satisfied or waived in accordance with the terms of the Stalking Horse APA or the EM-50 PSA, as applicable.

         11.     **Valid Transfer**.  Effective as of the Closing (a) the sale and assignment of the Acquired Assets and the Assumed Contracts and Leases by the Debtors to the applicable Buyer shall constitute a legal, valid and effective transfer of the Acquired Assets and the Assumed Contracts and Leases notwithstanding any requirement for approval or consent by any person, and vests such Buyer with all right, title and interest of the Debtors in and to the Acquired Assets, free and clear of all Liens, pursuant to section 363(f) of the Bankruptcy Code, and (b) the assumption of the Assumed Contracts and Leases and any Assumed Liabilities by the YFE Buyer constitutes a legal, valid and effective delegation of any and all obligations, liabilities and claims in respect thereof to the YFE Buyer and divests the Debtors and their affiliates (the "Debtor Parties") of all liability with respect to the Assumed Contracts and Leases and such Assumed Liabilities.

         12.     **Retention Period**.  The restrictions on the Debtors and their estates with respect to the Purchase Price Warrant or any Buyer Common Stock (each as defined in the Stalking Horse APA) set forth in Section 9.11(f) of the Stalking Horse APA shall, without further order of the Bankruptcy Court, be binding on and enforceable against (a) the Debtors and

NYI-4552483v11
RLF1 9624613v.1

their respective estates, (b) their respective successors and assigns, including without limitation, any reorganized Debtor under a chapter 11 plan, any chapter 11 trustee hereinafter appointed for any of the Debtors' estates, or any chapter 7 trustee appointed if any of these cases are converted into cases under chapter 7 of the Bankruptcy Code and (c) all holders of the Purchase Price Warrant or any Buyer Common Stock.

13.   **Free and Clear**.  Except to the extent specifically provided in the Stalking Horse APA or the EM-50 PSA, upon the Closing, the Debtors shall be, and hereby are, authorized, empowered, and directed, pursuant to sections 105, 363(b) and 363(f) of the Bankruptcy Code, to sell the Acquired Assets to the applicable Buyer and assign the Assumed Contracts and Leases to the YFE Buyer.  Except to the extent specifically provided in the Stalking Horse APA, the sale and assignment of certain Acquired Assets and the assignment of the Assumed Contracts and Leases to the YFE Buyer pursuant to the Stalking Horse APA vests the YFE Buyer with all right, title and interest of the Debtors to such Acquired Assets free and clear of any and all Liens, Excluded Liabilities, and other liabilities of any kind or nature whatsoever, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens to attach only to the proceeds of the sale and assignment of such Acquired Assets with the same priority, validity, force, and effect as they now have in or against such Acquired Assets.  Except to the extent specifically provided in the EM-50 PSA, the sale and assignment of certain Acquired Assets to the EM-50 Buyer pursuant to the EM-50 PSA vests the EM-50 Buyer with all right, title and interest of the Debtors to such Acquired Assets free and clear of any and all Liens, Excluded Liabilities, and other liabilities of any kind or nature whatsoever, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens to attach only to the proceeds of the sale and assignment of the Acquired Assets acquired pursuant to the

-18-

Stalking Horse APA with the same priority, validity, force, and effect as they now have in or against such Acquired Assets. The Sale Motion shall be deemed to provide sufficient notice as to the sale and assignment of the Acquired Assets free and clear of all Liens and Excluded Liabilities in accordance with Local Rule 6004-1. Following the Closing, no holder of any Lien on the Acquired Assets may interfere with the applicable Buyer's use and enjoyment of the Acquired Assets based on or related to such Lien, or any actions that the Debtors may take in their chapter 11 cases and no interested party may take any action to prevent, interfere with or otherwise enjoin consummation of the Transactions or by this Order.

14.    The term "Liens" shall include, among other things, any claim, interest, lien or encumbrance described in the definition of "Excluded Liabilities" and, without limitation: all liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature in respect of the Debtors or any property of the Debtors, including, without limitation, the following: (1) any labor agreements; (2) all mortgages, deeds of trust and security interests; (3) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitations, any pension plan of any Debtor; (4) any other employee, workers' compensation, occupational disease or unemployment or temporary disability related claim, including, without limitations, claims that might otherwise arise under or pursuant to (a) the Employee Retirement Income Security Act of 1974, as amended (b) the Fair Labor Standards Act, (c) Title VII of the Civil Rights Act of 1964, (d) the Federal Rehabilitation Act of 1973, (e) the National Labor Relations Act, (f) the Worker Adjustment and Retraining Act of 1988, (g) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (h) the Americans with Disabilities Act of 1990, (i) the Consolidated Omnibus Budget

-19-

Reconciliation Act of 1985, (j) state discrimination laws, (k) state unemployment compensation laws or any other similar state laws, or (l) any other state or federal benefits or claims relating to any employment with any of the Debtors or any of their respective predecessors; (5) any bulk sales or similar law; (6) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; (7) any theories of successor liability, including any theories on product liability grounds; (8) any interests arising under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a *et seq.* ("PACA"); (9) any interests arising under the Packers and Stockyards Act, 7 U.S.C. § 181 *et seq.* ("PASA"); and (10) any environmental or other liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature arising from existing conditions on or prior to the Closing (as defined in the Stalking Horse APA) (including, without limitation, the presence of hazardous, toxic, polluting or contaminating substances or waste) that may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or other state statute.

15.     The provisions of this Order authorizing the sale and assignment of the Acquired Assets free and clear of Liens and the Excluded Liabilities, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

16.     **Direction to Creditors**.  On the Closing Date (as defined in the Stalking Horse APA), each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens in the Acquired

NYI-4552483v11
RLF1 9624613v.1

Assets, if any, as such Liens may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens* or other documents, instruments, notices or agreements evidencing any Lien against or in the Acquired Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Acquired Assets, then with regard to the Acquired Assets, (a) the Debtors and/or the Buyer are authorized to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to the Acquired Assets and (b) the Debtors and/or the Buyer are authorized to file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Acquired Assets.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

17.    **Direction to Government Agencies**.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other persons and entity who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the Transactions contemplated by the Stalking Horse APA, the EM-50 PSA or this Order.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens against the Acquired Assets from their records, official and otherwise.

NYI-4552483v11
RLF1 9624613v.1

18. **Direction to Surrender Possession or Control**. All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Acquired Assets are directed to surrender possession or control of the Acquired Assets to the applicable Buyer on the Closing Date or at such time thereafter as such Buyer may request.

19. **Licenses and Permits**. To the extent provided in the Stalking Horse APA and available under applicable law, the YFE Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to its Acquired Assets and the Assumed Contracts and Leases, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the YFE Buyer as of the Closing Date. To the extent provided in the EM-50 PSA and available under applicable law, the EM-50 Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and any other governmental authorization or approval of the Debtors with respect to its Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the EM-50 Buyer as of the Closing Date. To the extent any license or permit necessary for the operation of the business is determined not to be an executory contract assumable and assignable under section 365 of the Bankruptcy Code, the YFE Buyer shall apply for and obtain any necessary license or permit promptly after the Closing Date and such licenses or permits of the Debtors shall remain in place for the YFE Buyer's benefit until new licenses and permits are obtained.

20. To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the

-22-

Acquired Assets sold, transferred or conveyed to the Buyer on account of the filing or pendency of these chapter 11 cases or the consummation of the Transactions.

21.    **Transfer of Title and Interests**.  All of the Debtors' interests in the Acquired Assets to be acquired by the Buyer under the Stalking Horse APA and the EM-50 PSA shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer pursuant to the terms of the Stalking Horse APA and the EM-50 PSA, as applicable. Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Acquired Assets (including the Assumed Contracts and Leases acquired by the YFE Buyer under the Stalking Horse APA) to the applicable Buyer pursuant to the Stalking Horse APA and the EM-50 PSA and/or a bill of sale or assignment transferring indefeasible title and interest in the Acquired Assets, including the Assumed Contracts and Leases and all other rights and interests associated with or appurtenant to the Acquired Assets, including, without limitation, warranty rights and other non-executory contract rights, to the applicable Buyer.

22.    **Fair Consideration**.  The consideration provided by the Buyer to the Debtors pursuant to the Stalking Horse APA and the EM-50 PSA for the purchase of the Acquired Assets and assignment of the Assumed Contracts and Leases constitutes reasonably equivalent value and fair consideration under, and the Transactions shall not constitute a fraudulent transfer or fraudulent conveyance under, the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

23.    **No Successor Liability**.  Each Buyer and its respective affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals and

-23-

shareholders (or equivalent) are not and shall not be (a) deemed a "successor" in any respect to the Debtors or their estates as a result of the consummation of the Transactions contemplated by the Stalking Horse APA or the EM-50 PSA or any other event occurring in the chapter 11 cases under any theory of law or equity, (b) deemed to have, de facto or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors, or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  The Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any Excluded Liabilities, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as otherwise expressly provided in the Stalking Horse APA, and the Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1.  Except for the Assumed Liabilities, the transfer of the Acquired Assets and the Assumed Contracts and Leases to the Buyer under the Stalking Horse APA and the EM-50 PSA shall not result in either Buyer or its respective affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent), or the Acquired Assets, (i) having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors (including, without limitation, Excluded Liabilities), (ii) having any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens or Excluded Liability, or (iii) having any liability or responsibility to the Debtors except as is expressly set forth in the Stalking Horse APA or the EM-50 PSA, as applicable.  In the event that the YFE Buyer elects to be treated as a successor

-24-

employer under section 3121(a)(1) of the Internal Revenue Code, or makes an election to assume, on an employee by employee basis, immigration-related liabilities with respect to former employees of the Debtors hired by the YFE Buyer, the YFE Buyer shall not by reason of any such election be deemed to have assumed any other liabilities or to be a successor for any other purpose.

24.    Without limiting the effect or scope of the foregoing, as of the Closing Date, each Buyer and its respective affiliates, predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent) shall have no successor or  vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to, the Acquired Assets or the Assumed Contracts and Leases prior to the Closing.

25.    **Injunction**.  Except to the extent expressly included in the Assumed Liabilities, all persons and entities, including, but not limited to, the Debtors, employees, former employees, all debt security holders, equity holders, administrative agencies, governmental units (as defined in section 101(27) of the Bankruptcy Code), tax and regulatory authorities, secretaries of state, federal, state and local officials, lenders, contract parties, bidders, lessors, warehousemen, customs brokers, freight forwarders, carriers and other parties in possession of any of the Acquired Assets at any time, trade creditors and all other creditors, holding any

NYI-4552483v11
RLF1 9624613v.1

Excluded Liabilities or Liens of any kind or nature whatsoever against or in the Debtors or in the Debtors' interests in the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Acquired Assets, the Assumed Contracts and Leases, the operation of the Debtors' business before the Closing Date, the Transactions, or the transfer of the Acquired Assets or the Assumed Contracts and Leases to the Buyer, shall be and hereby are forever barred, estopped and permanently enjoined from asserting, prosecuting, commencing, continuing or otherwise pursuing in any manner any action, claim or other proceeding of any kind, directly or indirectly, against either Buyer or its affiliates, predecessors, successors or assigns or any of their (including their affiliates, predecessors, successors or assigns) respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, principals, affiliates, shareholders (or equivalent), financial advisors and representatives (each of the foregoing in its individual capacity), their property or the Acquired Assets.  Actions that are barred hereby include, without limitation: (i) the commencement or continuation of any action or other proceeding, (ii) the enforcement, attachment, collection or recovery of any judgment, award, decree or order, (iii) the creation, perfection or enforcement of any lien, claim, interest or encumbrance, (iv) the assertion of any right of setoff, subrogation or recoupment of any kind, (v) the commencement or continuation of any action that does not comply with, or is inconsistent with, the provisions of this Order, any actions contemplated or taken in respect hereof, or the Stalking Horse APA or the EM-50 PSA and (vi) the revocation, termination or failure or refusal to renew any license, permit, registration or governmental authorization or approval to operate any of the Acquired Assets or conduct the businesses

NYI-4552483v11
RLF1 9624613v.1

associated with such Acquired Assets.  Following the Closing Date, no holder of a Lien in the Debtors shall interfere with the Buyer's title to or use and enjoyment of the Acquired Assets based on or related to such Lien, or any actions that the Debtors may take in the Debtors' cases.

26.    The YFE Buyer has not assumed and is not otherwise obligated for any of the Debtors' liabilities other than the Assumed Liabilities undertaken by the YFE Buyer pursuant to the Stalking Horse APA.  The EM-50 Buyer has not assumed and is not otherwise obligated for any of the Debtors' liabilities other than the assumed liabilities undertaken by the EM-50 Buyer pursuant to the EM-50 PSA.  Neither Buyer has acquired any of the Excluded Assets (as defined in the Stalking Horse APA).  Consequently, all persons, Governmental Units (as defined in section 101(27) of the Bankruptcy Code) and all holders of Liens, based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Buyer or the Acquired Assets, including asserting any setoff, right of subrogation or recoupment of any kind, to recover any Liens or on account of any liabilities of the Debtors other than against the YFE Buyer with respect to Assumed Liabilities expressly undertaken by the YFE Buyer in the Stalking Horse APA or against the EM-50 Buyer with respect to the assumed liabilities expressly undertaken by the EM-50 Buyer in the EM-50 PSA.  All persons holding or asserting any Lien on the Excluded Assets are hereby enjoined from asserting or prosecuting such Liens or cause of action against the Buyer or the Acquired Assets for any liability associated with the Excluded Assets.

27.    **No Bulk Sales; No Brokers**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the sales and the Transactions.  No brokers were involved in consummating the sales or the Transactions, and no brokers' commissions are due to any person or entity in connection with the sales or the Transactions. The Buyer is not and

-27-

will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the Transactions based upon any arrangement made by or on behalf of the Debtors.

28.     **Fees and Expenses**.  Any amounts payable by the Debtors under the Stalking Horse APA or the EM-50 PSA or any of the documents delivered by the Debtors in connection with the Stalking Horse APA or the EM-50 PSA, including without limitation, any allowed claims for breach thereof and the purchase price adjustment amount, if any, shall be paid in the manner provided in the Stalking Horse APA and the EM-50 PSA, as applicable, without further order of the Bankruptcy Court, shall be an allowed administrative claim in an amount equal to such payments in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code, and shall not be discharged, modified or otherwise affected by any reorganization plan for the Debtors, except by written agreement with the Buyer or its successors or assigns (such agreement to be provided in the Buyer's or its successors' or assigns' respective sole discretion).

29.     **Assumption and Assignment of Assumed Contracts and Leases**. Under sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Transactions, the Debtors' assumption of the Assumed Contracts and Leases and assignment thereof to the YFE Buyer free and clear of all Liens and Excluded Liabilities pursuant to the terms set forth in the Stalking Horse APA, as modified by the terms of any amendments reached directly by the Buyer with the respective counterparty, is hereby approved, and the requirements of sections 365(b)(1) and 365(f)(2) (including to the extent, if any, modified by section 365(b)(3)) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Each counterparty to the Assumed Contracts and Leases is hereby forever barred, estopped, and permanently enjoined from raising or asserting against the Debtor Parties

-28-

or the Buyer, or the property of any of them, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated senior or subordinate) arising under or out of, in connection with, or in any way related to the Assumed Contracts and Leases existing as of the Closing Date or arising by reason of the Closing. Notwithstanding the foregoing, pursuant to the terms of the Stalking Horse APA, the Buyer shall be liable for all obligations and liabilities arising under the Assumed Leases and Assumed Contracts, all of which shall constitute Assumed Liabilities.[6]

30.     The Assumed Contracts and Leases shall be deemed to be valid and binding and in full force and effect and enforceable in accordance with their terms.  Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the YFE Buyer shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Contracts and Leases.  The assignment of each of the Assumed Contracts and Leases are deemed to be made in good faith under, and are entitled to the protections of, section 363(m) of the Bankruptcy Code.

31.     **Adequate Assurance**.  The YFE Buyer has provided adequate assurance of its future performance under the relevant Assumed Contracts and Leases within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code (including to the extent, if any, modified by section 365(b)(3)).  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the YFE Buyer of the Assumed Contracts and Leases have been satisfied.

---

[6]     Nothing in this Order shall be deemed to alter any rights that the YFE Buyer or the Debtors may have by and against each other pursuant to the terms of the Stalking Horse APA.  Nothing in paragraph 29 shall be construed to alter or impair the rights of any party under the terms of paragraph 54 of this Order.

NYI-4552483v11
RLF1 9624613v.1

32.   **Anti-Assignment Provisions Unenforceable**. No sections or provisions of the Assumed Contracts and Leases that purport to (a) prohibit, restrict or condition Debtors' assignment of the Assumed Contracts and Leases, including, but not limited to, the conditioning of such assignment on the consent of the non-Debtor party to such Assumed Contracts and Leases; (b) authorize the termination, cancellation or modification of the Assumed Contracts and Leases based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances; (c) declare a breach or default as a result of a change in control in respect of the Debtors; or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges, other financial accommodations in favor of the non-Debtor third party to the Assumed Contracts and Leases, or modification of any term or condition upon the assignment of an Assumed Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force and effect, and such provisions constitute unenforceable anti-assignment provisions under 11 U.S.C. § 365(f) and/or are otherwise unenforceable under 11 U.S.C. § 365(e). The entry of this Order constitutes the consent of the non-Debtor parties to the Assumed Contracts and Leases to the assumption and assignment of such agreements. All Assumed Contracts and Leases shall remain in full force and effect, without existing default(s), subject only to payment of the appropriate cure amount, if any, by the Debtors.

33.   **No Fees for Assumption and Assignment**. There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Buyer, its successors or assigns, or the Debtors as a result of the assumption and assignment of the Assumed Contracts and Leases.

34.   **Cure Amounts**. All defaults or other obligations shall be deemed cured by the payment or other satisfaction of the prepetition cure amounts set forth in Annex A

NYI-4552483v11
RLF1 9624613v.1

attached hereto and postpetition cure amounts, if any, associated with the Assumed Contracts and Leases (the "Cure Amounts"), which agreed upon Cure Amounts shall be paid promptly after Closing. Except for the Cure Amounts, if any, there are no other defaults existing under the Assumed Contracts and Leases.

35.    Payment of the Cure Amounts pursuant to the Stalking Horse APA is hereby authorized.

36.    **Notice of Assumption and Assignment**. The Debtors have served all of the non-Debtor counterparties to the Assumed Contracts and Leases, identified on the lists the Debtors have filed with the Bankruptcy Court, by first class mail, a Notice of Assignment and Cure that included (i) the title of the Assumed Contract, (ii) the name of the counterparty to the Assumed Contract, (iii) any applicable Cure Amounts, (iv) the identity of the Assignee, and (v) the deadline by which any such Assumed Contract counterparty must file an objection ("Objection") to the proposed assumption and assignment. No other or further notice is required.

37.    **Objections to Assumption and Assignment**. Except as provided herein, all Objections have been overruled, withdrawn, waived, settled or otherwise resolved. Any Objections as to applicable Cure Amounts that have not been resolved by the parties within 60 days after Closing may be heard at a later date as set by the Bankruptcy Court, which hearing may be requested by either party on no less than 10 days notice. The pendency of a dispute relating to a particular Assumed Contract or Assumed Lease shall not prevent or delay the assumption and assignment of any other Assumed Contracts and Leases or the Closing.

38.    Any non-Debtor counterparty to the Assumed Contracts and Leases designated to be assumed and assigned to the YFE Buyer who has not filed an Objection by the deadline as set forth in the Notice of Assignment and Cure shall thereafter be barred from

NYI-4552483v11
RLF1 9624613v.1

objecting or asserting monetary or non-monetary defaults with respect to any such Assumed

Contract or Assumed Lease and such Assumed Contract or Assumed Lease shall be deemed

assumed by the Debtors and assigned to the YFE Buyer on the Closing Date.

39.    **Direction to Assumed Contracts and Leases Counterparties**.  All

counterparties to the Assumed Contracts and Leases shall cooperate and expeditiously execute

and deliver, upon the reasonable requests of the YFE Buyer, and shall not charge the YFE Buyer

for, any instruments, applications, consents, or other documents which may be required or

requested by any public or quasi-public authority or other party or entity to effectuate the

applicable transfers in connection with the Transactions.

40.    **Additional Contracts**.  To the extent the Debtors seek to include

additional contracts or leases on the list of Assumed Contracts and Leases or for assignment to

the EM-50 Buyer pursuant to the EM-50 PSA (the "Additional Contracts"), the Debtors shall file

with the Court and deliver to each counterparty to such Additional Contracts a notice of

assumption and assignment.  The counterparty shall have until 4:00 p.m. Eastern Time on the

date that is seven (7) days following the Debtors' filing of such notice to file and serve objections

to the assumption and assignment of the Additional Contract.  If no objection is filed, such

Additional Contract shall be deemed an Assumed Contract and Lease or, as applicable, a contract

or lease assigned to the EM-50 Buyer, and such assumption and assignment is hereby approved

pursuant to this Order.  Any objections to the assumption and assignment of any Additional

Contracts that have not been resolved by the parties may be heard at a later date as set by the

Bankruptcy Court.

41.    **Release and Discharge**.  Other than the Assumed Liabilities, each Buyer

and its respective affiliates, successors, assigns, members, partners, officers, directors, principals

NYI-4552483v11
RLF1 9624613v.1

and shareholders (or equivalent) shall have no obligations with respect to any liabilities of the

Debtors, including, without limitation, the Excluded Liabilities, and, upon consummation of the

Transactions, the Debtors and their estates are deemed to release and forever discharge each

Buyer and its respective affiliates, successors, assigns, members, partners, officers, directors,

principals and shareholders (or equivalent) from any and all claims, causes of action, obligations,

liabilities, demands, losses, costs and expenses of any kind, character or nature whatsoever,

known or unknown, fixed or contingent, relating to the Transactions, the sale of the Acquired

Assets or assignment of the Assumed Contracts and Leases, except for liabilities and obligations

expressly assumed under the Stalking Horse APA with respect to the YFE Buyer or the EM-50

PSA with respect to the EM-50 Buyer.

      42.    **Amendments**. Subject to the terms of the Stalking Horse APA and the

EM-50 PSA, the Stalking Horse APA and the EM-50 PSA and any related agreements may be

waived, modified, amended, or supplemented by agreement of the Debtors and the applicable

Buyer, without further action or order of the Bankruptcy Court; provided, however, that any such

waiver, modification, amendment, or supplement does not have a material and adverse effect on

the Debtors and their estates and notice of such waiver, modification, amendment or supplement

is provided to the Creditors' Committee. At the sole discretion of the Buyer, the Debtors and the

Buyer are expressly authorized, without further order of the Bankruptcy Court, to execute

amendments to the Stalking Horse APA and the EM-50 PSA to provide for the Closing to occur

on a Closing Date to be determined (so long as the Closing Date under both the Stalking Horse

APA and the EM-50 PSA occur concurrently). Any material modification, amendment, or

supplement to the Stalking Horse APA or the EM-50 PSA that has an adverse effect on the

NYI-4552483v11
RLF1 9624613v.1

Debtors and their estates must be approved by Order of the Bankruptcy Court following a motion on notice to all interested parties.

43.    **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Stalking Horse APA, the EM-50 PSA or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Buyer that the Stalking Horse APA, the EM-50 PSA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

44.    **Binding Order**.  This Order, the Stalking Horse APA and the EM-50 PSA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a chapter 7 case if this case is converted from chapter 11, all creditors of any Debtor (whether known or unknown), all non-Debtor parties to any Assumed Contracts and Leases, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired Assets.  The Stalking Horse APA, the EM-50 PSA and Transactions shall not be subject to rejection or avoidance under any circumstances.  This Order, the Stalking Horse APA and the EM-50 PSA shall inure to the

NYI-4552483v11
RLF1 9624613v.1

benefit of the Debtors, their estates, their creditors, the applicable Buyer and its respective successors and assigns.

45.     **Allocation of Consideration**.  Except as provided in the Stalking Horse APA or the EM-50 PSA, all rights of the respective Debtors' estates with respect to the allocation of consideration received from the Buyer in connection with the Transactions (including, without limitation, the value of the assumption of any assumed liabilities) are expressly reserved for later determination by the Court and, to the extent consideration is received by any Debtor that is determined to be allocable to another Debtor, the recipient Debtor shall be liable to such other Debtor for a claim with the status of an expense of administration in the case of the recipient Debtor under section 503(b) of the Bankruptcy Code.

46.     **No Stay of Order**.  Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  Time is of the essence in closing the Transactions referenced herein, and the Debtors and the Buyer intend to close the Transactions as soon as practicable.  Any party objecting to this Order must exercise due diligence in filing an appeal, pursuing a stay and obtaining a stay prior to the Closing, or risk its appeal being foreclosed as moot.

47.     **Lift of Automatic Stay**.  The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Bankruptcy Court, to allow the Buyer to deliver any notice provided for in the Stalking Horse APA or the EM-50 PSA and allow the Buyer to take any and all actions permitted under the Stalking Horse APA or the EM-50 PSA, including, without limitation, terminating the Stalking Horse APA or the EM-50 PSA, in each case in accordance with the terms and conditions thereof.

NYI-4552483v11
RLF1 9624613v.1

48.    **Retention of Jurisdiction**.  The Bankruptcy Court shall retain jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order, the Bidding Procedures Order, the Stalking Horse APA and the EM-50 PSA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, and (b) to decide any disputes concerning this Order, the Stalking Horse APA and the EM-50 PSA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Stalking Horse APA, the EM-50 PSA and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Acquired Assets and any Assumed Contracts and Leases and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens.

49.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or any other order in the Debtors' cases (including any order entered after any conversion of these cases into cases under chapter 7 of the Bankruptcy Code) shall alter, conflict with or derogate from, the provisions of the Stalking Horse APA, the EM-50 PSA or this Order and, to the extent of any such conflict, the terms of this Order, the Stalking Horse APA and the EM-50 PSA shall control.

50.    **Further Assurances**.  From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Transactions, including, such actions as may be necessary to vest, perfect or confirm, or record or otherwise, in

NYI-4552483v11
RLF1 9624613v.1

the Buyer its right, title and interest in and to the Acquired Asset and the Assumed Contracts and Leases.

51.    **Governing Terms**.  To the extent this Order is inconsistent with any prior order or pleading in these chapter 11 cases, the terms of this Order shall govern.  To the extent there is any inconsistency between the terms of this Order and the terms of the Stalking Horse APA or the EM-50 PSA (including all ancillary documents executed in connection with such agreements), the terms of the Stalking Horse APA, the EM-50 PSA and such related documents shall govern.

52.    **Assignment Agreement**.  The Buyer will enter into a short form Assignment Agreement with the Objecting Landlords that requested such an agreement in their respective objection, substantially in the form attached hereto as Annex C.

53.    **Liability Transfer**.  It is here by ordered that, as to any creditor of the Debtors who alleges or intends to allege that it holds a valid claim arising under either PACA or PASA (collectively the "Trust Claimants"); (i) the Debtors shall be solely responsible for any PACA related transactions wherein the products at issue are delivered to the Debtors on or before the Petition Date and any PASA related transactions wherein the products at issue are delivered to the Debtors on or before the May 31, 2013; (ii) the Debtors shall have no payment obligation or other financial responsibility for any PACA transactions involving products delivered to the Debtors after the Petition Date or for any PASA transactions involving products delivered to the Debtors after May 31, 2013; and (iii) Trust Claimants shall look solely to the YFE Buyer for payment on any and all PACA related transactions involving products delivered after the Petition Date and any and all PASA related transactions involving products delivered after May 31, 2013.

NYI-4552483v11
RLF1 9624613v.1

54.    **Miscellaneous**.  Nothing in this Order, the Stalking Horse APA or the EM-50 PSA releases, nullifies, precludes, or enjoins the enforcement of any liability to a governmental unit under environmental statutes or regulations that the Buyer (or any other entity) would be subject to as a result of its status as the owner or operator of the Acquired Assets after the Closing of the Transactions; provided, however, that nothing in this paragraph shall be construed to subject the Buyer (or any other entity) to penalties or fines for violations of environmental statutes or regulations applicable to the Acquired Assets for days of violation prior to the Closing.  Notwithstanding any provision herein to the contrary, the Sale Motion, this Order, and any implementing sale documents shall not:  (i) affect, impede or enjoin the exercise by the United States Department of Agriculture of any of its police or regulatory powers against the Debtors, the YFE Buyer and any non-debtor third parties; or (ii) waive the obligation of the Buyer to comply with all applicable legal requirements under nonbankruptcy law governing any licenses, permits, registrations or other governmental authorizations.

55.    General Electric Capital Corporation ("GECC") & Farm Credit Mid-America, PCA ("Farm Credit" and together with GECC, the "Lessors").  Notwithstanding any other provision of this Order, the Bidding Procedure Order, or the Stalking Horse APA:

a)    Pursuant to the Letter of Credit Agreement effective July 19, 2010, by and between GECC and Fresh & Easy Neighborhood Market, Inc. (the "LOC Agreement"), which the Debtors are assuming and assigning to the Buyer, Buyer shall cause a new Letter of Credit (the "Replacement LOC") to be issued by Wells Fargo Bank, N.A., to replace the existing Irrevocable Standby Letter of Credit, dated July 19, 2010, issued by JPMorgan Chase Bank, N.A. (the "LOC").  This Replacement LOC will be identical in substance to the existing LOC and otherwise in form and content acceptable to the Lessors.

b)    The Lessors will have all of their rights and remedies under the LOC (and with respect to any security deposits) unless and until the Lessors agree to, and receive physical possession of the original, Replacement LOC.  The LOC (so long as it is in place) and the Replacement LOC shall secure all

NYI-4552483v11
RLF1 9624613v.1

obligations under the various executory contracts and unexpired leases between the Debtors and Lessors (the "Leases").

c)    The security deposits held by each Lessor shall secure all obligations under the Leases owed to such Lessor.

56.    Notwithstanding anything to the contrary contained in this Order, or in any Findings of Fact and Conclusions of Law ("Findings") entered in connection herewith, but subject to the last sentence of this paragraph, neither this Order nor the Findings shall have any effect (whether by precedent, collateral estoppel, "law of the case," or any similar doctrine) on any unexpired real property lease of either Debtor that is not assumed and assigned in connection with the Sale Motion (any such lease shall be referred to herein as an "Excluded Lease"). Accordingly, and without limiting the generality of the forgoing, in connection with any future litigation (including contested matters) between the Debtors and the relevant landlord(s) regarding any of the Excluded Leases, any non-Debtor party to an Excluded Lease shall be free to assert that (i) the Debtors, and/or any proposed assignee of the Debtors with respect to such Excluded Lease, have not satisfied the conditions of Bankruptcy Code section 365 with respect to such Excluded Lease, including Bankruptcy Code sections 365 (b)(1)(A)-(C) and (b)(3), and (ii) no Excluded Lease that contains use or related restrictions may be assumed, or assumed and assigned, unless either (a) the lessor under the Excluded Lease expressly consents in writing, in advance; or (b) such restrictions shall be binding on the proposed assignee. The Debtors reserve their rights to assert that any future assumption, or assumption and assignment, of any Excluded Lease does comply with Bankruptcy Code section 365, and that the Debtors may assume, or assume and assign any Excluded Lease free of any use restrictions, but the Debtors may not, and will not, assert that the disposition of any non-Excluded Lease in connection with the Sale Motion has any effect on a proposed disposition of an Excluded Lease. This paragraph applies

-39-

only to matters involving the Excluded Leases, and is not intended to affect in any way the rights

of the Buyer with respect to the Acquired Assets, including the Assumed Leases.


Dated: Wilmington, Delaware
      Nov. 22, 2013

THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

-40-