# Annex 1

# Bidding Procedures

## BIDDING PROCEDURES

Fresh & Easy Neighborhood Market Inc. and its affiliate Fresh & Easy Property Company LLC (together, the "Debtors"), debtors in possession in jointly administered chapter 11 cases (the "Chapter 11 Cases") currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") have entered into a stalking-horse asset purchase agreement, dated November 13, 2013 (the "Stalking Horse APA")[1] with EM-50 UAV DARKCO LLC (the "Proposed Purchaser"), a company associated with Drawbridge Special Opportunities Fund.[2]

Pursuant to the Stalking Horse APA, and subject to the terms and conditions thereof, the Proposed Purchaser has agreed to acquire the Properties (as set forth in the Stalking Horse APA) from the Debtors. In order to attain the highest or otherwise best offer for the Debtors' assets, the Debtors propose these Bidding Procedures to solicit bids for the Properties (the "Bid Assets").

**Any interested bidder should contact, as soon as practical, the following:[3]**

| | |
|---|---|
| **ALVAREZ & MARSAL NORTH AMERICA, LLC** | **DJM REAL ESTATE, A GORDON BROTHERS GROUP COMPANY** |
| 600 Madison Avenue | 445 Broadhollow Road, Ste. 225 |
| New York, New York 10022 | Melville, NY 11747 |
| (212) 759-4433 | (631) 927-0037 |
| Attn: Dennis Stogsdill | Attn: Neill J. Kelly |
| dstogsdill@alvarezandmarsal.com | nkelly@djmrealestate.com |

These Bidding Procedures describe, among other things, (a) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (b) the conduct of the Auction (as defined below), if necessary, (c) the selection of the Successful Bidder(s) (as defined below), and (d) the Court approval of the sale of the Bid Assets to the Successful Bidder(s).

---

[1]   All terms used but not defined herein have the meaning ascribed to such term in the Stalking Horse APA.

[2]   The Debtors' entry into the Stalking Horse APA and these Bidding Procedures were approved by the Bankruptcy Court on November __, 2013 [Docket No. ____] (the "Bidding Procedures Order").

[3]   Alvarez & Marsal North America, LLC, Alvarez & Marsal Securities, LLC and DJM Real Estate are collectively referred to herein as the "Financial Advisors").

NYI-4554238v7
RLF1 9625178v.1

1. **Participation Requirements**

    (a) **Interested Parties**

    Unless otherwise ordered by the Bankruptcy Court for cause shown, to participate in the Bidding Process, each interested person or entity (each an "Interested Party") must deliver the following (unless previously delivered) to the Financial Advisors so as to be received no later than December 10, 2013 at 12:00 p.m. (Eastern Time):

    (A) an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

    (B) an executed reliance letter to govern access to and reliance upon certain diligence materials in the form attached hereto as Exhibit [1];

    (C) a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, that the Interested Party has a *bona fide* interest in purchasing the Bid Assets; and

    (D) sufficient information, as defined by the Debtors, to allow the Debtors, in consultation with the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases (the "Creditors' Committee"), to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal or other authorizations to close the Alternative Transaction (as defined in the Bidding Procedures Order), including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in their discretion).

    The Financial Advisors shall promptly deliver any of the foregoing documents received from an Interested Party to the professionals retained by the Creditors' Committee. If the Debtors determine, after receipt of the items identified above, and in consultation with the Creditors' Committee, that an Interested Party has a *bona fide* interest in the Bid Assets, then no later than two (2) business days after the Debtors make that determination and have received all of the materials required above, such Interested Party will be deemed a "Potential Bidder" and the Debtors will deliver to such Potential Bidder: (A) an electronic copy of the Stalking Horse APA and (B) access information for the Debtors' confidential electronic data room concerning the Bid Assets (the "Data Room"). The Debtors, in consultation with the Creditors' Committee, reserve the right to determine whether an Interested Party has satisfied the above participation requirements such that it is eligible to be a Potential Bidder.

    (b) **Due Diligence**

    Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Debtors will provide any Potential Bidder such due diligence access or additional information as may be reasonably requested by the Potential Bidder that the Debtors determine to be reasonable

and appropriate under the circumstances. All additional due diligence requests shall be directed to the Financial Advisors. The Debtors, with the assistance of the Financial Advisors, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide such materials to all Potential Bidders and the Proposed Purchaser.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (A) the Potential Bidder does not become a Qualified Bidder, from and after the Bid Deadline or (B) the Bidding Process is terminated in accordance with its terms.

**2.    Qualified Bids**

Each offer, solicitation or proposal by a Potential Bidder must satisfy each of the following conditions to be deemed a "Qualified Bid," and for the Potential Bidder to be deemed a "Qualified Bidder."

(a)    **Bid Deadline**

A Potential Bidder who desires to be a Qualified Bidder must deliver the Required Bid Documents (as defined below) so as to be received not later than 12 noon (Eastern Time) on December 10, 2013, (the "Bid Deadline"), to the Financial Advisors, with copies to Jones Day, 222 East 41st Street, New York, New York 10017 (Attn: Paul D. Leake and Lisa Laukitis) and counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd., 13th Floor, Los Angeles, CA 90067 (Attn: Jeffrey N. Pomerantz) and 919 N. Market Street, 17th Floor, Wilmington, DE 19801 (Attn: Bradford J. Sandler). The Debtors may extend the Bid Deadline with the written consent of the Proposed Purchaser and the Creditors' Committee. If the Debtors extend the Bid Deadline, the Debtors will promptly notify all Potential Bidders who have signed a confidentiality agreement of such extension.

(b)    **Bid Requirements**

All bids must include the following (the "Required Bid Documents"):

- a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving any other bidder for the Bid Assets identified in such offer;

- a duly authorized and executed purchase agreement, including the purchase price for the Bid Assets, together with all exhibits and schedules marked to show those amendments and modifications to the Stalking Horse APA and the proposed Sale Order; and

-3-

- written evidence of a firm commitment for financing, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtors, in consultation with the Creditors' Committee.

A bid will be considered only if the bid:

- identifies the assets to be purchased and the contracts and leases to be assumed and assigned;

- sets forth the consideration for the assets to be purchased and the contracts and leases to be assumed and assigned;

- provides for consideration that is higher or better than the consideration provided for by the Stalking Horse APA, taking into account the Break-Up Fee and Expense Reimbursement (which amounts shall be deemed to be added (without duplication) to each bid of the Proposed Purchaser);

- is not conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;

- provides evidence satisfactory to the Debtors, in consultation with the Creditors' Committee, of the bidder's financial wherewithal and operational ability to consummate the transaction and satisfy its adequate assurance of future performance requirement with respect to any executory contract or unexpired lease to be assigned to it;

- is irrevocable until the Debtors have consummated a transaction with the Successful Bidder(s) (as defined below) or the Alternate Bidder(s) (as defined below), as applicable;

- is accompanied by a deposit by wire transfer to an escrow agent selected by the Debtors (the "Deposit Agent") equal to 30% of the consideration set forth in connection with such bid (any such deposit, a "Good Faith Deposit") (which percentage is equal to the anticipated deposit to be made by the Proposed Purchaser as of the date of the Auction pursuant to the Stalking Horse APA);

- sets forth the representatives who are authorized to appear and act on behalf of the contemplated transactions;

- indicates that the bidder will not seek any transaction or Break-Up Fee, expense reimbursement, or similar type of payment;

- include evidence of the Qualified Bidder's ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future the contracts and leases proposed in its bid to be assumed by the Debtors and assigned to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases; and

-4-

- is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements. Notwithstanding the foregoing, the Proposed Purchaser shall be deemed a Qualified Bidder and the Stalking Horse APA shall be deemed a Qualified Bid for all purposes in connection with the Bidding Procedures. Within one (1) business day of the Bid Deadline, the Debtors will provide the Proposed Purchaser with copies of any Qualified Bids.

All Qualified Bids received prior to the conclusion of the Auction will be considered but the Debtors reserve the right to reject any and all bids other than the highest or otherwise best bid(s) in the Debtors' discretion, in consultation with the Creditors' Committee. The Debtors may, in their discretion, in consultation with the Creditors' Committee, evaluate bids on numerous grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Debtors. Additionally, the Debtors shall evaluate bids based on the added costs to the Debtors of the payment of the Stalking Horse Protections. Bids other than Qualified Bids will not be considered. For the avoidance of doubt, the Debtors, in consultation with the Creditors' Committee, may aggregate separate Qualified Bids for portions of the Bid Assets that are the subject of the Auction from unaffiliated Qualified Bidders to create one Qualified Bid for all of the Bid Assets, <u>provided</u>, <u>however</u>, that all such Qualified Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Bid Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Bid Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder(s), the asset purchase agreement(s) with such Successful Bidder(s).

3. **Break-Up Fee and Expense Reimbursement**

Recognizing the Proposed Purchaser's expenditure of time, energy, and resources, and the benefit that these efforts provided to all Interested Parties, the Debtors have agreed that if the Proposed Purchaser is not the Successful Bidder, the Sellers will, in certain circumstances, pay to the Proposed Purchaser a Break-Up Fee and an Expense Reimbursement. The payment of the Break-Up Fee and Expense Reimbursement will be governed by the provisions of the Stalking Horse APA and the Bidding Procedures Order. The Break-Up Fee is in an amount equal to one and one-quarter percent (1¼%) of the Purchase Price (as defined in the Stalking Horse APA). The Expense Reimbursement is in an amount up to $350,000.

NYI-4554238v7
RLF1 9625178v.1

4. **Auction**

The Proposed Purchaser is deemed a Qualified Bidder and its bid is deemed a Qualified Bid (the "Stalking Horse Bid"). In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct an auction (the "Auction") of the Bid Assets. The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids. The Auction will be conducted at the offices of Jones Day, 555 South Flower Street, Fiftieth Floor, Los Angeles, California 90071 on December 12, 2013 at 10:00 a.m. (Pacific Time).

Only representatives or agents of the Debtors, the Proposed Purchaser, Tesco PLC, the Creditors Committee, and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only the Proposed Purchaser and Qualified Bidders will be entitled to make any subsequent bids at the Auction. Creditors of the Debtors may attend the Auction if they send written notice by email to the Debtors' counsel (pdleake@jonesday.com and llaukitis@jonesday.com) of their intention to attend the Auction on or before the Bid Deadline and in such notice identify the representatives who will attend on behalf of the creditor; provided, however, that the Debtors may limit the number of attendees per creditor to a reasonable number.

Prior to the commencement of the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtors, in consultation with the Creditors' Committee, believe is the highest or otherwise best offer (the "Starting Bid") to all Qualified Bidders which have informed the Debtors of their intent to participate in the Auction and, if requested, will provide an explanation of how the Starting Bid is valued and a list containing the identification of all Qualified Bidders.

The Auction will be recorded by stenographic, audio or video means. At the commencement of the Auction, each Qualified Bidder will be required to confirm that it has not engaged in any collusion to control the sale price of the Bid Assets among potential bidders. The Debtors may employ and announce at the Auction additional procedural rules, in consultation with the Creditors' Committee, that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (i) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any Order of the Bankruptcy Court entered in connection herewith and (ii) disclosed to each Qualified Bidder; and provided further than all bids shall be made openly, in the presence of all parties at the Auction.

Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (i) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "Subsequent Bid") and (ii) the Debtors determine, in consultation with the Creditors' Committee, that such Subsequent Bid is (a) for the first round, a higher or otherwise better offer than the Starting Bid, and (b) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (defined below), in each case taking into account other Qualified Bids for other Bid

-6-

Assets. The Debtors, in consultation with the Creditors' Committee, may determine appropriate minimum bid increments or requirements for each round of bidding and shall disclose such bid increments or requirements to each Qualified Bidder prior to the applicable round of bidding.

To be considered the Starting Bid, a Qualified Bid(s) made by a Qualified Bidder(s) other than the Proposed Purchaser must be valued at least $350,000 greater than the aggregate amount of the Purchase Price set forth in the Stalking Horse APA plus the Break-Up Fee and the Expense Reimbursement. If the Starting Bid is the Stalking Horse Bid, then for another Qualified Bid(s) to be considered a Subsequent Bid(s), such Qualified Bid(s) must be valued at least $350,000 greater than the aggregate amount of the Purchase Price set forth in the Stalking Horse APA plus the Break-Up Fee and the Expense Reimbursement.

After the first round of bidding and between each subsequent round of bidding, the Debtors, in consultation with the Creditors' Committee, shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (the "Leading Bid").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid.

For the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtors shall take into account the Break-Up Fee and the Expense Reimbursement that may be payable to the Proposed Purchaser under the Stalking Horse APA (which amounts shall be deemed to be added (without duplication) to each bid of the Proposed Purchaser).

For the purpose of evaluating Subsequent Bids, the Sellers may require a Qualified Bidder (other than the Proposed Purchaser) submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors, in consultation with the Creditors' Committee) demonstrating such Qualified Bidder's ability to close the proposed transaction.

If Debtors do not receive any Qualified Bid other than the Stalking Horse Bid on or prior to the Bid Deadline, no Auction shall occur and Sellers shall seek approval of the Stalking Horse APA at the Sale Hearing and no further bids shall be considered.

5. **Selection Of Successful Bid(s)**

The Debtors reserve the right to (i) determine in their reasonable discretion, in consultation with the Creditors' Committee, which Qualified Bid(s) is/are the highest or otherwise best and (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any bid or offer, other than the Stalking Horse Bid, that the Debtors in their reasonable discretion, in consultation with the Creditors' Committee deem to be (x) inadequate or insufficient, (y) not a Qualified Bid or not otherwise in conformity with the requirements of

-7-

the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or procedures set forth therein or herein, or (z) contrary to the best interests of the Debtors and their estates.

Prior to the conclusion of the Auction, the Debtors will, in each instance in consultation with the Creditors' Committee: (A) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (B) identify the highest or otherwise best offer or collection of offers (the "Successful Bid(s)"); (C) determine which Qualified Bid(s) is/are the Successful Bid(s) and which is/are the next highest or otherwise best offer or collection of offers (the "Alternate Bid(s)") for the Bid Assets; and (D) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the successful bidder or bidders (the "Successful Bidder(s)"), the amount and other material terms of the Successful Bid(s) and the identity of the party or parties that submitted the Alternate Bid(s) (the "Alternate Bidder(s)"). Within one business day of the completion of the Auction, the Successful Bidder(s) and the applicable Debtors shall complete and execute all agreements, instruments or other documents necessary to consummate the applicable Sale(s) or otherwise contemplated by the applicable Successful Bid(s). The Proposed Purchaser's bid shall not be considered an Alternate Bid nor shall the Proposed Purchaser be considered an Alternate Bidder without its written consent.

The Debtors will sell the Bid Assets for the highest or otherwise best Qualified Bid(s) to the Successful Bidder(s) upon the approval of Successful Bid(s) by the Court after the Sale Hearing. The presentation of a particular Qualified Bid or Qualified Bids to the Court for approval does not constitute the Debtors' acceptance of the Qualified Bid(s). The Debtors will be deemed to have accepted a Qualified Bid(s) only when the bid has been approved by the Bankruptcy Court at the Sale Hearing. Only the Proposed Purchaser or another entity or entities constituting the Successful Bidder(s) shall be entitled to purchase the Bid Assets pursuant to these Bidding Procedures.

If for any reason, the entity or entities that submit(s) the highest or otherwise best Qualified Bid(s) fails to consummate the purchase of the Bid Assets, or any part thereof, the Debtors and the Alternate Bidder(s) are authorized to effect the sale of the Bid Assets to such Alternate Bidder(s) as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Successful Bidder(s), the Debtors reserve the right to seek all available remedies from the defaulting Successful Bidder(s), subject to the terms of the applicable purchase agreement.

6. **The Sale Hearing**

The Sale Hearing will be held before the Honorable Kevin J. Carey on December 19, 2013 at 2:00 p.m. (Eastern time) in the United States Bankruptcy Court for the District of Delaware, 824 N. Market St., Wilmington, Delaware 19801. The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing. If the Debtors do not receive any Qualified Bids (other than the Stalking Horse Bid), the Debtors will report the same to the Bankruptcy Court at the Sale Hearing and will proceed with a sale of

the Bid Assets to the Proposed Purchaser following entry of the Sale Order in accordance with the terms of the Stalking Horse APA. At the Sale Hearing, the Debtors will seek approval of the offer or offers constituting the Successful Bid(s), and, at the Debtors' election, the offer or offers constituting the Alternate Bid(s).

Following approval of the Sale to the Successful Bidder(s), if the Successful Bidder(s) fail(s) to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtors or the Successful Bidder(s) upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder(s) upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid(s) will be deemed to be the Successful Bid(s) and the Debtors will be authorized, but not directed, to effectuate a sale to the Alternate Bidder(s) subject to the terms of the Alternate Bid(s) of such Alternate Bidder(s) without further order of the Bankruptcy Court; provided nothing herein shall limit or alter any rights or remedies the Proposed Purchaser may have under the Stalking Horse APA (as such agreement may be amended, modified or supplemented) arising from the selection of another bidder as a Successful Bidder(s) or the consummation of any sale.

7.  **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders will be held in escrow by the Deposit Agent and while held in escrow will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to terms of the applicable escrow agreement or pursuant to further order of the Bankruptcy Court. The Deposit Agent will retain the Good Faith Deposits of the Successful Bidder(s) and the Alternate Bidder(s) until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within five (5) business days of the entry of the Sale Order. At the closing of the Sale Transaction contemplated by the Successful Bid(s), the Successful Bidder(s) will be entitled to a credit for the amount of its/their Good Faith Deposit(s). The Good Faith Deposit(s) of the Alternate Bidder(s) will be released by the Debtors five (5) business days after the closing of the Sale Transaction. Upon the return of the Good Faith Deposits, their respective owners will receive any and all interest that will have accrued thereon.

8.  **As Is, Where Is**

The sale of the Bid Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except as provided in any agreement with respect to the sale or sales approved by the Bankruptcy Court.

9.  **Free and Clear of Any and All Interests**

Except as otherwise provided in the Stalking Horse APA or another Successful Bidder(s)'s purchase agreement, all of Debtors' right, title and interest in and to the Bid Assets

subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Bid Assets with the same validity and priority as such Interests applied against the Bid Assets.