

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| OLD FENM INC., *et al.*,[1] | : | Case No. 13-12569 (KJC) |
|  | : |  |
| Debtors. | : |  |
|  | : | (Jointly Administered) |
|  | : |  |

## FINDINGS OF FACT AND CONCLUSIONS
## OF LAW WITH RESPECT TO CONFIRMATION OF THE
## SECOND AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION
## OF OLD FENM INC. AND OLD FEPC LLC, AS MODIFIED AND RESTATED

---

[1]    The Debtors are the following two entities (the last four digits of their respective taxpayer identification numbers follow in brackets): Old FENM Inc. (f/k/a Fresh & Easy Neighborhood Market Inc.) [7028] and Old FEPC LLC (f/k/a Fresh & Easy Property Company LLC) [9636]. The address of each of the Debtors is 2120 Park Place, Suite 200, El Segundo, California 90245.

Page

INTRODUCTION ................................................................................................................................. 1

FINDINGS OF FACT AND CONCLUSIONS OF LAW .................................................................. 3

I.      Jurisdiction and Venue ............................................................................................................ 3

II.     Objections to the Plan ............................................................................................................. 4

III.    Transmittal and Mailing of Materials; Notice ...................................................................... 4

IV.     The Plan Modifications ........................................................................................................... 4

V.      Good Faith Negotiation, Implementation and Consummation ........................................... 5

VI.     Good Faith and Section 1125(e) of the Bankruptcy Code ................................................. 5

VII.    Compliance with the Requirements of Section 1129 of the Bankruptcy Code ................. 6

        A.     Section 1129(a)(1) of the Bankruptcy Code — the Plan Complies with
               Applicable Provisions of the Bankruptcy Code ..................................................... 6

        B.     Section 1129(a)(2) of the Bankruptcy Code — Debtors' Compliance with
               Applicable Provisions of the Bankruptcy Code ................................................... 11

        C.     Section 1129(a)(3) — Proposal of the Plan in Good Faith .................................. 11

        D.     Section 1129(a)(4) of the Bankruptcy Code — Court Approval of Certain
               Payments as Reasonable ........................................................................................ 12

        E.     Section 1129(a)(5) of the Bankruptcy Code — Disclosure of Identity of
               Proposed Management, Compensation of Insiders and Consistency of
               Management Proposals with the Interests of Creditors and Public Policy .......... 13

        F.     Section 1129(a)(6) of the Bankruptcy Code — Approval of Rate Changes ........ 13

        G.     Section 1129(a)(7) of the Bankruptcy Code — Best Interests of Holders of
               Claims and Interests ............................................................................................... 13

        H.     Section 1129(a)(8) of the Bankruptcy Code — Acceptance of the Plan by
               Each Impaired Class ............................................................................................... 14

        I.     Section 1129(a)(9) of the Bankruptcy Code — Treatment of Claims
               Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code ............. 14

        J.     Section 1129(a)(10) of the Bankruptcy Code — Acceptance By at Least
               One Impaired, Non-Insider Class .......................................................................... 16

        K.     Section 1129(a)(11) of the Bankruptcy Code — Feasibility of the Plan ............. 16

        L.     Section 1129(a)(12) of the Bankruptcy Code — Payment of Bankruptcy
               Fees ......................................................................................................................... 16

        M.     Section 1129(a)(13) of the Bankruptcy Code — Retiree Benefits ...................... 17

        N.     Section 1129(a)(14) of the Bankruptcy Code — Domestic Support
               Obligations .............................................................................................................. 17

        O.     Section 1129(a)(15) of the Bankruptcy Code — Payment of Unsecured
               Claims in Case of Individual Debtor ..................................................................... 17

| | P. | Section 1129(a)(16) — Restrictions on Transfers of Property of Nonprofit Entities | 17 |
| | Q. | Section 1129(b) of the Bankruptcy Code— Confirmation of the Plan Over the Non-Acceptance of Impaired Classes | 17 |
| | R. | Section 1129(d) of the Bankruptcy Code — Purpose of Plan | 18 |
| VIII. | | The Tesco Settlement | 18 |
| IX. | | Comprehensive Settlement of Claims and Controversies | 18 |
| X. | | Approval of the Release Provisions in the Plan | 19 |
| XI. | | Issuance of Old FENM Inc. New Securities and Old FEPC LLC New Securities | 19 |
| XII. | | Exemption From Certain Taxation | 19 |
| XIII. | | Satisfaction of Conditions to Confirmation | 20 |

## INTRODUCTION

WHEREAS, the above captioned debtors (collectively, the "Debtors"), Old FENM Inc. (f/k/a Fresh & Easy Neighborhood Market Inc.) and Old FEPC LLC (f/k/a Fresh & Easy Property Company LLC), filed, and seek confirmation of, their Second Amended Joint Plan of Reorganization of Old FENM Inc. and Old FEPC LLC, as modified by the modifications set forth in Exhibit B to the Confirmation Order (the "Plan Modifications"), restated in its entirety as set forth in Exhibit A to the Confirmation Order and incorporated herein by reference (as it may be further modified and inclusive of the Plan Exhibits, the "Plan");[2]

WHEREAS, the Bankruptcy Court has entered the Order Approving (I) Disclosure Statement, (II) Form and Manner of Notice of Disclosure Statement Hearing, (III) Form and Manner of Notice of Confirmation Hearing and (IV) Certain Related Relief [Docket No. 864] (the "Disclosure Statement Order") and therefore has, among other items, (i) approved the Debtors' proposed disclosure statement (the "Disclosure Statement") and (ii) scheduled a hearing to consider confirmation of the Plan for July 2, 2014, at 9:00 a.m. (Eastern Time) (the "Confirmation Hearing");

WHEREAS, entities could obtain the Plan and Disclosure Statement, Plan Exhibits and related documents distributed to creditors and other parties in interest from the Debtors' website at http://cases.primeclerk.com/FreshandEasy;

WHEREAS, the Affidavit of Service of Richard M. Allen with respect to the mailing of notice of the Confirmation Hearing in accordance with the Disclosure Statement Order [Docket No. 887] (the "Affidavit of Service") was filed with the Court on June 9, 2014;

---

[2]    Capitalized terms and phrases used herein have the meanings given to them in the Plan. The rules of interpretation set forth in Section I.B.1 of the Plan apply to these Findings of Fact and Conclusions of Law With Respect To Confirmation of the Second Amended Joint Chapter 11 Plan of Reorganization of Old FENM Inc. and Old FEPC LLC, as Modified and Restated (the "Findings of Fact and Conclusions of Law") and the Confirmation Order, which is being entered concurrently herewith.

WHEREAS, on June 20, 2014 [Docket No. 910], the Debtors filed their Plan

Exhibits in accordance with the Plan and Disclosure Statement Order;

WHEREAS, the Affidavits of Publication of Richard M. Allen in *The Wall Street
Journal* [Docket No. 887] and *The Los Angeles Times* [Docket No. 889] (collectively, the
"Publication Affidavits") with respect to the publication of the Notice of (I) Hearing to Consider
Confirmation of the Plan, and (II) Related Matters (the "Publication Notice") were filed with the
Court on June 9, 2014 and June 13, 2014, respectively;

WHEREAS, the United States Trustee for the District of Delaware filed the sole
objection [Docket No. 921] to Confirmation of the Plan (collectively, the "Objection");

WHEREAS, the Debtors filed a memorandum of law in support of Confirmation
of the Plan and in response to certain of the Objections [Docket No. 941] (the "Memorandum of
Law");

WHEREAS, the Debtors filed the declaration of Dennis Stogsdill [Docket
No. 942] in support of the Plan (the "Plan Declaration");

WHEREAS, the Bankruptcy Court has considered all of the proceedings held
before the Bankruptcy Court and taken judicial notice of the documents and pleadings filed in
the Bankruptcy Case;

WHEREAS, the Court has reviewed the Plan, the Plan Modifications, the
Disclosure Statement, the Disclosure Statement Order, the Affidavit of Service, the Publication
Affidavits, the Objection, the Memorandum of Law, the Plan Declaration and the other papers
before the Court in connection with the Confirmation of the Plan;

WHEREAS, the Confirmation Hearing was held on July 2, 2014 at 9:00 a.m.

(Eastern Time) before the Honorable Kevin J. Carey, United States Bankruptcy Judge for the

District of Delaware;

WHEREAS, the Court heard the statements of counsel in support of and in

opposition to confirmation as reflected in the record made at the Confirmation Hearing;

WHEREAS, the Court has considered all evidence presented at the Confirmation

Hearing;

WHEREAS, the Court, after due deliberation and for sufficient cause, finds that

the evidence admitted in support of the Plan at the Confirmation Hearing is persuasive and

credible;

WHEREAS, the Court made certain findings of fact and conclusions of law on the

record at the Confirmation Hearing, and such findings and conclusions will be deemed to be

incorporated herein in their entirety; and

NOW, THEREFORE, the Court hereby enters the following findings of fact and

conclusions of law with respect to Confirmation of the Plan.[3]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I.        Jurisdiction and Venue

1.        The Court has jurisdiction over this matter pursuant to Sections 157 and

1334 of Title 28 of the United States Code.  Confirmation of the Plan is a core proceeding

pursuant to Section 157(b)(2) of Title 28 of the United States Code.  Each of the Debtors was,

and is, qualified to be a debtor under Section 109 of the Bankruptcy Code.  Pursuant to Section

---

[3]        These Findings of Fact and Conclusions of Law constitute the Court's findings of fact and conclusions of
law under Fed. R. Civ. P. 52, as made applicable herein by Bankruptcy Rules 7052 and 9014.  Any finding
of fact will constitute a finding of fact even if it is referred to as a conclusion of law, and any conclusion of
law will constitute a conclusion of law even if it is referred to as a finding of fact.

- 3 -

1408 of Title 28 of the United States Code, venue of these chapter 11 cases in the United States
District Court for the District of Delaware was proper as of the Petition Date and remains proper.

## II.        Objections to the Plan

2.        As set forth on the record, at the Confirmation Hearing, the Plan
Modifications resolved the Objection in its entirety.

## III.       Transmittal and Mailing of Materials; Notice

3.        The Disclosure Statement, the Plan, the Disclosure Statement Order and
the notices of the Confirmation Hearing were transmitted and served in compliance with the
Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure
of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") and the
Disclosure Statement Order.  Based upon the foregoing, due, adequate and sufficient notice of
the Confirmation Hearing and all other related dates and deadlines has been given in compliance
with the Bankruptcy Rules, the Local Rules and the terms of the Disclosure Statement Order, and
no other or further notice is, or shall be, required.

## IV.       The Plan Modifications

4.        The Plan Modifications are either technical changes or clarifications that
cause no material or adverse affect or change to the treatment of any Claim against or Interest in
any Debtor.  Pursuant to Section 1127(b) of the Bankruptcy Code and Bankruptcy Rule 3019,
there is no basis to require additional disclosure of the Plan Modifications. The Debtor's
disclosure of the Plan Modifications constitutes due and sufficient notice thereof under the
circumstances of this Bankruptcy Case.  Accordingly, the Plan (as modified and restated) is
properly before the Court.

- 4 -

V.          **Good Faith Negotiation, Implementation and Consummation**

5.          The Debtors, Tesco and the Creditors' Committee (and, as applicable, each of their respective Representatives) participated in good faith in negotiating, at arms' length, the Plan and all contracts, instruments, releases, agreements and documents related to or necessary to implement, effectuate and consummate the Plan, including (i) all contracts, instruments, agreements and documents to be executed and delivered in connection with the Plan; (ii) the certificate of incorporation, by-laws or comparable constituent documents of the Reorganized Debtors; and (iii) the Tesco Settlement. In making this determination, the Court has examined, among other items, the totality of circumstances surrounding the filing of this Bankruptcy Case, the record of this proceeding and the Plan and all related pleadings, exhibits, statement and comments regarding Confirmation.

VI.          **Good Faith and Section 1125(e) of the Bankruptcy Code**

6.          The Debtors and, as applicable, their Representatives have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code and the Disclosure Statement Order with respect to the transmittal of all materials relating to the Plan. As such, the Debtors and, as applicable, their Representatives are both entitled to the benefits and protections of Section 1125(e) of the Bankruptcy Code. In addition, The Debtors and, as applicable, their Representatives and Tesco and, as applicable, its Representatives each have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with respect to the issuance of the Old FENM Inc. New Securities and the Old FEPC LLC New Securities. As such, (i) the Debtors and, as applicable, their Representatives and (ii) Tesco and, as applicable, its Representatives are all entitled to the benefits and protections of Section 1125(e) of the Bankruptcy Code.

- 5 -

**VII.**        **Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

7.        The Debtors have the burden of proving the elements of Section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden. As set forth below, the Plan complies in all respects with the necessary and applicable requirements of Section 1129 of the Bankruptcy Code.

A.        **Section 1129(a)(1) of the Bankruptcy Code — the Plan Complies with Applicable Provisions of the Bankruptcy Code**

8.        The Plan complies with all applicable provisions of the Bankruptcy Code, as required by Section 1129(a)(1) of the Bankruptcy Code, including, without limitation, Sections 1122 and 1123 of the Bankruptcy Code.

1.        **Sections 1122 and 1123(a)(1)-(4) of the Bankruptcy Code**

9.        Section 1122 of the Bankruptcy Code. In accordance with Section 1122(a) of the Bankruptcy Code, Article II of the Plan classifies each Claim against, and Interest in, the Debtors into a Class containing only substantially similar Claims or Interests (Plan Art. II). Based upon their secured status, Secured Claims have been separately classified in Class 1 (Plan Article II). Due to their entitlement to priority status under Section 507 of the Bankruptcy Code, Priority Claims have been separately classified in Class 2 (Plan Art. II). General Unsecured Claims, Tesco Claims and Interests have been separately classified in, respectively, Classes 3, 4 and 5 due to the distinctive bases for such Claims (Plan Art. II). Specifically, due to the unique nature of the claims and the fact that the Plan treats the Tesco Claims differently than the other General Unsecured Claims, the Tesco Claims have been classified separately from the General Unsecured Claims (Plan Art. II).

10.        Section 1123(a)(1) of the Bankruptcy Code. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Article II of the Plan properly classifies all Claims

and Interests that require classification (Plan Art. II).  In particular, Article II of the Plan

segregates Secured Claims (Class 1), Priority Claims (Class 2), General Unsecured Claims

(Class 3), Tesco Claims (Class 4) and Interests (Class 5) into separate classes.  (Id.).  The

number of Classes reflects the diverse characteristics of those Claims and Interests, and the legal

rights under the Bankruptcy Code of each of the holders of Claims or Interests within a particular

Class are substantially similar to other holders of Claims or Interests within that Class.

          11.      Section 1123(a)(2) of the Bankruptcy Code.  In accordance with

Section 1123(a)(2) of the Bankruptcy Code, Article III of the Plan identifies and describes each

Class of Claims or Interests that is not impaired under the Plan.  In particular, Section III.B of the

Plan indicates that Classes 1, 2, 3 and 4 are unimpaired (Plan Art. III).

          12.      Section 1123(a)(3) of the Bankruptcy Code.  In accordance with

Section 1123(a)(3) of the Bankruptcy Code, Article III of the Plan identifies and describes any

Class of Claims or Interests that is impaired under the Plan.  In particular, Section III.B of the

Plan indicates that Class 5 is impaired (Plan § III.B).

          13.      Section 1123(a)(4) of the Bankruptcy Code.  In accordance with

Section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim

or Interest of a particular Class unless the holder of such a Claim or Interest agrees to less

favorable treatment (Plan Art. III).

          **2.**      **Section 1123(a)(5) of the Bankruptcy Code**

          14.      In accordance with Section 1123(a)(5) of the Bankruptcy Code, the Plan

provides adequate means for the Plan's implementation.  Article IV of the Plan specifically

provides for (i) the consummation of the Tesco Settlement (Plan § IV.A); (ii) the substantive

consolidation of the Debtors' respective Estates for distribution and other related Plan purposes

(Plan § IV.C.1); (iii) the Debtors' continued corporate existence, with each Debtor maintaining,

as applicable, the powers of corporation or limited liability company under the laws of each

Debtor's respective jurisdiction of organization and without prejudice to any right to alter or

terminate such existence (whether by merger or otherwise) under applicable state law (Plan

§ IV.C.2); (iv) the cancellation of Interests and the issuance of the Old FENM Inc New

Securities and the Old FEPC LLC New Securities (Plan § IV.C.3); (v) the revesting of the

Debtors' assets in the Reorganized Debtors (Plan § IV.C.5); (vi) the corporate authorization

necessary for the Debtors, the Reorganized Debtors and the Tesco Entities to take, or cause to be

taken, all corporate and limited liability company actions necessary or appropriate to

consummate and implement the provisions of the Plan (Plan § IV.C.8); (vii) the establishment of

the Administrative/Priority Claims Reserve and the General Unsecured Claims Trust Account

(Plan §§ IV.C.14 and IV.C.15); and (viii) the authorization of the Reorganized Debtors to settle

any Secured Claim, Administrative Claim, Priority Tax Claim, Priority Claim or Unsecured

Claim without the supervision or approval by the Bankruptcy Court (Plan § IV.C.16). In

addition, Article V of the Plan provides the mechanism for the Debtors to assume, assume and

assign or reject their remaining Executory Contracts and Unexpired Leases (Plan Art. V).

### 3.    Section 1123(a)(6) of the Bankruptcy Code

15.    In accordance with Section 1123(a)(6) of the Bankruptcy Code, the

Reorganized Debtors' Organizational Documents or similar constituent documents of each

Reorganized Debtor, among other items, will prohibit the issuance of nonvoting equity securities

and provide for the appropriate distribution of voting power among all classes of equity

securities authorized for issuance to the extent required by Section 1123(a)(6) of the Bankruptcy

Code (See Plan Ex. III).

- 8 -

### 4.    Section 1123(a)(7) of the Bankruptcy Code

16.    In accordance with Section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan and the Reorganized Debtors' Organizational Documents or similar constituent documents governing the manner of selection of officers and directors of the Reorganized Debtors, including, without limitation, the provisions of Section IV.C.10 of the Plan and Plan Exhibit III, are consistent with the interests of creditors and equity security holders and with public policy (See Plan § IV.C.10, Plan Ex. III).

### 5.    Section 1123(a)(8) of the Bankruptcy Code

17.    Section 1123(a)(8) of the Bankruptcy Code is inapplicable to the Debtors because none of the Debtors are individuals.

### 6.    Section 1123(b)(1) of the Bankruptcy Code

18.    As permitted by Section 1123(b)(1) of the Bankruptcy Code, Section III.B.5 of the Plan provides for the impairment of Interests in the Debtors. The Debtors will distribute no property on account of the Interests, and the Plan further provides for the Interests' cancellation (Id.). The Plan renders all Claims unimpaired (Plan §§ III.B.1-4).

### 7.    Section 1123(b)(2) of the Bankruptcy Code

19.    As permitted by Section 1123(b)(2) of the Bankruptcy Code, Section V.A of the Plan provides that, as of the Effective Date, except for the Executory Contracts or Unexpired Leases listed on Plan Exhibit II, if any, and except to the extent that a Debtor either previously has assumed, assumed and assigned or rejected an Executory Contract or Unexpired Lease by an order of the Bankruptcy Court, including, but not limited to, the Sale Orders, or has filed a motion to assume or assume and assign an Executory Contract or Unexpired Lease prior to the Effective Date; the Debtors will reject, pursuant to Section 365 of the Bankruptcy Code, each Executory Contract and Unexpired Lease entered into by a Debtor

- 9 -

prior to the Petition Date that has not previously expired or terminated pursuant to its own terms (Plan § V.A).

20.     In addition, Section V.C of the Plan provides (i) for the assumption of the Executory Contracts and Unexpired Leases listed on Plan Exhibit II and the assignment of any such Executory Contracts and Unexpired Leases to the Reorganized Debtors (Plan § V.C.1). Section V.C. of the Plan also sets forth the procedures that the Debtors will utilize to effectuate the assumption of the Executory Contracts and Unexpired Leases and subsequent assignment of any such Exectuory Contracts and Unexpired Leases to the Reorganized Debtors (Plan § V.C.4).

### 8.     Section 1123(b)(3) of the Bankruptcy Code

21.     As permitted by 1123(b)(3) of the Bankruptcy Code, Section IV.A of the Plan provides for the settlement of all Claims and Causes of Action the Debtors may possess against any of the Tesco Entities (Plan § IV.A). Section IV.B of the Plan further provides that the provisions of the Plan constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Claim or Interest or any distribution to be made pursuant to the Plan on account of any Claim or Interest (Plan § IV.B).

### 9.     Section 1123(b)(5) of the Bankruptcy Code

22.     As permitted by Section 1123(b)(5) of the Bankruptcy Code, Article III of the Plan either modifies or leaves unaffected the rights of holders of each class of Claims.

### 10.     Section 1123(b)(6) of the Bankruptcy Code

23.     As permitted by Section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with the applicable provisions of the Bankruptcy Code, including the provisions of (i) Article VI of the Plan governing distributions on account of Allowed Claims; (ii) Article VII of the Plan establishing procedures

- 10 -

for resolving Disputed Claims and making distributions on account of such Disputed Claims once resolved; (iii) Articles IV and IX of the Plan, collectively addressing the release of Claims and injunctions against certain actions; (iv) Article X of the Plan governing the retention of jurisdiction by the Court over certain matters after the Effective Date; and (v) Section IV.C.1 of the Plan governing the substantive consolidation of the Debtors for Plan purposes only.

### 11.    Section 1123(d) of the Bankruptcy Code

24.    In accordance with Section 1123(d) of the Bankruptcy Code, Sections V.C and D of the Plan provide for the satisfaction of Cure Amount Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Plan in accordance with Section 365(b)(1) of the Bankruptcy Code. All Cure Amount Claims will be determined in accordance with the underlying agreements and applicable law (Plan §§ V.C, V.D).

### B.    Section 1129(a)(2) of the Bankruptcy Code — Debtors' Compliance with Applicable Provisions of the Bankruptcy Code

25.    As required by Section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied with all applicable provisions of the Bankruptcy Code, including Section 1125 of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018. The time and method of the Publication Notice were proper and in accordance with Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018 and the Disclosure Statement Order.

### C.    Section 1129(a)(3) — Proposal of the Plan in Good Faith

26.    As required by Section 1129(a)(3) of the Bankruptcy Code, the Debtors have proposed the Plan in good faith and not by any means forbidden by law. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the formulation of the Plan. Based on the evidence presented or

- 11 -

adduced at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed by the Debtors in good faith and in the belief that it will maximize the value of the ultimate recoveries to all creditor groups on a fair and equitable basis. The Plan is designed to effectuate the objectives and purposes of the Bankruptcy Code by maximizing the recoveries to parties in interest. Among other things, the Plan is the product of good faith and arms' length negotiations among the Debtors, the Creditors' Committee and Tesco. These negotiations allowed the Debtors to ultimately propose the Plan, which renders all of the Debtors' creditors other than the Tesco Entities unimpaired. The unimpaired treatment of Claims held by Entities other than the Tesco Entities demonstrates the Debtors' good faith in proposing the Plan.

**D.      Section 1129(a)(4) of the Bankruptcy Code — Court Approval of Certain Payments as Reasonable**

27.      As required by Section 1129(a)(4) of the Bankruptcy Code, no payment for services or for costs and expenses in, or in connection with, this Bankruptcy Case, or in connection with the Plan and incident to this Bankruptcy Case, has been or will be made by a Debtor or any other applicable Entity other than payments that have been authorized by the Confirmation Order or subsequent order of the Court (Plan § III.A).

28.      In connection with the foregoing, Article X of the Plan provides that the Court will retain jurisdiction after the Effective Date to hear and determine all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for the periods ending on or before the Effective Date (Plan Art. X).

NYI-4597344v1

E. **Section 1129(a)(5) of the Bankruptcy Code — Disclosure of Identity of Proposed Management, Compensation of Insiders and Consistency of Management Proposals with the Interests of Creditors and Public Policy**

29.     As required by Section 1129(a)(5) of the Bankruptcy Code, the Debtors

have disclosed the identities of the officers and directors of each of the Reorganized Debtors as

of the Effective Date (Plan Ex. IV). At or prior to the Confirmation Hearing, the Debtors also

have disclosed (i) the compensation to be disbursed to the directors, executives and officers

serving for each of the Reorganized Debtors; (ii) the affiliations of their proposed respective

directors and officers; and (iii) the compensation of any insiders to be employed or retained by

the Reorganized Debtors (to the extent not previously disclosed). The proposed directors and

officers for the Reorganized Debtors as set forth in Plan Exhibit IV are qualified, and the

appointments to, or continuance in, such offices by the proposed directors and officers is

consistent with the interests of holders of Claims and Interests and with public policy.

F. **Section 1129(a)(6) of the Bankruptcy Code — Approval of Rate Changes**

30.     Section 1129(a)(6) is inapplicable to the Debtors. The Debtors'

businesses do not involve the establishment of rates over which any regulatory commission has

jurisdiction or will have jurisdiction after the occurrence of the Effective Date.

G. **Section 1129(a)(7) of the Bankruptcy Code — Best Interests of Holders of Claims and Interests**

31.     With respect to each Class of Claims, the Plan satisfies

Section 1129(a)(7) of the Bankruptcy Code, because Section 1129(a)(7) of the Bankruptcy Code

applies solely to impaired Classes of Claims and Interests, and the Plan renders all Classes of

Claims unimpaired under Section 1124 of the Bankruptcy Code (Plan § III.B). With respect to

the sole impaired Class of Interests under the Plan, the Plan satisfies Section 1129(a)(7)(A)(ii) of

the Bankruptcy Code, because, as set forth on the liquidation analysis attached as exhibit II to the

Disclosure Statement (the "Liquidation Analysis"), the sole holder of Interests will receive or

retain property under the Plan having a value that is no less than the amount that such holder

would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on

the Effective Date (Plan Declaration, at ¶ 3).

### H.    Section 1129(a)(8) of the Bankruptcy Code — Acceptance of the Plan by Each Impaired Class

32.    The Plan satisfies Section 1129(a)(8) of the Bankruptcy Code with

respect to each Class of Claims, because each Class of Claims is unimpaired (Plan Art. III).

33.    The Plan fails to satisfy Section 1129(a)(8) of the Bankruptcy Code with

respect to the only Class of Interests, Class 5, because the holder of Interests in Class 5 will

receive or retain no property on account of such Interests, thus rendering Class 5 impaired (Plan

Art. III). Further, because the holder of Interests in Class 5 will receive or retain no property on

account of such Interests, Class 5 is deemed to have rejected the Plan under Section 1126(g) of

the Bankruptcy Code. Nonetheless, as explained in Section VII.Q. of these Findings of Fact and

Conclusions of Law and notwithstanding the deemed rejection by Class 5, the Plan satisfies the

"cramdown" requirements of Section 1129(b) of the Bankruptcy Code that are necessary to

obtain Confirmation of the Plan.

### I.    Section 1129(a)(9) of the Bankruptcy Code — Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code

34.    The Plan satisfies the requirements of Section 1129(a)(9) of the

Bankruptcy Code. With respect to Administrative Claims, Section III.A.1.a of the Plan provides

that, subject to certain bar date provisions in the Plan and unless otherwise agreed by the holder

of an Administrative Claim and the applicable Reorganized Debtor or the Bankruptcy Court

provides otherwise, each holder of an Allowed Administrative Claim will receive Cash equal to the Allowed amount of such Administrative Claim, payable by the Reorganized Debtors from the Administrative/Priority Claims Reserve, in full satisfaction of its Administrative Claim ether (i) as soon as reasonably practicable after the Effective Date or (ii) if the Administrative Claim is not allowed as of the Effective Date, within 30 days after the date on which an order allowing such Administrative Claim becomes an Allowed Claim; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business prior to the Effective Date may be paid as directed by the Reorganized Debtors in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto (Plan § III.A.1.a).

35.    With respect to Priority Tax Claims, Section III.A.2 of the Plan provides that, unless the holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim will receive, payable by the Reorganized Debtors from the Administrative/Priority Claims Reserve, in full satisfaction of its Priority Tax Claim, Cash in an amount equal to such Priority Tax Claim (i) as soon as reasonably practicable after the Effective Date or (ii) if the Priority Tax Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim (Plan § III.A.2).

36.    Finally, with respect to the other Priority Claims classified in Class 2 of the Plan, Section III.B.2 of the Plan provides that, unless the holder of an Allowed Priority Claim agrees to less favorable treatment, each holder of an Allowed Priority Claim will receive Cash equal to the amount of such Allowed Priority Claim, payable by the Reorganized Debtors from the Administrative/Priority Claims Reserve, in full satisfaction of such holder's Priority Claim

- 15 -

either (i) as soon as practicable after the Effective Date or (ii) if the Priority Claims is not Allowed as of the Effective Date, 30 days after the date on which such Priority Claim becomes an Allowed Claim (Plan § III.B.2).

### J.    Section 1129(a)(10) of the Bankruptcy Code — Acceptance By at Least One Impaired, Non-Insider Class

37.    Section 1129(a)(10) of the Bankruptcy Code is inapplicable to the Plan, because the Plan renders all Classes of Claims unimpaired (Plan § III.B.1-4).

### K.    Section 1129(a)(11) of the Bankruptcy Code — Feasibility of the Plan

38.    The Plan is feasible and therefore satisfies the requirements of Section 1129(a)(11) of the Bankruptcy Code. As set forth in the Liquidation Analysis, the Reorganized Debtors will possess the assets necessary to fulfill all obligations arising under the Plan. As a result, it does not appear that the Reorganized Debtors will require a further financial reorganization other than what is contemplated under the Plan. (See Plan Declaration, at ¶ 18.)

### L.    Section 1129(a)(12) of the Bankruptcy Code — Payment of Bankruptcy Fees

39.    The Plan satisfies the requirements of Section 1129(a)(12) of the Bankruptcy Code. Section III.A.1.b of the Plan provides that, on or after the Effective Date, Administrative Claims for fees payable pursuant to Section 1930 of Title 28 of the United States Code will be paid in Cash equal to the amount of such Administrative Claims. Section III.A.1.b of the Plan further provides that all fees payable pursuant to Section 1930 of Title 28 of the United States Bankruptcy Code after the Effective Date will be paid by the Reorganized Debtors from the Administrative/Priority Claims Reserve until the earlier of the conversion or dismissal of the applicable Bankruptcy Case under Section 1112 of the Bankruptcy Code, or the closing of the Bankruptcy Case pursuant to Section 350(a) of the Bankruptcy Code (Plan § III.A.1.b).

NYI-4597344v1

### M.    Section 1129(a)(13) of the Bankruptcy Code — Retiree Benefits

40.    The Plan satisfies Section 1129(a)(13) of the Bankruptcy Code. The

Debtors have no obligations to pay retiree benefits (as defined in Section 1114(a) of the

Bankruptcy Code) (Plan § III.C).

### N.    Section 1129(a)(14) of the Bankruptcy Code — Domestic Support Obligations

41.    Section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Plan.

The Debtors have no obligations to pay any domestic support obligations.

### O.    Section 1129(a)(15) of the Bankruptcy Code — Payment of Unsecured Claims in Case of Individual Debtor

42.    Section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Plan.

The Debtors are not individuals.

### P.    Section 1129(a)(16) — Restrictions on Transfers of Property of Nonprofit Entities

43.    Section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Plan.

Each of the Debtors is a corporation or trust that is a moneyed, business, or commercial

corporation or trust.

### Q.    Section 1129(b) of the Bankruptcy Code— Confirmation of the Plan Over the Non-Acceptance of Impaired Classes

44.    In accordance with Section 1129(b)(1) of the Bankruptcy Code, the Plan

may be confirmed notwithstanding Class 5's impairment and deemed rejection of the Plan under

Section 1126(g) of the Bankruptcy Code. The Plan's treatment of the Interests contained in

Class 5 meets the "fair and equitable" requirement, because Class 5 is the Plan's most junior

Class, and it is therefore impossible for the holder of any Interest that is junior to the Interests

classified in Class 5 to receive or retain any property under the Plan on account of such Interest.

45.    In addition, the Plan does not unfairly discriminate against Class 5. The Interests classified in Class 5 are legally distinct from, and junior in priority to, the Claims classified in Classes 1 through 4 of the Plan. As a result, there exists no discrimination with respect to Class 5. The requirements of Section 1129(b) of the Bankruptcy Code are satisfied with respect to Class 5 of the Plan.

**R.    Section 1129(d) of the Bankruptcy Code — Purpose of Plan**

46.    The principal purpose of the Plan is not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act, and there has been no request filed by any governmental unit to the contrary.

**VIII.    The Tesco Settlement**

47.    The Tesco Settlement is a critical component of the Plan and the product of arm's length and good faith negotiations between the Debtors, Tesco and the Creditors' Committee. The Tesco Settlement is fair, equitable and in the best interest of the Estates as it allows the Debtors to pay all Claims held by Entities other than the Tesco Entities in full (including interest) in Cash. The Debtors would be unable to achieve a better result for their non-affiliated creditors than the Tesco Settlement provides under any circumstances, even if the Debtors expended the resources necessary to litigate the validity of the Tesco Claims and ultimately prevailed in that litigation.

**IX.    Comprehensive Settlement of Claims and Controversies**

48.    Based upon the representations and arguments of counsel for the Debtors and all other testimony either actually given or proffered at the Confirmation Hearing and the full record of these chapter 11 cases, the Court finds that, pursuant to Section 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases,

- 18 -

NYI-4597344v1

injunctions, exculpations and discharges set forth in Sections IV.A, IV.B, IV.D, IV.F and IX.A, constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Claim or Interest or any Distribution to be made pursuant to the Plan on account of any Allowed Claim or Interest.

## X.        Approval of the Release Provisions in the Plan

49.    The releases set forth in Section IV.D of the Plan, including, without limitation, the releases of non-debtor parties pursuant to (i) the Debtors' general releases set forth in Section IV.D.1 of the Plan; (ii) the third party releases by holders of Claims or Causes of Action in any way relating to any Debtor, the Bankruptcy Case or the Plan that such Entity has, had or may have as set forth in Section IV.D.2 of the Plan; and (iii) the mutual releases relating to the Tesco Settlement set forth in Section IV.A of the Plan, individually and collectively, are appropriate under applicable law.

## XI.       Issuance of Old FENM Inc. New Securities and Old FEPC LLC New Securities

50.    The issuance and distribution of the Old FENM Inc. New Securities and the Old FEPC LLC New Securities to the holders of Class 4 Claims under the Plan are exempt from the registration and prospectus delivery requirements of Section 5 of the Securities Act and any similar federal, state or local law pursuant to Section 1145(a) of the Bankruptcy Code.

## XII.      Exemption From Certain Taxation

51.    Pursuant to Section 1146(a) of the Bankruptcy Code, the following transactions and related items are exempt from taxation under stamp, real estate transfer, mortgage recording, sales or use or other similar tax:  (i) any transaction undertaken to implement the terms of this Plan, including, without limitation, the transfer of any assets or property to the Reorganized Debtors; and (ii) the making or delivery of any deed or other

- 19 -

instrument of transfer under, in furtherance of or in connection with the Plan, including, without

limitation, any merger agreements or agreements of consolidation, disposition, liquidation or

dissolution executed in connection with any transaction pursuant to the Plan.

**XIII.      Satisfaction of Conditions to Confirmation**

52.      Each of the conditions precedent to Confirmation under

Sections VIII.A.1 through VIII.A.2 of the Plan have been satisfied or duly waived by the Debtors

with the consent of Tesco.

Dated: _____ , 2014

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

- 20 -